# EXHIBIT A-1

**FILED FOR RECORD**
**Cause No.: C-23-12-1320-CV**
Ector County - 244th District Court
Ector County, Texas
12/4/2023 1:23 PM
**Clarissa Webster**
**District Clerk**
By: Rocio Rodriguez, Deputy

CAUSE NO. C-23-12-1320-CV _____

| | | |
|---|---|---|
| **C&W INTERNATIONAL FABRICATORS, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **v.** | § | |
| | § | **_____ JUDICIAL DISTRICT** |
| **IRONCLAD PRESSURE CONTROL, LLC,** | § | |
| **ERMELINDA (MINDY) RIVAS,** | § | |
| **BAILEE NICOLE RIVAS-FERNANDEZ,** | § | |
| **and ALBERT DEHOYOS** | § | **ECTOR COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF,
AND MOTION FOR EXPEDITED DISCOVERY**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff, C&W International Fabricators, LLC, and files this Original Petition, Application for Injunctive Relief, and Motion for Expedited Discovery against Defendants, Ironclad Pressure Control, LLC, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez, and Albert DeHoyos, and would for cause of action respectfully show unto the Court the following:

## I. PARTIES AND SERVICE OF PROCESS

1.      Plaintiff, **C&W International Fabricators, LLC** ("C&W"), is a Texas limited liability company with its principal place of business located in Sugar Land, Fort Bend County, Texas.

2.      Defendant, **Ironclad Pressure Control, LLC** ("Ironclad") was formed on February 27, 2023, as a manager-managed Delaware limited liability company, and was registered to do business in the State of Texas on March 20, 2023. Ironclad may be served with process by personal delivery by serving the registered agent of said company, United States Corporation Agents, Inc. at 9900 Spectrum Dr., Austin, Texas 78717, or wherever else the registered agent may be found.

3.      Defendant, **Ermelinda (Mindy) Rivas** ("Mindy"), is an individual residing in Texas and may be served with process by personal delivery by serving her at 307 Park Plz, San Antonio, Texas 78237, or wherever else she may be found.

4.      Defendant, **Bailee Nicole Rivas-Fernandez** ("Bailee"), is an individual residing in Texas and may be served with process by personal delivery by serving her at 4417 Guadalupe St., Midland, Texas 79707, or wherever else she may be found.

5.      Defendant, **Albert DeHoyos** ("Albert"), is an individual residing in Texas and may be served with process by personal delivery by serving him at 4406 San Carlos Ct., Midland, Texas 79707, or wherever else he may be found.

6.      If any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", was a "misnomer" and/or such parties are/were "alter egos"

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 1 of 65

of the parties named herein.  Alternatively, Plaintiff contends that all applicable "corporate veils" should be pierced to hold such parties properly included liable in the interest of justice.

## II. DISCOVERY LEVEL

7.      Plaintiff affirmatively pleads that it seeks monetary relief aggregating more than $1,000,000 but less than $5,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, and intends that discovery be conducted under Discovery Level 1, Texas Rule of Civil Procedure 190.

## III. JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this cause, as the amount in controversy is in excess of the minimum jurisdictional limits.

9.      Venue is proper in Ector County, Texas, because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Ector County and because the property the subject of the requested injunctive relief is located in Ector County.

## IV. NATURE OF ACTION

10.      C&W brings this action, in part, to enjoin Defendants from disposing of or transferring assets that may be used to satisfy C&W's claims, as creditor.[1]  The requested restraint and injunction would not violate rules against attachment of assets to satisfy a future judgment because Section 24.008(a) of the Texas Uniform Fraudulent Transfer Act ("UFTA") specifically authorizes such injunctions, together with attachment of the asset sought to be disposed/transferred.[2]

11.      Ironclad owes a debt to Plaintiff for goods sold and provided to Ironclad that is just, due, and unpaid by Ironclad in the amount of $3,998,122.00.

12.      Upon information and belief, Ironclad has ceased performing services for customers, is not paying its debts as they become due, is legally insolvent, is in the process of liquidating its equipment and other assets, and appears to be shutting down its business.

13.      It additionally appears that the Defendants are attempting to transfer, conceal, and/or dispose of company assets to escape the debt owed to C&W and with the intent to hinder, delay, or defraud its creditors.  As Ironclad's largest creditor by a wide margin, C&W stands to suffer the greatest losses as a result of the Defendants' actions.

14.      C&W fears that if this Court does not issue an injunction to stop Defendants' wrongful actions, Defendants will transfer, conceal, and/or dispose of all or a substantial portion of the company's assets in violation of the rights of C&W (and possibly other creditors), and such actions by Defendants would render ineffectual any judgment obtained via this lawsuit against Defendants.  Further, Defendants' actions are such that without the Court's assistance, C&W will likely be forced to close the doors to its business.

---

[1] *Telephone Equipment Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

[2] *Id.*; Tex. Bus. Comm. Code § 24.008; *see also*, *Williams Industries v. Fry's Electronics*, 2003 Tex. App. LEXIS 4976, 11-16 (Tex. App.— Houston [1st Dist.] June 12, 2003) (injunction properly granted to prevent dissipation of assets transferred by debtor to closely associated company).

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 2 of 65

15.     Plaintiff seeks the Court's assistance in preventing Defendants' ongoing wrongful actions and in recovering possession of the property that Defendants have taken from Plaintiff, used, and refused to pay for.  Plaintiff seeks a temporary restraining order, temporary injunction, and permanent injunctive relief enjoining Defendants' damaging conduct, as well as Plaintiff seeks monetary and other equitable damages and attorney's fees and costs.

16.     C&W is entitled to injunctive relief pursuant to TEXAS CPRC §§ 65.011(1) and (2), which provide that "A writ of injunction may be granted if…(1) the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant; and (2) a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual".

17.     C&W herein seeks an immediate temporary restraining order from the Court against all the Defendants (along with their owners, officers, agents, representatives, employees, affiliated persons and entities, and those persons in active concert or participation with them), as follows:

a.  Defendants shall not, nor shall Defendants allow any other person or entity to, use, transfer, transport, assign, sell, give away, encumber, damage, destroy, relocate, move, remove, conceal, or otherwise dispose of or have any dealings with any of the company's assets, including but not limited to the Equipment that Ironclad purchased from C&W.

b.  Defendants shall not, nor shall Defendants allow any other person or entity to, use, transfer, transport, assign, sell, give away, encumber, relocate, move, remove, conceal, or otherwise dispose of, withdraw, or have any dealings with any funds, proceeds, or monies which belong to, are in the possession of, are titled in the name of, or are being held for the benefit of Ironclad, including but not limited to any funds or proceeds held by FundThrough USA pursuant to its factoring arrangement with Ironclad.

c.  Defendants shall not destroy, damage, or delete any files, documents, photographs, evidence, or records, electronic or otherwise, that relates or pertains to any of the matters implicated by this lawsuit, the Equipment, or Ironclad's business and assets, including but not limited to all phones, smart devices, hard drives, backups, archives, cameras, audio and video recorders, and other possible sources of stored metadata or information.

d.  Defendants shall not use, transfer, transport, assign, sell, give away, encumber, relocate, move, remove, conceal, or otherwise dispose of, withdraw, or have any dealings with any funds, proceeds, or monies paid to or received by Defendants from anyone as a result of the use, sale, or transfer of any of the Equipment that Ironclad purchased from C&W.  In addition, within 72 hours of this Order, Ironclad shall provide to C&W an itemized list setting forth in adequate detail each and every piece of the Equipment that has been sold or transferred to a third-party prior to the date of this Order, including the identity of the third-party and the details and consideration pertaining to any such sale or transfer.

e.  Defendants shall, within 48 hours of this Order, return to Ironclad's warehouse and

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 3 of 65

securely store, until further order of the Court or agreement of the parties, all the pieces of the Equipment that Ironclad purchased from C&W, including all the Equipment which Defendants have at any time removed and transported away from Ironclad's warehouse.  In addition, within 72 hours of this Order, Ironclad shall provide to C&W an inventory setting forth in adequate detail each and every piece of the Equipment that is being securely stored in Ironclad's warehouse.

f.  Defendants shall allow C&W to inspect Ironclad's financial statements and banking records on an expedited basis, for the dates ranging from December 1, 2022 to the present, and to have the opportunity to obtain an independent audit to identify where funds received by Ironclad relating to the use or sale of the Equipment were transferred instead of such funds being paid to C&W and why Ironclad has failed to pay the outstanding balance of the Invoices owed to Plaintiff.

g.  Defendants shall be compelled to pay to Plaintiff all funds received because of Defendants' use or sale of any of the Equipment that Ironclad purchased from C&W, until the outstanding balance of the Invoices owed to Plaintiff is paid in full.

## V. FACTUAL BACKGROUND

18.  The following facts and statement, in support of C&W's claims, this petition, and the application for injunctive relief, are supported by the Affidavit and Verification of Chris Carroll ("Carroll Affidavit"), a true and correct copy of which is attached hereto as **Exhibit "A"** and incorporated by reference herein.

19.  In December 2022, Ironclad, via Albert DeHoyos, contacted C&W to purchase certain oilfield fracing equipment (the "Equipment"), as identified and described in the multiple purchase orders and written correspondence attached hereto as **Exhibit "B"** and incorporated by reference herein.

20.  Ironclad sent C&W purchase orders for the Equipment it wanted to purchase and upon C&W's receipt of Defendant's purchase orders, C&W placed the order with the manufacturer to have the Equipment specially manufactured per Ironclad's request.  Ironclad's initial purchase orders (PO #1001 and # 1002) were dated December 21, 2022.  Once the Equipment was manufactured, C&W made sure the Equipment was delivered to Ironclad's warehouse located in Ector County, Texas.  C&W has signed receipts evidencing the delivery of all the Equipment at issue.

21.  In the ordinary course of its business, C&W fully performed its obligations under the agreement with Ironclad, which required that C&W deliver to Ironclad the specific Equipment that Ironclad ordered, as evidenced by each of the purchase orders.  However, Ironclad failed to perform its obligation under the agreement, which required Ironclad to pay C&W according to the payment terms set forth in Ironclad's own purchase orders.

22.  Per the purchase orders, the "Payment Terms" for the Equipment that Ironclad purchased from C&W were agreed upon as follows: "Total amount due will be paid in (4) installments.  First Installment will be paid (30) days from the date of complete order receipt and remaining payments will be paid every (30) days following the first payment."  Ironclad submitted multiple purchase orders for the Equipment and received delivery of the Equipment from C&W, with Ironclad receiving its first order from C&W on March 7, 2023 and Ironclad receiving its last order from C&W on June 16, 2023.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 4 of 65

23.     Ironclad began using the Equipment for its customer in April 2023 and was invoicing the customer approximately $1,000,000 per month.  Despite generating such revenues from its use of the Equipment, Ironclad failed to make agreed upon payments for the purchase of the Equipment.

24.     In consideration of the Equipment provided, on which systematic records have been kept, Ironclad promised and became bound and liable to pay to C&W the customary charges for the Equipment in the total sums set forth in the Invoices, being a reasonable charge for such items.  As of the date of the filing of this lawsuit, Ironclad has breached its agreed upon obligation to timely pay C&W the amount owed as to each and every order for Equipment submitted and received by Ironclad.

25.     Upon confirmation and acceptance of each delivery to Ironclad of the Equipment ordered and provided, C&W issued Ironclad an invoice that corresponded to the specific that C&W Equipment sold and delivered to Ironclad.  C&W's Invoices[3] set forth the details of the dates, types, quantities, description, and rates of the Equipment provided by C&W to Ironclad. C&W's Invoices are attached hereto as **Exhibit "C"** and are incorporated herein by reference for all purposes.

26.     Relying on the representations and assurances of Defendants, as well as the long history of business dealings between the representatives of the parties, C&W continued to supply Ironclad with the Equipment it ordered.  Unfortunately, despite C&W's full performance, Ironclad continued to fail to make payments of the Invoices as agreed, and C&W was forced to decline to accept future orders unless and until Ironclad became current on its past due Invoices.

27.     On numerous occasions, C&W has demanded that Ironclad pay this amount, but Ironclad has not done so.  C&W's attorney sent the initial demand letter to Ironclad on September 8, 2023 and informed Ironclad of the outstanding amount due and owing at that time of $4,206,827.00 and provided Ironclad with a copy of the outstanding Invoices.  A true and correct copy of the demand letter, dated September 8, 2023, is attached hereto as **Exhibit "D"**, and is incorporated by reference herein.

28.     As of October 13, 2023, following the return of certain equipment for a credit and a small payment of $100,000.00, the principal amount of the outstanding balance of the Invoices owed by Ironclad to C&W, allowing for all payments, credits and offsets, was $3,998,122.00. No payments, credits or offsets have been received since October 13, 2023, and $3,998,122.00 remains the principal amount owed for the Invoices on the date of the filing of this lawsuit.

29.     Ironclad does not dispute the significant amount of money it owes C&W because of its purchase of the Equipment.  However, despite C&W's demand letter and extensive discussions between the attorneys for both parties, Ironclad continues to fail and refuse to pay the outstanding amount it owes to C&W.  C&W has also incurred unreimbursed shipping costs of $68,100.00.

30.     To mitigate its losses, C&W has found multiple purchasers willing to buy the used Equipment for prices consistent with like-kind equipment purchases in the industry, and C&W

---

[3]     Invoice Numbers 58550, 58641, 58644, 58661, 58688, 58747, 58752, 58756, 58758, 58779, 58822, 58826, 58847, 58849, and 58871.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 5 of 65

has offered to accept the return of the Equipment, despite the Equipment having been used, in exchange for a credit against the outstanding balance of the Invoices.   Unfortunately, Defendants have repeatedly refused to entertain such an arrangement and have caused the loss of multiple transactions with buyers willing to purchase the used Equipment for fair prices.

### *Custom Valves*

31.     Ironclad also caused damages to C&W due to Ironclad's failure to pay for seventy (70) custom-ordered valves ("Custom Valves") that Ironclad ordered from C&W. Ironclad ordered the Custom Valves to be specifically manufactured in Ironclad's black color and with Ironclad's logo on them.  However, when Ironclad failed to pay for the Equipment comprising the unpaid Invoices, C&W refused to deliver the Custom Valves and the Custom Valves have been sitting in C&W's warehouse in Houston.  Before it can attempt to sell the Custom Valves to someone else, C&W must have the Custom Valves restored to their original condition by an API certified shop, and C&W is entitled to reimbursement of the significant out of pockets costs it incurs in having such restoration performed which is estimated to be in the approximate amount of $250,000.00.

### *FundThrough USA*

32.     A third-party recently informed C&W that FundThrough USA, a factoring company through whom Ironclad has been submitting its invoices for services performed using the Equipment, currently holds a significant amount of funds or proceeds which belong to, are titled in the name of, or are being held for the benefit of Ironclad pursuant to FundThrough's factoring arrangement with Ironclad.   C&W has notified FundThrough of its claims against Ironclad and requested confirmation as to whether FundThrough does in fact hold funds or proceeds that belong to or are being held for the benefit of Ironclad, and if so, confirmation of the amount of such funds or proceeds.

33.     C&W has further requested that FundThrough hold all such funds and proceeds in trust and suspend all payments, disbursements, and distributions of funds to Ironclad, for the benefit of Ironclad's creditors, until such time that FundThrough receives notice, via a court order or an agreement of the parties, to distribute such held amounts.  It is C&W's contention that, under Texas law, it and potentially other creditors are entitled to recovery of all such amounts currently being held by FundThrough.

### *Defendants' Wrongful and Damaging Conduct*

34.     Upon information and belief, Ironclad is no longer performing services for customers, is not paying its debts as they become due, is legally insolvent, is in the process of liquidating and/or hiding its equipment and other assets, and appears to be shutting down its business.  Upon information and belief, it additionally appears that Ironclad and the individuals Defendants may be attempting to transfer, conceal, remove, and/or dispose of property with the intent to hinder, delay, or defraud its creditors.

35.     C&W is Ironclad's largest creditor by a wide margin.  Therefore, C&W will suffer the greatest losses if Ironclad transfers, conceals, removes, and/or disposes of any property, particularly the Equipment.

36.     Upon     information     and     belief,     Ironclad,     and     its     individual owners/officers/representatives, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez, and

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 6 of 65

Albert DeHoyos ("Owners/Officers/Representatives"), and possibly other unknown persons are currently taking, and have taken in the past, active steps to transfer, conceal, remove, and/or dispose of company assets, including the Equipment, and/or liquidate the business in a most urgent fashion to one or more third parties to escape their liabilities to C&W.  It is further believed that Ironclad and the Owners/Officers/Representatives have sold or are attempting to sell company assets, including the Equipment, with the intent to keep, conceal, and/or use the monies received to the exclusion and detriment of C&W.

37.     Multiple individuals have informed C&W that Defendants are trying to sell the Equipment to other companies in Odessa.  Attached hereto as **Exhibit "E"** is a text message to C&W from Jacob Cox, who owns Service Plus, notifying C&W about Ironclad's attempts to sell the Equipment.

38.     C&W has also been provided a copy of an email titled "equipment list for sale", attached hereto as **Exhibit "F"**, in which Ironclad's Operations Manager is circulating a list of equipment that Defendants are trying to sell, and every item on the list is the Equipment that C&W sold to Ironclad.  C&W was also informed by Ironclad's neighbor, Firebird Flow Control, LLC, that its employees witnessed four trucks loaded with equipment leaving Ironclad's yard in the early hours of a Saturday morning (*i.e.*, around 1:00 a.m.), and this occurred despite the fact that, per Ironclad's own representations to C&W, Ironclad did not have any ongoing jobs for customers at the time.

## VI. CAUSES OF ACTION

### COUNT 1: Suit on Open Account
### (Ironclad)

39.     Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 – 38 above as if set forth and fully restated herein.

40.     In the usual course of business, Plaintiff provided services to Ironclad on an open account.  Ironclad accepted the services and became bound to pay Plaintiff its designated charges, which were reasonable, usual, and customary for such services in the industry.

41.     Plaintiff has attached a statement of the account and the unpaid Invoices (Exhibit "C"), and the Chris Carroll Affidavit (Exhibit "A") in support of this claim.  The Invoices accurately set forth the Equipment that Plaintiff provided to Ironclad, the dates of delivery and/or performance, the description, quantities, and rates for the Equipment that Plaintiff provided, and the total amount owed for the Equipment that Plaintiff provided.  The statement of the account and Invoices represent a record of the series of transactions that is substantially similar to records Plaintiff systematically keeps in the ordinary course of its business.

42.     Following the satisfactory providing of the Equipment, Ironclad failed to pay the total amount outstanding on the account.  This claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

43.     The principal balance due on the account is $3,998,122.00.

### COUNT 2: Breach of Contract
### (Ironclad)

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 7 of 65

44.      Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 – 43 above as if set forth and fully restated herein.

45.      In addition to and/or in the alternative to Count 1, Ironclad breached its contractual agreement with Plaintiff.

46.      Plaintiff entered into a valid and enforceable agreement with Ironclad, in which the parties agreed that Plaintiff would provide the Equipment to Ironclad in exchange for Ironclad's agreement to pay Plaintiff the agreed and customary charges for the Equipment in accordance with the Terms of Payment for the properly submitted Invoices.

47.      Plaintiff provided and delivered the Equipment as agreed, but Ironclad has defaulted and breached its contractual agreement with Plaintiff by failing to pay Plaintiff's Invoices for the Equipment provided within the agreed upon time for payment.

48.      As a result of Ironclad's breach, Plaintiff is currently owed the principal sum of $3,998,122.00 for the unpaid Invoices for the Equipment provided, approximately $250,000.00 for the cost to restore the Custom Valves to their original condition, and unreimbursed shipping costs of $68,100.00, plus out-of-pocket costs and accrued interest as allowed under the law.

## COUNT 3: Quantum Meruit
### (Ironclad)

49.      Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 - 48 above as if set forth and fully restated herein.

50.      In addition to and/or in the alternative to Counts 1 and 2, Plaintiff is entitled to recover the value of the Equipment provided under the doctrine of quantum meruit.

51.      Plaintiff provided and delivered valuable goods (*i.e.*, the Equipment), as set forth and described in more detail in the Invoices attached hereto.  Ironclad accepted the Equipment, as well as the benefit from the use of the Equipment provided by Plaintiff.

52.      Ironclad knew Plaintiff expected to be compensated for the Equipment when Plaintiff provided, and Ironclad accepted, the Equipment.

53.      Because Plaintiff expected compensation, Ironclad's acceptance and use of the Equipment without payment resulted in damages to Plaintiff in the amount of $3,998,122.00, which is the value of the Equipment provided by Plaintiff to Ironclad, approximately $250,000.00 for the cost to restore the Custom Valves to their original condition, and unreimbursed shipping costs of $68,100.00, plus out-of-pocket costs and accrued interest as allowed under the law.

## COUNT 4:  Promissory Estoppel
### (Ironclad)

54.      Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 – 53 above as if set forth and fully restated herein.

55.      In addition to and/or in the alternative to Counts 1, 2, and 3, Plaintiff is entitled to recover under a claim for promissory estoppel.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 8 of 65

56.     Plaintiff would show that Ironclad made promises to pay Plaintiff in connection with Plaintiff's provision of the Equipment that Ironclad did not keep, which was to pay Plaintiff for the Equipment which Plaintiff provided to Ironclad.  Ironclad, through its respective owners, principals, agents, or representatives, also promised Plaintiff that it would make payments on its outstanding invoices due to Plaintiff until paid in full to solicit Plaintiff's continued providing of the Equipment to Ironclad.

57.     Plaintiff reasonably and substantially relied on Ironclad's promises to its detriment by, among other things, providing the Equipment as set forth in the Invoices. Plaintiff's reliance on Ironclad's promises was foreseeable and expected by Ironclad, as Ironclad could reasonably have expected Plaintiff to act or to refrain from acting based on the promises.

58.     But for such promises and representations by Ironclad, Plaintiff would not have continued to provide millions of dollars of additional Equipment to Ironclad.  Plaintiff provided the promised Equipment but Ironclad failed to fulfill its promise of payment in full, and injustice can be avoided only by enforcing Ironclad's promises to pay.

59.     Plaintiff is entitled to the damages required to restore it to its rightful position. Plaintiff's reliance on Ironclad's promises resulted in injury to Plaintiff, and as a result Plaintiff seeks damages in the sum of at least $3,998,122.00, which is the value of the Equipment provided, approximately $250,000.00 for the cost to restore the Custom Valves to their original condition, and unreimbursed shipping costs of $68,100.00, plus out-of-pocket costs and accrued interest as allowed under the law.

### COUNT 5:  Fraudulent Inducement and Fraudulent Misrepresentation
### (All Defendants)

60.     Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 - 59 above as if set forth and fully restated herein.

61.     Fraudulent inducement and misrepresentation claims require the plaintiff to prove: (a) a misrepresentation; (b) that defendants knew the representation was false and intended to induce plaintiff to enter into the contract through that misrepresentation; (c) that plaintiff actually relied on the misrepresentation in entering into the contract; and (d) that plaintiff's reliance led to plaintiff to suffer an injury through entering into the contract.  A fraudulent misrepresentation may be overt, written/spoken words, or it may be implied or implicit.

62.     Ironclad's Owners/Officers/Representatives knew or should have known that the statements made to C&W during their discussions and meetings surrounding the purchase of millions of dollars of equipment and that they would pay owed invoices according to their own submitted terms of payment, whether express or tacit, when soliciting Plaintiff's sale of additional equipment to Ironclad as described supra, were untrue.

63.     The false representations of the Owners/Officers/Representatives include promises that Defendants would make payments to C&W. Yet, the Owners/Officers/Representatives, directly and through each other, made the representations without any intent to perform them, as evidenced by Ironclad's repeated failure to meet its own payment terms, pay down the debt owed to C&W, and refusal to return the Equipment to C&W.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 9 of 65

64.     The Owners/Officers/Representatives intended and expected (or reasonably should have expected) that C&W would justifiably rely on the inducements, representations, statements of fact, promises to perform, and reassurances when agreeing to continue supply the Equipment to Ironclad and delaying Plaintiff in the prosecution of Plaintiff's claims.

65.     The statements, assurances, and representations of the Owners/Officers/Representatives were of such importance that C&W would not have agreed to continue to sell the Equipment to Ironclad but for the false statements and materially misleading inducements made by the Owners/Officers/Representatives.

66.     As a direct and proximate result of such representations, assurances, misrepresentations, and false statements and omissions of material fact, and C&W's reasonable reliance thereon, C&W has suffered actual damages, including economic losses, lost business opportunity, attorney's fees, interest, and other damages, direct and consequential, plus such other relief to which Plaintiff may be legally and equitably entitled, including exemplary damages.

## COUNT 6:  Unjust Enrichment
### (Ironclad)

67.     In addition to and/or in the alternative to the foregoing claims, Plaintiff would show that Ironclad has been unjustly enriched and will continue to be unjustly enriched if Ironclad is not required to pay Plaintiff for the Equipment, and/or the proceeds resulting from Ironclad's use and sale of the Equipment, plus continually accruing interest and attorney's fees and other costs associated with the recovery of such amounts.  Ironclad accepted the Equipment provided by Plaintiff but has failed to pay for such Equipment to Plaintiff's detriment, in an amount of at least $3,998,122.00.

## COUNT 7:  Transfers Fraudulent as to Present and/or Future Creditor
### (All Defendants)

68.     Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 - 67 above as if set forth and fully restated herein.

69.     Defendants have committed fraudulent transfer as to a present and/or future creditor in violation of the Uniform Fraudulent Transfer Act ("UFTA"), Tex. Bus. & Comm. Code § 24.005.  Section 24.005(a) provides that: "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 10 of 65

(B)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

70.     Section 24.005(b) further provides, in relevant part, that "in determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

(1)  the transfer or obligation was to an insider;

(2)  the debtor retained possession or control of the property transferred after the transfer;

(3)  the transfer or obligation was concealed;

(4)  before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)  the transfer was of substantially all the debtor's assets;

(6)  the debtor absconded;

(7)  the debtor removed or concealed assets;

(8)  the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)  the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)  the transfer occurred shortly before or shortly after a substantial debt was incurred."

71.     Defendants have additionally committed fraudulent transfer as to a present creditor in violation of Section 24.006 of the UFTA.  Section 24.006 provides that:

"(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."

72.     Per the definition of "insolvency" under Section 24.003, Defendants are most definitely insolvent and was insolvent at the time of its wrongful actions.

73.     Therefore, as the defrauded creditor, C&W has the following remedies, as explicitly provided by Section 24.008 of the UFTA:

---

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 11 of 65

"(a)  In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 24.009 of this code, may obtain:

> (1)  avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

> (2)  an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or

> (3)  subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

>> (A)  an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

>> (B)  appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

>> (C)  any other relief the circumstances may require.

(b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."

74.    Plaintiff hereby requests that this Court act consistent with the UFTA and protect Plaintiff by the issuance of an injunction against Defendants' disposition of company assets, including the Equipment and the proceeds resulting from use of the Equipment, and all other remedies available to protect against the transfer, concealment, and disposition of assets that can be used to satisfy a judgment.

**COUNT 8 – Breach of Fiduciary Duty**
**(All Defendants)**

75.    Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 - 74 above as if set forth and fully restated herein.

76.    Texas has a legal doctrine called the "trust fund doctrine", which provides that when a corporation becomes insolvent and ceases doing business, then its assets become a trust fund for the benefit, primarily, of its creditors.  The officers and directors owe a fiduciary duty to the creditors, which obligates the officers and directors to administer the corporate assets for the benefit of the creditors and to ratably distribute the corporate assets to the creditors.  The breach of this duty gives rise to a cause of action which can be prosecuted directly by the creditors against the officers and directors.

77.    Here, Ironclad has clearly and indisputably become insolvent and is ceasing as an ongoing business.  As a result, Ironclad's assets, including the Equipment and all proceeds generated from the use of the Equipment, have become a trust fund for the benefit, primarily, of its creditors, including C&W.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 12 of 65

78.     Because Ironclad has become insolvent, the Owners/Officers/Representatives breached their fiduciary duty to Plaintiff by, among other things, failing to administer the corporate assets of Ironclad for the benefit of the creditors, including C&W, and failing to ratably distribute the corporate assets of Ironclad to the creditors, including C&W.  There is evidence establishing sales, or attempted sales, of the company's assets taking place, but such is occurring for the benefit of the Owners/Officers/Representatives and not for the benefit of the creditors.  C&W has made multiple attempts to seek the return of the Equipment in exchange for a credit against the amounts owed to it by Ironclad, but the Owners/Officers/Representatives have unmistakably refused such efforts and caused the loss of transactions that would have benefited both C&W and Defendants.

79.     The fiduciary duties breached by the Owners/Officers/Representatives give rise to a presumption of unfairness and necessitate the imposition of a harsh liability standard.  The Owners/Officers/Representatives have taken gratuity, benefit, and acquisition of interests adverse to Plaintiff without a full disclosure and has taken advantage of opportunities that have presented themselves as a direct or indirect result of the fiduciary relationship.

80.     The fiduciary duties breached by the Owners/Officers/Representatives have significantly damaged Plaintiff.  Plaintiff has suffered actual damages, out-of-pocket expenses, loss of business, incidental and consequential damages, fraud reliance damages, and other special fiduciary damages.

81.     Plaintiff is entitled to a disgorgement, forfeiture, and/or return of all funds and property received by Ironclad and the Owners/Officers/Representatives while the fiduciary duties were being breached.

82.     Plaintiff requests that a constructive trust be imposed on all property transferred, taken, converted, misappropriated, or otherwise wrongfully obtained by the Owners/Officers/Representatives in breach of their fiduciary duties.

83.     As a result of the injuries Plaintiff has suffered because of the Owners/Officers/Representatives' intentional and/or willful breach of fiduciary duties, Plaintiff is entitled to exemplary damages under CPRC § 41.003(a).

## VII. APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND TEMPORARY AND PERMANENT INJUNCTION

84.     Plaintiff incorporates by reference and re-alleges the facts and allegations in paragraphs 1 - 83 above as if set forth and fully restated herein.

85.     Plaintiff's application for a temporary restraining order is authorized by TEXAS CPRC § 65.011(1), which permits the grant of a writ of injunction if the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant.  TEXAS CPRC § 65.011(2) further permits the grant of a writ of injunction if a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual.

86.     Plaintiff is entitled to injunctive relief restraining Defendants from using, transferring, transporting, assigning, selling, giving away, encumbering, damaging, destroying, relocating, moving, removing, concealing, or otherwise disposing of or having any dealings with

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 13 of 65

certain personal property and funds that are the subject of Plaintiff's claims, which acts relate to the subject of pending litigation and would be in violation of the rights of Plaintiff, because such acts would tend to render the judgment in this case ineffectual.

87.    The Court may issue a temporary restraining order without notice to the adverse party if it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon.  TRCP 680.  Ex parte temporary restraining orders are "indispensable" to an action when they provide "the sole method of preserving a state of affairs in which the court can provide effective final relief."[4]

88.    Courts may enter temporary restraining orders ex parte "when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all."[5]  A temporary restraining order "should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing."[6]

89.    Plaintiff has a serious, cogent, and legitimate concern that if Defendants are notified of this action before a temporary restraining order is entered, Defendants will immediately move and hide the subject assets to the detriment of Plaintiff and the prosecution of this lawsuit.

90.    Upon information and belief, Ironclad has ceased performing services for customers, is not paying its debts as they become due, is legally insolvent, is in the process of liquidating and/or hiding its equipment and other assets, and appears to be shutting down its business.

91.    Plaintiff has discovered that Defendants are attempting to transfer, conceal, and/or dispose of company assets to third-parties to escape the debt owed to C&W and with the intent to hinder, delay, or defraud its creditors.  Upon information and belief, Ironclad and Ironclad's Owners/Officers/Representatives are hiding the Equipment and/or selling the company's assets, including the Equipment, with the intent to keep, conceal, and/or use the monies received to the exclusion and detriment of C&W.  It is believed that Defendants continue to refuse C&W's offers to return the Equipment to C&W for credit against the outstanding balance owed, because Defendants are trying to sell the Equipment and keep the proceeds for themselves to the detriment of Plaintiff.

92.    To prevent further and irreparable harm, Plaintiff is entitled to an immediate order of the Court, under TEXAS CPRC § 65.011, against all Defendants (along with their owners, officers, agents, representatives, employees, affiliated persons and entities, and those persons in active concert or participation with them), as follows:

---

[4] *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3 (2d Cir. 1979).

[5] *Id.; see also First Technology Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ("There is … another limited circumstance for which the district court may proceed ex parte: where notice to the defendant would render fruitless further prosecution of the action.").

[6] *Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *2 (W.D. Tex. Dec. 30, 2011); WRIGHT ET AL., supra, § 2948.3 ("The [temporary restraining] order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party.").

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 14 of 65

a.  Defendants shall not, nor shall Defendants allow any other person or entity to, use, transfer, transport, assign, sell, give away, encumber, damage, destroy, relocate, move, remove, conceal, or otherwise dispose of or have any dealings with any of the company's assets, including but not limited to the Equipment that Ironclad purchased from C&W.

b.  Defendants shall not, nor shall Defendants allow any other person or entity to, use, transfer, transport, assign, sell, give away, encumber, relocate, move, remove, conceal, or otherwise dispose of, withdraw, or have any dealings with any funds, proceeds, or monies which belong to, are in the possession of, are titled in the name of, or are being held for the benefit of Ironclad, including but not limited to any funds or proceeds held by FundThrough USA pursuant to its factoring arrangement with Ironclad.

c.  Defendants shall not destroy, damage, or delete any files, documents, photographs, evidence, or records, electronic or otherwise, that relates or pertains to any of the matters implicated by this lawsuit, the Equipment, or Ironclad's business and assets, including but not limited to all phones, smart devices, hard drives, backups, archives, cameras, audio and video recorders, and other possible sources of stored metadata or information.

d.  Defendants shall not use, transfer, transport, assign, sell, give away, encumber, relocate, move, remove, conceal, or otherwise dispose of, withdraw, or have any dealings with any funds, proceeds, or monies paid to or received by Defendants from anyone as a result of the use, sale, or transfer of any of the Equipment that Ironclad purchased from C&W.  In addition, within 72 hours of this Order, Ironclad shall provide to C&W an itemized list setting forth in adequate detail each and every piece of the Equipment that has been sold or transferred to a third-party prior to the date of this Order, including the identity of the third-party and the details and consideration pertaining to any such sale or transfer.

e.  Defendants shall, within 48 hours of this Order, return to Ironclad's warehouse and securely store, until further order of the Court or agreement of the parties, all the pieces of the Equipment that Ironclad purchased from C&W, including all the Equipment which Defendants have at any time removed and transported away from Ironclad's warehouse.  In addition, within 72 hours of this Order, Ironclad shall provide to C&W an inventory setting forth in adequate detail each and every piece of the Equipment that is being securely stored in Ironclad's warehouse.

f.  Defendants shall allow C&W to inspect Ironclad's financial statements and banking records on an expedited basis, for the dates ranging from December 1, 2022 to the present, and to have the opportunity to obtain an independent audit to identify where funds received by Ironclad relating to the use or sale of the Equipment were transferred instead of such funds being paid to C&W and why Ironclad has failed to pay the outstanding balance of the Invoices owed to Plaintiff.

g.  Defendants shall be compelled to pay to Plaintiff all funds received because of Defendants' use or sale of any of the Equipment that Ironclad purchased from C&W, until the outstanding balance of the Invoices owed to Plaintiff is paid in full.

93.  It is probable Plaintiff will recover from Defendants after a trial on the merits.  Given

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 15 OF 65

the clear agreements between the parties, the clearly undisputed facts, the common law obligations at issue in this lawsuit, and Defendants' flagrant disregard for such, Plaintiff can show it has a substantial likelihood that it will prevail on the merits.  To satisfy this "element, the plaintiff's evidence need not prove that plaintiff is entitled to summary judgment; plaintiff needs only to present a prima facie case, but not demonstrate that he is certain to win."[7]

94.    The requested injunctive relief is narrow in scope and applies solely to Plaintiff's unpaid debt and would only prohibit Defendants, and those acting in concert with it, directly or indirectly, from disposing of narrowly defined assets.

95.    If Plaintiff's application is not granted, harm is imminent because Defendants will continue to use, sell, conceal, and dispose of the narrowly defined assets without compensation to Plaintiff for the amounts owed to Plaintiff and deprive Plaintiff of any opportunity to recover its judgment.  Harm is also imminent because it appears Ironclad has ceased performing services for customers, is legally insolvent, and appears to be shutting down its business.  Harm is further imminent to Plaintiff because, while Defendants continue to get free use of the Equipment purchased from Plaintiff, Plaintiff is forced to pay the expenses of the manufacturer, vendors, and shippers that were necessary to ensure the performance of Plaintiff's obligations.

96.    Ultimately, if Plaintiff's application is not granted, there is a substantial likelihood that Plaintiff will be forced to shut down its business.  Not to mention that Defendants will not be able to repay Plaintiff for the Equipment it has refused to pay for and the damage that Defendants continue to cause.

97.    The harm that will result if the temporary restraining order is not issued is irreparable because Plaintiff will not be able to continue to operate its business nor will Plaintiff be able to obtain satisfaction of its judgment against Defendants.  The failure to obtain satisfaction of the debts, while at the same time having to pay the expenses incurred in providing the underlying Equipment, will cause significant damage to the business of Plaintiff.

98.    It is well-established that "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'"[8]  For example, a "district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds."[9]  Indeed, a preliminary injunction, designed to maintain the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be hide funds or be insolvent at the time of judgment.[10]

99.    Here, injunctive relief is needed to prevent Defendants from using, transferring, transporting, assigning, selling, giving away, encumbering, damaging, destroying, relocating, moving, removing, concealing, or otherwise disposing of or having any dealings with Defendants' assets, which Plaintiff seeks to recover in this case.  This threat is real and highly probable given Defendants' prior and most recent actions as set forth herein.[11]  There is no adequate remedy at law because, unless Defendants are enjoined as requested herein, Defendants' acts will render the judgment in this case ineffectual and will cause significant

---

[7] *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).

[8] *Id.*

[9] *Id.* (Emphasis added).

[10] *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986).

[11] *See Janvey*, 647 F.3d at 601 ("The party seeking a preliminary injunction must also show that the threatened harm is more than mere speculation.").

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 16 of 65

damages to Plaintiff's business, which are impossible to determine or calculate.  If Defendants are not enjoined, Plaintiff's equitable remedies will be rendered moot.[12]

100.     C&W will also suffer irreparable harm if Defendants are able to access, use, hide, withdraw, and/or transfer money from company accounts, its factoring account with FundThrough USA, and any personal account into which company funds have been, or are being, deposited.  If Defendants can access, use, withdraw or transfer money from these accounts, it will take and fraudulently transfer these funds to hide or shield them from Plaintiff and this Court's authority.

101.     Maintaining the status quo pending the resolution of this action would not harm Defendants, because the severity of the impact on Defendants should the temporary injunction be granted is much less than the hardship that would occur to Plaintiff if the injunction should be denied.  As the threatened and continuing injury to Plaintiff outweighs the harm that the injunction may cause to Defendants, this factor weighs in favor of Plaintiff.  Whereas Plaintiff is faced with losing the ability to recover the amounts to which it is owed for providing the Equipment, the requested injunctive relief would not prohibit Defendants from continuing to operate its business and utilizing its other assets that it actually has paid for as Defendants desire.

102.     There is no adequate remedy at law which will give Plaintiff complete, final, and equitable relief if the Temporary Restraining Order and Temporary Injunction are not granted, because the accompanying lawsuit and any resolution associated therewith will take an extensive period of time, and by such time, the Equipment will be lost in its entirety.  Plaintiff does not have an adequate remedy at law because Defendants are incapable of responding in damages and will not be able to pay the amount of the judgment if Defendants continue to transfer assets.

103.     Finally, granting the preliminary injunction will not disserve the public interest.  Defendants' conduct was fraudulent, unjust, and unlawful, and providing a remedy to uphold the law and keep Plaintiff in good financial standing and operational is in the public interest.[13]  Thus, if an injunction is issued, it will not adversely affect the public interest.

104.     The Court should not require any security to be posted. Plaintiff is a victim of Defendants' fraudulent schemes and seeks to prevent Defendants from doing further harm to Plaintiff.  In this circumstance, Plaintiff submits the Court should use its considerable discretion in ordering that no security be posted.  However, if required by the Court, Plaintiff is willing to post a reasonable bond considering the facts and circumstances, although, Plaintiff would argue that the bond, if any, should be in a minimal amount on the basis that there is undisputable evidence attached hereto of Defendants' wrongful actions, the substantial likelihood that Plaintiff will prevail on the merits, and that the continuance of Defendant's wrongful actions will make any judgment against Defendants ineffectual.  Further, because Ironclad is presumed to be insolvent, has wrongful possession of the Equipment and property of significant value, any damage Defendants could suffer as a result of this request would be very nominal, if any at all.  Thus, the injunctive relief sought by Plaintiff herein will not cause Defendants to incur any loss or damages.

---

[12] *Id.*  ("If the defendants were to dissipate or transfer these assets out of the jurisdiction, the district court would not be able to grant the effective remedy, either in equity or in law, that the Receiver seeks.").

[13] *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553 ¶ 35 (S.D. Tex. 2014) ("[I]t is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law.").

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 17 OF 65

105.    As Plaintiff has met the applicable requirements, Plaintiff prays that the Court take the necessary action to preserve the status quo and grant its application for TRO and injunctive relief.

### Request for Temporary Injunction

106.   Plaintiff asks the Court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendant.

107.   Plaintiff has joined all indispensable parties under Texas Rule of Civil Procedure 39.

### Request for Permanent Injunction

108.   Plaintiff asks the Court to set its request for a permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants.

### VIII. EQUITABLE RELIEF
### Constructive Trust

109.   In addition to and in the alternative to the monetary damages and injunctive relief previously set forth herein, Plaintiff seeks equitable relief from this Court via an order appointing a constructive trust on certain property of Defendants.   A constructive trust is an equitable remedy that is designed to prevent an individual from gaining through fraud or constructive fraud or to prevent unjust enrichment.   The need for a constructive trust has arisen because of Defendants' wrongful actions in connection with the purchase of the Equipment and failure to pay to C&W the amounts received as a result of Defendants' use of the Equipment.

110.   Texas law provides for the imposition of a constructive trust on the proceeds or revenues generated from property wrongfully acquired (*i.e.*, the Equipment that was not paid for).  Where legal title to property is obtained by fraud or in any other unconscientious manner, the property cannot be equitably retained when it really belongs to another, and equity impresses a constructive trust on the property in favor of the one who in good conscience is entitled to it, and who is considered in equity as a beneficial owner.  A constructive trust must be imposed by the Court in favor of Plaintiff and against Defendants to prevent unjust enrichment.

### IX. CONDITIONS PRECEDENT

111.    All conditions precedent to Plaintiff's recovery herein against Defendants have been performed and/or have occurred.

### X. MOTION FOR EXPEDITED DISCOVERY

112.    The Court may grant expedited discovery in anticipation of a temporary injunction hearing.[14]

113.    Good cause exists to expedite discovery in this proceeding.    Plaintiff has requested that the Court enter against Defendants both a temporary restraining order and a

---

[14] *See, e.g., Luxenberg v. Marshall*, 835 S.W.2d 136,138 (Tex. App – Dallas 1992, no writ); *Aubin v. Territorial Mortgage Co. of Am.*, 640 S.W.2d 737,739 (Tex. App. – Houston [14th Dist.] 1982, no writ).

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 18 OF 65

temporary injunction. The requested temporary restraining order, if granted, will expire only fourteen days from its entry. TRCP 680. Further, regardless of whether the court enters a temporary restraining order, Plaintiff requests that the Court schedule, as soon as possible, a hearing on its application for temporary injunction. Expedited discovery will allow Plaintiff to collect further evidence required to support its application for a temporary injunction.[15]

114. C&W requests the following expedited discovery to prepare for the temporary injunction hearing of this matter. As shown by the pleadings on file, the deposition and documents requested are relevant to the issues to be presented at the temporary injunction hearing. C&W requests this discovery in addition to any additional discovery, including additional depositions of any witness, that may be necessary to present the merits of the case.

    a. <u>Requests for Production</u>. C&W requests that the Court order Defendant, Ironclad, to produce documents responsive to the following categories, without redaction, within five (5) calendar days of the Court's order:

      1. All financial and bank statements for all of Ironclad's bank accounts and lending or credit facilities since its inception;

      2. All invoices submitted to customers for goods provided or services performed by Ironclad since its inception;

      3. All monthly Profit & Loss statements (detailed) for Ironclad since its inception;

      4. Ironclad's Accounts Payable Ledger (current through December 1, 2023) setting forth all outstanding amounts owed to vendors, suppliers, and other creditors;

      5. Ironclad's Accounts Receivable Ledger (current through December 1, 2023) setting forth all outstanding amounts owed to Ironclad from any persons or entities;

      6. Ironclad's payroll reports for each pay period since its inception (this a request for that same type of report that was shown to C&W's attorney during mediation);

      7. All contracts and other agreements between Ironclad and FundThrough USA;

      8. All agreements, letters of intent, contracts, and other documents relating to the use, operation, sale, transfer, or conveyance of the Equipment at issue; and

      9. All agreements, letters of intent, contracts, and other documents relating to any intent or agreement to assign, sell/purchase, or otherwise dispose of any assets belonging to Ironclad, including the Equipment, from its inception to the present.

    b. <u>Depositions</u>. C&W requests the Court order that Plaintiff may take the deposition of each deponent listed below in advance of the temporary injunction hearing. The depositions shall take place within Ector or Midland Counties and on dates that are mutually agreed to by the parties, but in any event a party shall make itself available for deposition within three (3) business days of a request served by personal service, e-mail, service to Defendants' counsel, or overnight delivery, and all depositions must be

---

[15] *See Aubin v. Territorial Mortg. Co. of Am., Inc.*, 640 S.W.2d 737, 739 (Tex. App.–Houston [14th Dist.] 1982) (an expedited discovery order was entered to permit the parties to prepare for a temporary injunction hearing).

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 19 of 65

completed no later than two (2) business days prior to the temporary injunction hearing in this matter.  Each deposition shall not exceed two (2) hours of testimony.

1. Corporate representative of Ironclad Pressure Control, LLC;
2. Albert DeHoyos;
3. Bailee Nicole Rivas-Fernandez; and
4. Ermelinda (Mindy) Rivas.

## XI. ATTORNEY FEES

115.    Ironclad's default has made it necessary for Plaintiff to employ the undersigned attorney to file this lawsuit.  Therefore, request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas CPRC, as well as under equity and common law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, C&W International Fabricators, LLC, respectfully prays that Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants for the following relief and damages in an amount within the jurisdictional limits of the Court:

A.    The full amount of the actual damages Plaintiff has suffered as a consequence of the conduct of Ironclad, including but not limited to the amount of at least $3,998,122.00 for the unpaid Invoices for the Equipment provided, approximately $250,000.00 for the cost to restore the Custom Valves to their original condition, and unreimbursed shipping costs of $68,100.00;

B.    Temporary restraining order and temporary/permanent injunction as prayed for, herein;

C.    The creation of a constructive trust on funds and property obtained by Defendants as a result of fraud and other tortious conduct;

D.    Reasonable and necessary attorneys' fees and expenses through trial and all resulting appeals;

E.    Costs of court;

F.    Compensatory and/or exemplary/punitive damages for Defendants' wrongful and tortious conduct in an amount deemed appropriate by the trier of fact;

G.    Pre-judgment and post-judgment interest at the maximum legal rate; and

H.    All such other and further relief, both general and specific, to which Plaintiff may show itself justly entitled at law or in equity.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 20 of 65

Respectfully submitted,

**HAMM LAW GROUP, PLLC**
3000 N. Garfield, Suite 205
Midland, Texas 79705
Phone: (432) 375-6060

By:  */s/ Jason B. Hamm*
JASON B. HAMM
State Bar No. 24058639
*jason@permianlaw.com*
RICK G. STRANGE
State Bar No. 19356700
*rick@permianlaw.com*
F.T. NICK HOOD
State Bar No. 24087744
*nick@permianlaw.com*

**ATTORNEYS FOR PLAINTIFF**

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 21 of 65

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF MIDLAND | § |

### AFFIDAVIT AND VERIFICATION OF CHRIS CARROLL

**BEFORE ME**, the undersigned authority, on this day personally appeared Chris Carroll, who, after being duly sworn, on his oath did depose and say as follows:

1. "My name is Chris Carroll, I am over 18 years of age, of sound mind, and capable of making this Affidavit.

2. I am the Sales Manager for C&W International Fabricators, LLC ("C&W"), which is a business located in Sugar Land, Fort Bend County, Texas, and I have care, custody, and control of all records concerning the account and transactions with Defendant, Ironclad Pressure Control, LLC ("Ironclad").

3. I have personal knowledge of the facts and statements set forth in the foregoing Plaintiff's Original Petition, Application for Injunctive Relief, and Motion for Expedited Discovery ("Petition").

4. I hereby state and affirm that the statements made in Plaintiff's Petition, as well as this Affidavit, are true and correct, and are provided in support of C&W's claims, the Petition, and the application for injunctive relief.

5. I hereby aver that the claim referenced by the purchase orders (attached as Exhibit "B" to Plaintiff's Petition) and the Invoices (attached as Exhibit "C" to Plaintiff's Petition) is within my personal knowledge, is just and true, and is due by Defendant, Ironclad, and that all just and lawful offsets, payments, and credits to this account have been allowed.

6. The records show that a total principal balance of $$3,998,122.00, exclusive of interest, is due and payable by Defendant, Ironclad, to C&W for the unpaid Invoices for the Equipment provided and demand for payment was made more than thirty days ago. C&W has additional damages in the amount of approximately $250,000.00 for the cost to restore the Custom Valves to their original condition and for unreimbursed additional shipping costs of $68,100.00.

7. In December 2022, Ironclad, via Albert DeHoyos, contacted C&W to purchase certain oilfield fracing equipment (the "Equipment"), as identified and described in the multiple purchase orders and written correspondence (attached as Exhibit "B" to Plaintiff's Petition).

8. Ironclad sent C&W purchase orders for the Equipment it wanted to purchase and upon C&W's receipt of Defendant's purchase orders, C&W placed the order with the manufacturer to have the Equipment specially manufactured per Ironclad's request. Ironclad's initial purchase orders (PO #1001 and # 1002) were dated December 21, 2022. Once the Equipment was manufactured, C&W made sure the Equipment was delivered to Ironclad's warehouse located in Ector County, Texas. C&W has signed receipts evidencing the delivery of all of the Equipment at issue.

**EXHIBIT "A"**

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 22 of 65

9. In the ordinary course of its business, C&W fully performed its obligations under the agreement with Ironclad, which required that C&W deliver to Ironclad the specific Equipment that Ironclad ordered, as evidenced by each of the purchase orders. However, Ironclad failed to perform its obligation under the agreement, which required Ironclad to pay C&W according to the payment terms set forth in Ironclad's own purchase orders.

10. Per the purchase orders, the "Payment Terms" for the Equipment that Ironclad purchased from C&W were agreed upon as follows: "Total amount due will be paid in (4) installments. First Installment will be paid (30) days from the date of complete order receipt and remaining payments will be paid every (30) days following the first payment." Ironclad submitted multiple purchase orders for the Equipment and received delivery of the Equipment from C&W, with Ironclad receiving its first order from C&W on March 7, 2023 and Ironclad receiving its last order from C&W on June 16, 2023.

11. Ironclad began using the Equipment for its customer in April 2023 and was invoicing its customer approximately $1,000,000 per month. Despite generating such revenues from its use of the Equipment, Ironclad failed to make agreed upon payments for the purchase of the Equipment.

12. In consideration of the Equipment provided, on which systematic records have been kept, Ironclad promised and became bound and liable to pay to C&W the customary charges for the Equipment in the total sums set forth in the Invoices, being a reasonable charge for such items. As of the date of the filing of this lawsuit, Ironclad has breached its agreed upon obligation to timely pay C&W the amount owed as to each and every order for Equipment submitted and received by Ironclad.

13. Upon confirmation and acceptance of each delivery to Ironclad of the Equipment ordered and provided, C&W issued Ironclad an invoice that corresponded to the specific that C&W Equipment sold and delivered to Ironclad. C&W's Invoices[1] set forth the details of the dates, types, quantities, description, and rates of the Equipment provided by C&W to Ironclad. C&W's Invoices are attached as Exhibit "C" to Plaintiff's Petition.

14. Relying on the representations and assurances of Defendants, as well as the long history of business dealings between the representatives of the parties, C&W continued to supply Ironclad with the Equipment it ordered. Unfortunately, despite C&W's full performance, Ironclad continued to fail to make payments of the Invoices as agreed, and C&W was forced to decline to accept future orders unless and until Ironclad became current on its past due Invoices.

15. As of October 11, 2023, the principal balance owed by Ironclad to C&W on account of the Equipment sold and delivered was $4,206,827.00, after all just and lawful offsets, payments, and credits have been allowed. Then, on October 13, 2023, Ironclad made a partial payment of $100,000.00 towards the outstanding balance it owed, as well as Ironclad returned (and C&W accepted the return) the following items of unused equipment previously delivered to Ironclad in exchange for a credit against the outstanding balance owed by Ironclad to C&W:

| UNUSED/CRATED EQUIPMENT |
| --- |

---

[1]    Invoice Numbers 58550, 58641, 58644, 58661, 58688, 58747, 58752, 58756, 58758, 58779, 58822, 58826, 58847, 58849, and 58871.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 23 of 65

| QTY | ITEM DESCRIPTION | INVOICE PRICE PER UNIT | TOTAL |
|---|---|---|---|
| 8 | Manual Gate Valve, 4-1/16", 10,000 PSI, FC Type, EE Trim | $3,690.00 | $29,520.00 |
| 12 | Weco Flange (Threaded Half), 4-1/16", 10M x 4" FIG 1002 Female | $875.00 | $10,500.00 |
| 4 | Weco Flange (Threaded Half), 4-1/16", 10M x 4" FIG 1502 Female | $960.00 | $3,840.00 |
| 3 | Goat Head (Frac Head), 7-1/16" 10,000 PSI, Studded top and Flange bottom, w/6 4-1/16", 10M Studded outlets, 45 degree design | $9,235.00 | $27,705.00 |
| 2 | Studded Cross, 4-way, 7-1/16" 10M x 4-1/16" 10M, 4130 Forged | $3,670.00 | $7,340.00 |
| 2 | Spacer Spool, 7" 15M x 120" | $10,500.00 | $21,000.00 |
| 1 | Spacer Spool, 7" 15M x 96" | $8,800.00 | $8,800.00 |
| | TOTAL OF ALL UNUSED/CRATED EQUIPMENT | | **$108,705.00** |

16. As a result of the return of the above-listed equipment and the above-mentioned $100,000 payment, as of October 13, 2023, the principal amount of the outstanding balance of the Invoices owed by Ironclad to C&W, allowing for all payments, credits and offsets, was $3,998,122.00.

17. On numerous occasions, C&W has demanded that Ironclad pay this amount, but Ironclad has not done so. C&W's attorney sent the initial demand letter to Ironclad on September 8, 2023 (attached as Exhibit "D" to Plaintiff's Petition) and informed Ironclad of the outstanding amount due and owing and provided Ironclad with a copy of the outstanding Invoices.

18. Ironclad does not dispute the significant amount of money it owes to C&W as a result of its purchase of the Equipment. However, despite C&W's demand letter and extensive discussions between the attorneys for both parties, Ironclad continues to fail and refuse to pay the outstanding amount it owes to C&W. C&W has also incurred unreimbursed additional shipping costs of $68,100.00.

19. To mitigate its losses, C&W has found multiple purchasers willing to buy the used Equipment for prices consistent with like-kind equipment purchases in the industry, and C&W has offered to accept the return of the Equipment, despite the Equipment having been used, in exchange for a credit against the outstanding balance of the Invoices. Unfortunately, Defendants have repeatedly refused to entertain such an arrangement and have caused the loss of multiple transactions with buyers willing to purchase the used Equipment for fair prices.

20. Ironclad also caused damages to C&W due to Ironclad's failure to pay for seventy (70) custom-ordered valves ("Custom Valves") that Ironclad ordered from C&W. Ironclad ordered the Custom Valves to be specifically manufactured in Ironclad's black color and with Ironclad's logo on them. However, when Ironclad failed to pay for the Equipment comprising the unpaid Invoices, C&W refused to deliver the Custom Valves and the Custom Valves have been sitting in C&W's warehouse in Houston. Before it can attempt to sell the Custom Valves to someone else, C&W must have the Custom Valves restored to their original condition by an API certified shop, and C&W is entitled to reimbursement of the significant out of pockets costs it incurs in having such restoration performed which is estimated to be in the approximate amount of $250,000.00.

21. A third-party recently informed C&W that FundThrough USA, a factoring company through whom Ironclad has been submitting its invoices for services performed using the Equipment, currently holds a significant amount of funds or proceeds which belong to, are titled in the name of, or are being held for the benefit of Ironclad pursuant to

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 24 of 65

FundThrough's factoring arrangement with Ironclad. C&W has notified FundThrough of its claims against Ironclad and requested confirmation as to whether FundThrough does in fact hold funds or proceeds that belong to or are being held for the benefit of Ironclad, and if so, confirmation of the amount of such funds or proceeds.

22. C&W has further requested that FundThrough hold all such funds and proceeds in trust and suspend all payments, disbursements, and distributions of funds to Ironclad, for the benefit of Ironclad's creditors, until such time that FundThrough receives notice, via a court order or an agreement of the parties, to distribute such held amounts. It is C&W's contention that, under Texas law, it and potentially other creditors are entitled to recovery of all such amounts currently being held by FundThrough.

23. Ironclad is no longer performing services for customers, is not paying its debts as they become due, is trying to sell its company assets, including the Equipment, and has been moving equipment around. Upon information and belief, it additionally appears that Ironclad and the individuals Defendants may be attempting to transfer, conceal, remove, and/or dispose of property with the intent to hinder, delay, or defraud its creditors. To date, Ironclad has not paid to C&W any money received from the sale of the Equipment.

24. C&W is Ironclad's largest creditor by a wide margin. Therefore, C&W will suffer the greatest losses if Ironclad transfers, conceals, removes, and/or disposes of any property, particularly the Equipment.

25. Ironclad, and its individual owners/officers/representatives, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez, and Albert DeHoyos ("Owners/Officers/Representatives"), and possibly other unknown persons are currently taking, and have taken in the past, active steps to transfer, conceal, remove, and/or dispose of company assets, including the Equipment, and/or liquidate the business in a most urgent fashion to one or more third parties to escape their liabilities to C&W. It is further believed that Ironclad and the Owners/Officers/Representatives have sold or are attempting to sell company assets, including the Equipment, with the intent to keep, conceal, and/or use the monies received to the exclusion and detriment of C&W.

26. Multiple individuals have informed C&W that Defendants are trying to sell the Equipment to other companies in Odessa. In a text message (attached as Exhibit "E" to Plaintiff's Petition) to C&W from Jacob Cox, who owns Service Plus, C&W was notified about Ironclad's attempts to sell the Equipment. C&W has also been provided a copy of an email titled "equipment list for sale" (attached as Exhibit "F" to Plaintiff's Petition), in which Ironclad's Operations Manager is circulating a list of equipment that Defendants are trying to sell, and every item on the list is the Equipment that C&W sold to Ironclad. C&W was also informed by Ironclad's neighbor, Firebird Flow Control, LLC, that its employees witnessed four trucks loaded with equipment leaving Ironclad's yard in the early hours of a Saturday morning (*i.e.*, around 1:00 a.m.), and this occurred despite the fact that, per Ironclad's own representations to C&W, Ironclad did not have any ongoing jobs for customers at the time.

27. Further affiant sayeth not."

*Signature page follows.*

---

Affidavit and Verification of Chris Carroll                                                    Page **4** of 5

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 25 of 65



_____
Chris Carroll, *Affiant*

 

**SUBSCRIBED AND SWORN TO BEFORE ME**, by the Affiant, Chris Carroll, on this 4th day of December 2023.

CASSI DORMADY
My Notary ID # 129393583
Expires April 19, 2025

_____
Notary Public, State of Texas

---

Affidavit and Verification of Chris Carroll                          Page **5** of 5

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 26 of 65

## PURCHASE ORDER

To:
C&W International Fabricators
Chris Carroll
5855 Cunningham Rd
Houston , TX 77041
Tel: (936) 697-4557

Date: December 21,2022

PO #: 1001

| Description | QTY | Price Per Unit | Total |
|---|---|---|---|
| Valve, Manual, 7 1/16"15M Cameron FLSR Type flanged, EE PSL3 PR1 17 1/2 turn | 8 | $23,900.00 | $191,200.00 |
| Valve, Hydraulic, 7 1/16"15M Cameron FLSR type, flanged EE PSL3 PR1 | 28 | $24,800.00 | $694,400.00 |
| Studded cross, 7 1/16 15M x 4 1/16 15M | 14 | $4,840.00 | $67,760.00 |
| Valve, Hydraulic 4 1/16 15M Cameron FLSR Type EE PSL3 PR1 | 14 | $9,260.00 | $129,640.00 |
| Valve, Manual 4 1/16 15M Cameron FLSR Type EE PSL3 PR1 | 14 | $9,890.00 | $138,460 |
| DSA, 7-1/16" 15M x 5-1/8" 15M x 5" with studs and nuts | 6 | $1,560.00 | $9,360.00 |
| Weco flange, 4-1/16" 15M x 3" 1502 thread with plug | 14 | $850.00 | $11,900.00 |
| Studded tee, 7-1/16" 15M with studs and nuts | 18 | $6,500.00 | $117,000.00 |
| Swivel spool, 7-1/16" 15M x 20" | 14 | $3,600.00 | $50,400.00 |
| Blind flange, 7-1/16" 15M | 10 | $1,095.00 | $10,950.00 |
| Weco flange, 7-1/16" 15M x 2" 1502 thread with plug | 8 | $1,320.00 | $10,560.00 |
| Spacer spool, 7-1/16" 15M x 10' | 20 | $10,500.00 | $210,000.00 |
| Spacer spool, 7-1/16" 15M x 8' | 15 | $8,800.00 | $132,000.00 |
| Spacer spool, 7-1/16" 15M x 6' | 12 | $6,970.00 | $83,640.00 |
| Spacer spool, 7-1/16" 15M x 4' | 12 | $5,850.00 | $70,200.00 |
| Spacer spool, 7-1/16" 15M x 3' | 12 | $4,536.00 | $54,432.00 |
| Spacer spool, 7-1/16" 15M x 2' | 12 | $3,410.00 | $40,920.00 |
| Spacer spool, 7-1/16" 15M x 18" | 10 | $2,890.00 | $28,900.00 |
| DSA, 7-1/16" 10M x 7-1/16" 15M with studs and nuts | 12 | $1,580.00 | $18,960.00 |

Page 1 of 2

## EXHIBIT "B"

PO #: 1001

| Description | QTY | Price Per Unit | Total |
|---|---|---|---|
| Adapter spool, 7-1/16" 15M x 7 1/16" 10M x 16" OAL | 12 | $2,750.00 | $33,000.00 |
| Test flange, 7-1/16" 15M with 1/2" NPT on center | 2 | $1,160.00 | $2,320.00 |
| Test flange, 7-1/16" 15M with 9/16" on center | 2 | $1,160.00 | $2,320.00 |
| Blind flange, 4-1/16" 15M | 6 | $440.00 | $2,640.00 |
| Weco flange, 4-1/16" 15M x 2" 1502 thread with plug | 6 | $675.00 | $4,050.00 |
| | | **Subtotal** | $2,115,012.00 |
| | | **Sales Tax @ 0.0%** | $0.00 |
| | | **Shipping** | $0.00 |
| | **Total Purchase Order Amount** | | $2,115,012.00 |

Special Instructions:
1. Please contact us immediately if you are unable to fulfill the order as requested.
2. Please enclose two copies of the final invoice with the order.
3. Payment Terms: Total amount due will be paid in (4) installments. First installment will be paid (30) days from the date of complete order receipt and remaining payments will be paid every (30) days following the first payment.

_____

Authorized By

_____

Date

Page 2 of 2

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 28 of 65

PURCHASE ORDER

To:
C&W International Fabricators
Chris Carroll
5855 Cunningham Rd
Houston , TX 77041
Tel: (936) 697-4557

Date: December 21,2022

PO #: 1002

| Description | QTY | Price Per Unit | Total |
|---|---|---|---|
| Valve, Manual, 7 1/16"15M Cameron FLSR Type flanged, EE PSL3 PR1 17 1/2 turn | 8 | $23,900.00 | $191,200.00 |
| Valve, Hydraulic, 7 1/16"15M Cameron FLSR type, flanged EE PSL3 PR1 | 28 | $24,800.00 | $694,400.00 |
| Studded cross, 7 1/16 15M x 4 1/16 15M | 14 | $4,840.00 | $67,760.00 |
| Valve, Hydraulic 4 1/16 15M Cameron FLSR Type EE PSL3 PR1 | 14 | $9,260.00 | $129,640.00 |
| Valve, Manual 4 1/16 15M Cameron FLSR Type EE PSL3 PR1 | 14 | $9,890.00 | $138,460 |
| DSA, 7-1/16" 15M x 5-1/8" 15M x 5" with studs and nuts | 6 | $1,560.00 | $9,360.00 |
| Weco flange, 4-1/16" 15M x 3" 1502 thread with plug | 14 | $850.00 | $11,900.00 |
| Studded tee, 7-1/16" 15M with studs and nuts | 18 | $6,500.00 | $117,000.00 |
| Swivel spool, 7-1/16" 15M x 20" | 14 | $3,600.00 | $50,400.00 |
| Blind flange, 7-1/16" 15M | 10 | $1,095.00 | $10,950.00 |
| Weco flange, 7-1/16" 15M x 2" 1502 thread with plug | 8 | $1,320.00 | $10,560.00 |
| Spacer spool, 7-1/16" 15M x 10' | 20 | $10,500.00 | $210,000.00 |
| Spacer spool, 7-1/16" 15M x 8' | 15 | $8,800.00 | $132,000.00 |
| Spacer spool, 7-1/16" 15M x 6' | 12 | $6,970.00 | $83,640.00 |
| Spacer spool, 7-1/16" 15M x 4' | 12 | $5,850.00 | $70,200.00 |
| Spacer spool, 7-1/16" 15M x 3' | 12 | $4,536.00 | $54,432.00 |
| Spacer spool, 7-1/16" 15M x 2' | 12 | $3,410.00 | $40,920.00 |
| Spacer spool, 7-1/16" 15M x 18" | 10 | $2,890.00 | $28,900.00 |
| DSA, 7-1/16" 10M x 7-1/16" 15M with studs and nuts | 12 | $1,580.00 | $18,960.00 |

Page 1 of 2

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 29 of 65

PO #: 1002

| Description | QTY | Price Per Unit | Total |
|---|---|---|---|
| Adapter spool, 7-1/16" 15M x 7 1/16" 10M x 16" OAL | 12 | $2,750.00 | $33,000.00 |
| Test flange, 7-1/16" 15M with 1/2" NPT on center | 2 | $1,160.00 | $2,320.00 |
| Test flange, 7-1/16" 15M with 9/16" on center | 2 | $1,160.00 | $2,320.00 |
| Blind flange, 4-1/16" 15M | 6 | $440.00 | $2,640.00 |
| Weco flange, 4-1/16" 15M x 2" 1502 thread with plug | 6 | $675.00 | $4,050.00 |
| | | Subtotal | $2,115,012.00 |
| | | Sales Tax @ 0.0% | $0.00 |
| | | Shipping | $0.00 |
| | Total Purchase Order Amount | | $2,115,012.00 |

Special Instructions:
1. Please contact us immediately if you are unable to fulfill the order as requested.
2. Please enclose two copies of the final invoice with the order.
3. Payment Terms: Total amount due will be paid in (4) installments. First installment will be paid (30) days from the date of complete order receipt and remaining payments will be paid every (30) days following the first payment.

_____

Authorized By

_____

Date

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 30 of 65

## Jason Hamm

| | |
|---|---|
| **From:** | Jason Hamm |
| **Sent:** | Tuesday, September 5, 2023 7:58 AM |
| **To:** | Cassi Dormady |
| **Subject:** | FW: Ironclad Equipment Revised for P.O.# 1004 |

Thanks,
Jason

**Hamm Law Group, PLLC**
3000 N. Garfield, Ste. 205
Midland, Texas 79705
(432) 375-6060
*PermianLaw.com*

**From:** Chris Carroll <chris.carroll@cwifab.net>
**Sent:** Monday, September 4, 2023 8:05 PM
**To:** Jason Hamm <jason@permianlaw.com>
**Subject:** Fwd: Ironclad Equipment Revised for P.O.# 1004

---------- Original Message ----------
From: Paul <paul@cwifab.net>
To: "philipp@fundthrough.com" <philipp@fundthrough.com>
Cc: Chris Carroll <chris.carroll@cwifab.net>
Date: 08/30/2023 3:41 PM CDT
Subject: Fwd: Ironclad Equipment Revised for P.O.# 1004

Philip,

Here is the P/O 1004 which Eamil list issued P/O number.

Thanks,
Paul

-------- Forwarded Message --------
**Subject:** Ironclad Equipment Revised for P.O.# 1004
  **Date:** Fri, 3 Mar 2023 09:55:28 -0500 (EST)
  **From:** Chris Carroll <chris.carroll@cwifab.net>

1

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 31 of 65

**To:**Paul <paul@cwifab.net>, Administrative Account <admin@ironcladpressurecontrol.com>, Charles Ramirez <Charles@ironcladpressurecontrol.com>

Charles & Mindy,

Per your request below is the new pricing per unit including adds, revisions, etc..

7-7" 10K FLSR Manuals, $17,730 each - Totaling $124,110.00
10-7" 10K FLSR hydraulics, $17,860 each - Totaling $178,600.00
15-5" 15K FLSR Hydraulics, $19,050 each - Totaling $285,750.00
18-5" 15K x 7"15K Adapter spools, $2,680 each - Totaling $48,240.00
6-7" 15K x 4" 15K Crosses, $4,840 each - Totaling $29,040.00
20-4" 15k FLSR Manual valves, 9,260 each - Totaling $185,200.00
8-4" 15K FLSR Hydraulic valves, $9,890 each - Totaling $79,120.00
10-7" 15K 10' Spools, $10,500 each - Totaling $105,000.00
6-7" 15K x 7"10 Adapter spools, $2,775 each - Totaling $16,650.00
12-7"15k 3' spools, $4,420 each qty 5 in stock. I may have some on
water will let you know in the morning. As of now - Totaling $22,100.00
24-3" 15K x 3"1502 weco flanges, $595 each - Totaling $14,280.00
3-7" 15K FLSR Hydraulics, $24,800.00 each - Totaling $74,400.00

Revised, P.O.# 1004 amount as of this list as is now $1,162,490.00

On 03/03/2023 8:21 AM CST Paul <paul@cwifab.net> wrote:

Mindy,
That is fine for 10' spool, $10,500 each. QTY 10, 10' spool will be in late next week.
QTY 10 7" 10M hydraulic valves will be in next week Monday/Tuesday.
Thanks,
Paul

On 3/3/2023 8:16 AM, Administrative Account wrote:

Chis,

Please use PO# 1004 for this order. I will be sending you the hard copy
of the PO for your records as well. We anticipate in picking all this
equipment up no later than Monday. I did that the 10' spools were a bit
higher this go round. Will you guys honor the $10,500 as you quoted me
on the two orders I placed back in December. Let know please.

Thank you,
Mindy Rivas
*Manager*
Ironclad Pressure Control, LLC.

2

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 32 of 65



This e-mail is intended only for the person to whom it is addressed (the "addressee") and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use that a person other than the addressee makes of this communication is prohibited and any reliance or decisions made based on it, are the responsibility of such person. We accept no responsibility for any loss or damages suffered by any person other than the addressee as a result of decisions made or actions taken based on this communication or otherwise. If you received this in error, please contact the sender and destroy all copies of this e-mail.

**From:** Administrative Account <admin@ironcladpressurecontrol.com>
**Sent:** Friday, March 3, 2023 8:04:41 AM
**To:** Chris Carroll <chris.carroll@cwifab.net>; Charles Ramirez <Charles@ironcladpressurecontrol.com>; Paul Wang <paul@cwifab.net>
**Subject:** Re: Ironclad Equipment

Chris,

Can you add 3- 7"15 hydraulic valves. Also do you have any 7"10 x 7"15 dsa's?

Thank you,
Mindy Rivas
*Manager*
Ironclad Pressure Control, LLC.



This e-mail is intended only for the person to whom it is addressed (the "addressee") and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use that a person other than the addressee makes of this communication is prohibited and any reliance or decisions made based on it, are the responsibility of such person. We accept no responsibility for any loss or damages suffered by any person other than the addressee as a result of decisions made or actions taken based on this communication or otherwise. If you received this in error, please contact the sender and destroy all copies of this e-mail.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 33 of 65

**From:** Administrative Account <admin@ironcladpressurecontrol.com>
**Sent:** Thursday, March 2, 2023 10:26:13 PM
**To:** Chris Carroll <chris.carroll@cwifab.net>; Charles Ramirez <Charles@ironcladpressurecontrol.com>; Paul Wang <paul@cwifab.net>
**Subject:** Re: Ironclad Equipment

Received.

We will be sending PO for thing tomorrow morning.

Thank you,
Mindy Rivas
*Manager*
Ironclad Pressure Control, LLC.



This e-mail is intended only for the person to whom it is addressed (the "addressee") and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use that a person other than the addressee makes of this communication is prohibited and any reliance or decisions made based on it, are the responsibility of such person. We accept no responsibility for any loss or damages suffered by any person other than the addressee as a result of decisions made or actions taken based on this communication or otherwise. If you received this in error, please contact the sender and destroy all copies of this e-mail.

**From:** Chris Carroll <chris.carroll@cwifab.net>
**Sent:** Thursday, March 2, 2023 9:44:02 PM
**To:** Charles Ramirez <Charles@ironcladpressurecontrol.com>; Administrative Account <admin@ironcladpressurecontrol.com>; Paul Wang <paul@cwifab.net>
**Subject:** Ironclad Equipment

Fella's

Per your request below is the pricing per unit and totals.

7-7" 10K FLSR Manuals, $17,730 each - Totaling $124,110.00
10-7" 10K FLSR hydraulics, $17,860 each - Totaling $178,600.00
15-5" 15K FLSR Hydraulics, $19,050 each - Totaling $285,750.00
18-5" 15K x 7"15K Adapter spools, $2,680 each - Totaling $48,240.00
6-7" 15K x 4" 15K Crosses, $4,840 each - Totaling $29,040.00
20-4" 15K FLSR Manual valves, 9,260 each - Totaling $185,200.00
8-4" 15K FLSR Hydraulic valves, $9,890 each - Totaling $79,120.00

4

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 34 of 65

10-7" 15K 10' Spools, $10,850 each - Totaling $108,500.00
6-7" 15K x 7"10 Adapter spools, $2,775 each - Totaling $16,650.00
12-7"15k 3' spools, $4,420 each qty 5 in stock. I may have some on
water will let you know in the morning. As of now - Totaling $22,100.00
24-3" 15K x 3"1502 weco flanges, $595 each - Totaling $14,280.00

Total P.O. amount as of this list as is $1,091,590.00

> On 03/02/2023 8:02 PM CST Charles Ramirez
> <charles@ironcladpressurecontrol.com> wrote:

> Chris,

> Can you please send me a quote for the following:

> 7-7" 10K FLSR Manuals
> 10-7" 10K FLSR hydraulics
> 15-5" 15K FLSR Hydraulics
> 18-5" 15K x 7"15K Adapter spools
> 6-7" 15K x 4" 15K Crosses
> 20-4" 15k FLSR Manual valves
> 8-4" 15K FLSR Hydraulic valves
> 10-7" 15K 10' Spools
> 6-7" 15K x 7"10 Adapter spools
> 12-7"15k 3' spools
> 24-3" 15K x 3"1502 weco flanges

> Once we receive quote, we will issue a PO.

> Do you guys have any contacts for trucking company's

> Thank you,
> Charles Ramirez
> *Operations Asst. Manager*
> Ironclad Pressure Control, LLC.



> This e-mail is intended only for the person to whom it is
> addressed (the "addressee") and may contain
> confidential and/or privileged material. Any review,
> retransmission, dissemination, or other use that a
> person other than the addressee makes of this
> communication is prohibited and any reliance or
> decisions made based on it, are the responsibility of
> such person. We accept no responsibility for any loss or

5

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 35 of 65

damages suffered by any person other than the addressee as a result of decisions made or actions taken based on this communication or otherwise. If you received this in error, please contact the sender and destroy all copies of this e-mail.

---

**From:** Chris Carroll <chris.carroll@cwifab.net>
**Sent:** Thursday, March 2, 2023 1:04:44 PM
**To:** Charles Ramirez <Charles@ironcladpressurecontrol.com>; Administrative Account <admin@ironcladpressurecontrol.com>; Paul Wang <paul@cwifab.net>
**Subject:** Ironclad Equipment

Charles,

Attached is what we have in stock and what is coming in weeks before your March 16th deadline. Prices are FOB Houston.

Respectfully,

Chris Carroll

C & W International Fabricators

936-697-4557

Chris Carroll

C & W International Fabricators

936-697-4557

Chris Carroll

6

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 36 of 65

C & W International Fabricators

936-697-4557


Chris Carroll

C & W International Fabricators

936-697-4557

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 37 of 65

## PURCHASE ORDER

**To:**
C&W International Fabricators
Attn: Chris Carroll
5855 Cunningham Rd
Houston , TX 77041
Tel: (936) 697-4557

**Date:** March 30, 2023

PO #: 1005

**From:**
Ironclad Pressure Control
Charles Ramirez
Charles@ironcladpressurecontrol.com

| Description | QTY | Price Per Unit | Total |
|---|---|---|---|
| Valve, hydraulic, 7-1/16" 15M Cameron FLSR type, flanged EE PSL 3 PR1 | 19 | 24,800.00 | $471,200.00 |
| Valve, manual, 7-1/16" 10M Cameron FLSR type flanged, EE PSL 3 PR1 | 12 | 17,730.00 | $212,760.00 |
| Valve, manual, 4-1/16" 15M Cameron FLSR type flanged, EE PSL 3 PR1 | 8 | 9,260.00 | $74,080.00 |
| Valve, hydraulic, 4-1/16" 15M Cameron FLSR type, flanged EE PSL 3 PR1 | 11 | 9,890.00 | $108,790.00 |
| Studded cross, 7-1/16" 15M x 4 1/16" 15M | 6 | 4,840.00 | $29,040.00 |
| Adapter spool, 7-1/16" 15M x 7 1/16" 10M x 16" OAL | 12 | 2,775.00 | $33,300.00 |
| Adapter spool, 7-1/16" 15M x 5 1/8" 15M x 16" OAL | 6 | 2,680.00 | $16,080.00 |
| Studded tee, 7-1/16" 15M with studs and nuts | 20 | 6,500.00 | $130,000.00 |
| Spacer spool, 7-1/16" 15M x 10" | 10 | 10,500.00 | $105,000.00 |
| Spacer spool, 7-1/16" 15M x 8" | 10 | 8,800.00 | $88,000.00 |
| Swivel spool, 7-1/16" 15M x 24" | 20 | 3,600.00 | $72,000.00 |
| | | Subtotal | $0.00 |
| | | Sales Tax @ 0.0% | $0.00 |
| | | Total Purchase Order Amount | $1,197,960.00 |

Special Instructions:
1. Please contact us immediately if you are unable to fulfill the order as requested.
2. Please enclose two copies of the final invoice with the order.
3. Payment Terms: Total amount due will be paid in (4) installments. First installment will be paid (30) days from the date of complete order receipt and remaining payments will be paid every (30) days following the first payment.

DELIVERY ADDRESS: 16690 W.BASIN ST., ODESSA, TX 79763

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 38 of 65

# Jason Hamm

**From:** Jason Hamm
**Sent:** Tuesday, September 5, 2023 7:58 AM
**To:** Cassi Dormady
**Subject:** FW: Parts for Ironclad P.O. 1027

Thanks,
Jason

Hamm Law Group, PLLC
3000 N. Garfield, Ste. 205
Midland, Texas 79705
(432) 375-6060
PermianLaw.com

**From:** Chris Carroll <chris.carroll@cwifab.net>
**Sent:** Monday, September 4, 2023 8:06 PM
**To:** Jason Hamm <jason@permianlaw.com>
**Subject:** Fwd: Parts for Ironclad P.O. 1027

---------- Original Message ----------
From: Chris Carroll <chris.carroll@cwifab.net>
To: "philipp@fundthrough.com" <philipp@fundthrough.com>, Paul Wang <paul@cwifab.net>
Date: 08/30/2023 3:06 PM CDT
Subject: Parts for Ironclad P.O. 1027

Philip,

Please keep in mind the emails you see from Charles Ramirez, that's actually Albert DeHoyos. He has a non compete with another company, so he told to use a fake name to communicate through.

---------- Original Message ----------
From: Charles Ramirez <charles@ironcladpresurecontrol.com>
To: "chris.carroll@cwifab.net" <chris.carroll@cwifab.net>, Bladimir Serrano <blad@ironcladpresurecontrol.com>
Cc: "paul@cwifab.net" <paul@cwifab.net>
Date: 05/04/2023 2:06 PM CDT
Subject: Re: Parts for Ironclad

**Please Use P.O. #1027 as written below**

Soft goods

1

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 39 of 65



9:10 70°

A  Albert Deh...

Please read and approve the revision to P.O. 1027A by Blady?

I haven't received anything via email but I approved



Thank you Chris. Approved

Just keeping everything on the up & up frie...

Text

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 40 of 65

2:05 PM

08/30/23

Accrual Basis

## C&W International Fabricators
## Customer Open Balance
### All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|-------------:|-------:|
| **Ironclad Pressure Control** | | | | | | |
| Invoice | 03/07/2023 | 58550 | | 03/03/2023 | 355,795.00 | 1,205,795.00 |
| Invoice | 03/29/2023 | 58641 | | 03/29/2023 | 211,910.00 | 211,910.00 |
| Invoice | 03/31/2023 | 58644 | | 03/30/2023 | 916,340.00 | 916,340.00 |
| Invoice | 04/05/2023 | 58661 | | 05/05/2023 | 196,065.00 | 196,065.00 |
| Invoice | 04/13/2023 | 58688 | | 05/13/2023 | 148,284.00 | 148,284.00 |
| Invoice | 05/04/2023 | 58747 | | 06/03/2023 | 98,754.00 | 98,754.00 |
| Invoice | 05/08/2023 | 58752 | | 06/07/2023 | 45,604.00 | 45,604.00 |
| Invoice | 05/08/2023 | 58756 | | 06/07/2023 | 277,661.00 | 277,661.00 |
| Invoice | 05/09/2023 | 58758 | | 06/08/2023 | 11,830.00 | 11,830.00 |
| Invoice | 05/15/2023 | 58779 | | 06/14/2023 | 10,780.00 | 10,780.00 |
| Invoice | 05/30/2023 | 58822 | | 06/29/2023 | 765,745.00 | 765,745.00 |
| Invoice | 05/31/2023 | 58826 | | 06/30/2023 | 75,713.00 | 75,713.00 |
| Invoice | 06/07/2023 | 58847 | | 07/07/2023 | 123,258.00 | 123,258.00 |
| Invoice | 06/09/2023 | 58849 | | 07/09/2023 | 345,465.00 | 345,465.00 |
| Invoice | 06/16/2023 | 58871 | | 07/16/2023 | 623,623.00 | 623,623.00 |
| **Total Ironclad Pressure Control** | | | | | 4,206,827.00 | 5,056,827.00 |
| **TOTAL** | | | | | 4,206,827.00 | 5,056,827.00 |

Page 1

**EXHIBIT "C"**

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 41 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/7/2023 | 58550 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1004 | | | 3/7/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 7 | VB7-10M-FLSR-... | Ball Screw Valve, 7-1/16", 10,000 PSI, FLSR Style, Studded, EE Trim | 17,730.00 | 124,110.00 |
| 10 | VH7-10M-FLSR-... | Hydraulic Gate Valve, 7-1/16", 10,000 PSI, FLSR Style, EE Trim | 17,860.00 | 178,600.00 |
| 15 | VH5-15M-FLC-EE | Hydraulic Gate Valve, 5-1/8", 15,000 PSI, EE Trim | 19,050.00 | 285,750.00 |
| 18 | AS7-15Mx5-15M... | Adapter Spool, 7-1/16" 15M x 5-1/8" 15M, 16" Overall Height | 2,680.00 | 48,240.00 |
| 6 | T4-7-15Mx4-15M | Studded Cross, 4-way, 7-1/16" 15M x 4-1/16" 15M, 4130 Forged | 4,840.00 | 29,040.00 |
| 20 | VB4-15M-FLSR-... | Ball Screw Valve, 4-1/16", 15,000 PSI, Ball Screw Operated, FLS-R Type, EE Trim | 9,260.00 | 185,200.00 |
| 8 | VH4-15M-FLSR | Valve, 4-1/16" 15M FLSR Hydraulic, EE Trim(later this week) | 9,890.00 | 79,120.00 |
| 10 | SS7-15MX120 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 120" Overall Length(later this week) | 10,500.00 | 105,000.00 |
| 6 | AS7-15Mx7-10M... | Adapter Spool, 7-1/16" 15M x 7-1/16" 10M, 16" Overall Height | 2,775.00 | 16,650.00 |
| 5 | SS7-15Mx36" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 36" Overall Length, 4130 Material | 4,420.00 | 22,100.00 |
| 24 | WFP3-15Mx3-15... | Weco Flange with Tee Plug and nut, 3-1/16" 15M x 3" FIG 1502 Female | 595.00 | 14,280.00 |
| 3 | VH7-15M-FLSR-... | Hydraulic Gate Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Hydraulic, EE Trim | 24,800.00 | 74,400.00 |
| 6 | BF3-10M | Blind Flange, 3-1/16" 10,000 PSI | 265.00 | 1,590.00 |

Thank you for your business.

| | Subtotal | |
|--|----------|--|
| | **Total** | |

| Phone # | E-mail | Payments/Credits |
|---------|--------|------------------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** |

Page 1

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 42 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/7/2023 | 58550 |

| Bill To | Ship To |
|---------|---------|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1004 | | | 3/7/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 6 | WFP3-10Mx2-15... | Weco Flange with Tee Plug and nut, 3-1/16" 10M x 2" FIG 1502 Female | 490.00 | 2,940.00 |
| 3 | SW-ELL-7-15M | Swivel Ell, 7-1/16" 15M | 7,525.00 | 22,575.00 |
| 12 | WFP4-15Mx3-15... | Weco Flange with Tee Plug and nut, 4-1/16" 15M x 3" FIG 1502 Female | 850.00 | 10,200.00 |
| 2 | SVC-FREIGHT | Motor Freight | 3,000.00 | 6,000.00 |

| | | |
|---|---|---|
| | Subtotal | $1,205,795.00 |

Thank you for your business.

**Total** $1,205,795.00

| Phone # | E-mail | Payments/Credits | $0.00 |
|---------|--------|------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $1205795.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

Page 2

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 43 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/29/2023 | 58641 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1005 | | PW | 3/29/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 6 | T4-7-15Mx4-15M | Studded Cross, 4-way, 7-1/16" 15M x 4-1/16" 15M, 4130 Forged | 4,840.00 | 29,040.00 |
| 8 | VB4-15M-FLSR-... | Ball Screw Valve, 4-1/16", 15,000 PSI, Ball Screw Operated, FLS-R Type, EE Trim | 9,260.00 | 74,080.00 |
| 11 | VH4-15M-FLSR | Valve, 4-1/16" 15M FLSR Hydraulic, EE Trim | 9,890.00 | 108,790.00 |

| | Subtotal | $211,910.00 |
|---|----------|-------------|

Thank you for your business.

| | **Total** | $211,910.00 |
|---|-----------|-------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $211910.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 44 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/31/2023 | 58644 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1005 | | PW | 3/31/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
| 19 | VH7-15M-FLSR-... | Hydraulic Gate Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Hydraulic, EE Trim | 24,800.00 | 471,200.00 |
| 12 | VB7-10M-FLSR-... | Ball Screw Valve, 7-1/16", 10,000 PSI, FLSR Style, Studded, EE Trim | 17,730.00 | 212,760.00 |
| 12 | AS7-15Mx7-10M... | Adapter Spool, 7-1/16" 15M x 7-1/16" 10M, 16" Overall Height | 2,775.00 | 33,300.00 |
| 6 | AS7-15Mx5-15M... | Adapter Spool, 7-1/16" 15M x 5-1/8" 15M, 16" Overall Height | 2,680.00 | 16,080.00 |
| 20 | T3-7-15M | Studded TEE, 7-1/16" 15M 3-way, | 6,500.00 | 130,000.00 |
| 5 | VM4-15M-FC-EE | Manual Gate Valve, 4-1/16", 15,000 PSI, FC Type, EE Trim | 7,960.00 | 39,800.00 |
| 0 | WFP4-15Mx3" 15... | Weco Flange with Tee Plug and nut, 4-1/16" 15M x 3" FIG 1502 Male | 895.00 | 0.00 |
| 6 | SVC-Shipping | Shipping and Handling | 2,200.00 | 13,200.00 |
| | | **Subtotal** | | $916,340.00 |

Thank you for your business.

**Total** $916,340.00

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|---------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $916340.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 45 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/5/2023 | 58661 |

| Bill To | Ship To |
|---------|---------|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1005D | Net 30 | PW | 4/5/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 6 | SS7-15MX120 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 120" Overall Length | 10,500.00 | 63,000.00 |
| 10 | SS7-15Mx96 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 96" Overall Length | 8,800.00 | 88,000.00 |
| 7 | BF7-15M | Blind Flange, 7-1/16" 15,000 PSI | 1,095.00 | 7,665.00 |
| 12 | SS7-15Mx16 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 16" Overall Length, 4130 Material | 2,750.00 | 33,000.00 |
| 2 | SVC-Shipping | Shipping and Handling | 2,200.00 | 4,400.00 |

|  | Subtotal | $196,065.00 |
|--|----------|-------------|
|  | **Total** | $196,065.00 |

| Phone # | E-mail | Payments/Credits | $0.00 |
|---------|--------|------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $196065.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 46 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|---|---|
| 4/13/2023 | 58688 |

| Bill To | Ship To |
|---|---|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|---|---|---|---|---|---|
| 1005E | Net 30 | PW | 4/13/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 4 | SS7-15MX120 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 120" Overall Length | 10,500.00 | 42,000.00 |
| 20 | SWS7-15 | SWIVEL SPOOL, 7 1/16" 15M X 20" TAL | 3,600.00 | 72,000.00 |
| 4 | SS7-15M-24 | Spacer Spool, 7-1/16" 15M x 24" | 3,410.00 | 13,640.00 |
| 4 | SS7-15Mx36" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 36" Overall Length, 4130 Material | 4,536.00 | 18,144.00 |
| 1 | SVC-Shipping | Shipping and Handling | 2,500.00 | 2,500.00 |

| | |
|---|---|
| **Subtotal** | $148,284.00 |

Thank you for your business.

| | |
|---|---|
| **Total** | $148,284.00 |

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---|---|---|---|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $148284.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 47 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/4/2023 | 58747 |

| Bill To | Ship To |
|---------|---------|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1027A | Net 30 | PW | 5/4/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 48 | BSR4-15M-FLSR | Bonnet Gasket, 4-1/16", 15M, FLSR Ball Screw Valve, 316SS | 49.00 | 2,352.00 |
| 20 | BSR7-15M FLSR | Bonnet Gasket, 7-1/16", 15M,FLS-R, Ball, 316SS | 86.00 | 1,720.00 |
| 10 | GATE7-15M -FL... | Gate, 7-1/16", 15M, LSR Style, Ball Screw or Hydraulic Valve, 410SS hardface with Tungsten Carbide Coating | 2,795.00 | 27,950.00 |
| 20 | SR7-15M-FLSR | Seat Ring, 7-1/16", 15M FLS-R, 410SS | 490.00 | 9,800.00 |
| 24 | BSR7-10M-FLSR | Bonnet Gasket, 7-1/16", 10M, FLSR  Ball Screw Valve, 316SS | 68.00 | 1,632.00 |
| 10 | GATE7-10M-FLC... | Gate, 7-1/16", 10M, Flocon Style, Ball Screw or Hydraulic Valve, 410SS hardface with Tungsten Carbide Coating | 2,150.00 | 21,500.00 |
| 20 | SR7-10M-FLSR | Seat Ring, 7-1/16" 10M FLSR 410SS | 325.00 | 6,500.00 |
| 40 | BSR5-15M-FLSR | Bonnet Gasket, 5-1/8", 15M, FLSR Ball Screw Valve, 316SS | 55.00 | 2,200.00 |
| 10 | GATE5-15M-FLS... | Gate, 5-1/8", 15M, FLS-R Type Ballscrew, 410SS hardface with Tungsten Carbide Coating | 1,690.00 | 16,900.00 |
| 20 | SR5-15M-FLSR | Seat, 5-1/8", 15M FLS-R Ball Screw Valve, 410SS with Stellite 6 Coating | 285.00 | 5,700.00 |
| 1 | SVC-Shipping | Shipping and Handling | 2,500.00 | 2,500.00 |

| | | | Subtotal | $98,754.00 |
|--|--|--|----------|------------|

Thank you for your business.

| | | | **Total** | $98,754.00 |
|--|--|--|-----------|------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $98,754.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 48 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/8/2023 | 58752 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1027B | Net 30 | PW | 5/8/2023 | UPS | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
| 60 | SP4-15M-FLSR | Spring Packing, 4' -1/16",15M,FLSR | 86.00 | 5,160.00 |
| 60 | IS4-15M-FLSR | Inner Spring, 4" -1/16",15M,FLSR | 78.00 | 4,680.00 |
| 60 | OS4-15M-FLSR | Outer spring 4".15M-FLSR | 89.00 | 5,340.00 |
| 20 | SP7-15M-FLSR | Spring Packing, 7' -1/16",15M,FLSR | 115.00 | 2,300.00 |
| 20 | IS7-15M-FLSR | Inner Spring, 7' -1/16",15M,FLSR | 140.00 | 2,800.00 |
| 20 | OS7-15M-FLSR | Outer spring, 7" -1/16",15M,FLSR | 160.00 | 3,200.00 |
| 24 | SP7-10M-FLSR | Spring Packing, 7' -1/16",10M,FLSR | 86.00 | 2,064.00 |
| 24 | IS7-10M-FLSR | Inner Spring, 7' -1/16",10M,FLSR | 130.00 | 3,120.00 |
| 24 | OS7-10M-FLSR | Outer spring, 7" -1/16",10M,FLSR | 150.00 | 3,600.00 |
| 40 | SP5-15M-FLSR | Spring Packing, 5' -1/16",15M,FLSR | 86.00 | 3,440.00 |
| 40 | IS5-15M-FLSR | Inner Spring, 5' -1/16",15M,FLSR | 98.00 | 3,920.00 |
| 40 | OS5-15M-FLSR | Outer spring, 5' -1/16",15M,FLSR | 112.00 | 4,480.00 |
| 1 | SVC-Shipping | Shipping and Handling | 1,500.00 | 1,500.00 |

| | Subtotal | $45,604.00 |
|--|----------|-----------|

Thank you for your business.

| **Total** | $45,604.00 |
|-----------|-----------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $45,604.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 49 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|---|---|
| 5/8/2023 | 58756 |

| Bill To | Ship To |
|---|---|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|---|---|---|---|---|---|
| 1001A | Net 30 | PW | 5/8/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 4 | WFP3-15Mx3-15... | Weco Flange with Tee Plug and nut, 3-1/16" 15M x 3" FIG 1502 Female | 595.00 | 2,380.00 |
| 2 | BF7-15M-S | Test Flange, 7-1/16" 15,000 PSI, | 1,160.00 | 2,320.00 |
| 6 | BF7-15M | Blind Flange, 7-1/16" 15,000 PSI | 1,095.00 | 6,570.00 |
| 10 | T3-7-15M | Studded TEE, 7-1/16" 15M 3-way, | 6,500.00 | 65,000.00 |
| 3 | SS7-15Mx16 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 16" Overall Length, 4130 Material | 2,750.00 | 8,250.00 |
| 3 | SS7-15MX24 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 24" | 3,410.00 | 10,230.00 |
| 6 | SS7-15Mx36" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 36" Overall Length, 4130 Material | 4,536.00 | 27,216.00 |
| 6 | SS7-15Mx72" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 72" Overall Length | 6,970.00 | 41,820.00 |
| 10 | SS7-15MX120 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 120" Overall Length | 10,500.00 | 105,000.00 |
| 5 | SL5-15M-FLSR | Lower Stem, (Tail Rod, Balance Stem), 5-1/8 15M FLS-R, 410SS | 275.00 | 1,375.00 |
| 3 | SVC-Shipping | Shipping and Handling | 2,500.00 | 7,500.00 |

| | Subtotal | $277,661.00 |
|---|---|---|

Thank you for your business.

| | Total | $277,661.00 |
|---|---|---|

| Phone # | E-mail | Payments/Credits | $0.00 |
|---|---|---|---|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $277661.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 50 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/9/2023 | 58758 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1027C | Net 30 | PW | 5/9/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 7 | GATE5-15M-FLS... | Gate, 5-1/8", 15M, FLS-R Type Ballscrew, 410SS hardface with Tungsten Carbide Coating | 1,690.00 | 11,830.00 |

| | Subtotal | $11,830.00 |
|--|----------|------------|

Thank you for your business.

| **Total** | $11,830.00 |
|-----------|------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $11,830.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 51 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/15/2023 | 58779 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1027D | Net 30 | PW | 5/15/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 12 | ORING4-15M-FL... | O-Ring Kit fir 4-1/16" 15M FLSR HYD | 165.00 | 1,980.00 |
| 10 | ORING7-15M-FL... | O-Ring Kit fir 7-1/16" 15M FLSR HYD | 240.00 | 2,400.00 |
| 12 | ORING7-10M-FL... | O-Ring Kit fir 7-1/16" 10M FLSR HYD | 200.00 | 2,400.00 |
| 20 | ORing5-15M-FLSR | O-Ring Kit fir 5-1/16" 15M FLSR HYD | 200.00 | 4,000.00 |

Thank you for your business.

| | |
|---|---|
| **Subtotal** | $10,780.00 |
| **Total** | $10,780.00 |

| Phone # | E-mail | Payments/Credits | $0.00 |
|---------|--------|------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $10,780.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/30/2023 | 58822 |

| Bill To | Ship To |
|---------|---------|
| Ironclad Pressure Control | Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1001B | Net 30 | PW | 5/30/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 5 | VB4-15M-FLSR-... | Ball Screw Valve, 4-1/16", 15,000 PSI, Ball Screw Operated, FLS-R Type, EE Trim | 9,890.00 | 49,450.00 |
| 17 | VH7-15M-FLSR-... | Hydraulic Gate Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Hydraulic, EE Trim | 24,800.00 | 421,600.00 |
| 3 | VB7-15M-FLSR | Ball Screw Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Manual, EE Trim | 23,900.00 | 71,700.00 |
| 6 | SWS7-15 | SWIVEL SPOOL, 7 1/16" 15M X 20" TAL | 3,600.00 | 21,600.00 |
| 10 | T3-7-15M | Studded TEE, 7-1/16" 15M 3-way, | 6,500.00 | 65,000.00 |
| 10 | SS7-15MX120 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 120" Overall Length | 10,500.00 | 105,000.00 |
| 1 | T4-7-15Mx4-15M | Studded Cross, 4-way, 7-1/16" 15M x 4-1/16" 15M, 4130 Forged | 4,840.00 | 4,840.00 |
| 1 | AS7-15Mx5-15M... | Adapter Spool, 7-1/16" 15M x 5-1/8" 15M, 16" Overall Height | 2,680.00 | 2,680.00 |
| 5 | BF7-15M | Blind Flange, 7-1/16" 15,000 PSI | 1,095.00 | 5,475.00 |
| 4 | WF4-15Mx3-1502F | Weco Flange (Threaded Half), 4-1/16" 15M x 3" FIG 1502 Female | 850.00 | 3,400.00 |
| 6 | SVC-Shipping | Shipping and Handling | 2,500.00 | 15,000.00 |

| | Subtotal | $765,745.00 |
|--|----------|-------------|

Thank you for your business.

| | **Total** | $765,745.00 |
|--|-----------|-------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $765745.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/31/2023 | 58826 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1073 | Net 30 | PW | 5/31/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 22 | BSR7-10M-FLSR | Bonnet Gasket, 7-1/16", 10M, FLSR Ball Screw Valve, 316SS | 68.00 | 1,496.00 |
| 22 | SR7-10M-FLSR | Seat Ring, 7-1/16" 10M FLSR 410SS | 325.00 | 7,150.00 |
| 11 | GATE7-10M-FLC... | Gate, 7-1/16", 10M, Flocon Style, Ball Screw or Hydraulic Valve, 410SS hardface with Tungsten Carbide Coating | 2,150.00 | 23,650.00 |
| 22 | BSR7-15M FLSR | Bonnet Gasket, 7-1/16", 15M,FLS-R, Ball, 316SS | 86.00 | 1,892.00 |
| 22 | SR7-15M-FLSR | Seat Ring, 7-1/16", 15M FLS-R, 410SS | 490.00 | 10,780.00 |
| 11 | GATE7-15M-FLC... | Gate, 7-1/16", 15M, Flocon Style, Ball Screw or Hydraulic Valve, 410SS hardface with Tungsten Carbide Coating | 2,795.00 | 30,745.00 |

| | Subtotal | $75,713.00 |
|--|----------|-----------|

Thank you for your business.

| **Total** | $75,713.00 |
|-----------|-----------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $75,713.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 54 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/7/2023 | 58847 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control<br>16690 W. Basin Street<br>Odessa, TX 79763 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1001C | Net 30 | PW | 6/7/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 3 | SS7-15Mx 60" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 60" Overall Length | 6,480.00 | 19,440.00 |
| 3 | SS7-15MX24 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 24" | 3,410.00 | 10,230.00 |
| 3 | SS7-15Mx36" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 36" Overall Length, 4130 Material | 4,536.00 | 13,608.00 |
| 2 | SS7-15M-18" | Spacer Spool, 7-1/16" 15M x 18" OAL | 2,890.00 | 5,780.00 |
| 3 | VB7-15M-FLSR | Ball Screw Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Manual, EE Trim | 23,900.00 | 71,700.00 |
| 1 | SVC-Shipping | Shipping and Handling | 2,500.00 | 2,500.00 |

| | Subtotal | $123,258.00 |
|--|----------|-------------|

Thank you for your business.

| | **Total** | $123,258.00 |
|--|-----------|-------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $123258.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/9/2023 | 58849 |

| Bill To | Ship To |
|---------|---------|
| Ironclad Pressure Control | Ironclad Pressure Control<br>16690 W. Basin Street<br>Odessa, TX 79763 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1001D | Net 30 | PW | 6/9/2023 | Delivery | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 5 | SS-7-15M-120 | Spacer spool, 7" 15M x 120" | 10,500.00 | 52,500.00 |
| 5 | SS-7-15M-96 | Spacer spool, 7" 15M x 96" | 8,800.00 | 44,000.00 |
| 5 | SS-7-15M-24 | Spacer spool, 7" 15M x 24" | 3,410.00 | 17,050.00 |
| 8 | VM4-10M-FC-EE | Manual Gate Valve, 4-1/16", 10,000 PSI, FC Type, EE Trim | 3,690.00 | 29,520.00 |
| 3 | T4-7-10Mx4-10M | Studded Cross, 4-way, 7-1/16" 10M x 4-1/16" 10M, 4130 Forged | 3,670.00 | 11,010.00 |
| 8 | VB7-10M-FLSR-... | Ball Screw Valve, 7-1/16", 10,000 PSI, FLSR Style, Studded, EE Trim | 17,730.00 | 141,840.00 |
| 3 | GH7-10M-SxF-6x... | Goat Head (Frac Head), 7-1/16" 10,000 PSI, Studded top and Flange bottom, w/6 4-1/16", 10M Studded outlets, 45 degree design | 9,235.00 | 27,705.00 |
| 12 | WF4-10Mx4-1002F | Weco Flange (Threaded Half), 4-1/16" 10M x 4" FIG 1002 Female | 875.00 | 10,500.00 |
| 4 | WF4-10Mx4-1502F | Weco Flange (Threaded Half), 4-1/16" 10M x 4" FIG 1502 Female | 960.00 | 3,840.00 |
| 3 | SHIP | Shipping Charges | 2,500.00 | 7,500.00 |

| | Subtotal | $345,465.00 |
|--|----------|-------------|

Thank you for your business.

| **Total** | $345,465.00 |
|-----------|-------------|

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $345465.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is
defective or damaged, you received the wrong item, or the fee is prohibited by law.

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 56 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/16/2023 | 58871 |

**Bill To**

Ironclad Pressure Control

**Ship To**

Ironclad Pressure Control

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1001E | Net 30 | PW | 6/16/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 2 | VB-4-15M-FLSR | Valve, manual, 4-1/16" 15M FLSR | 9,260.00 | 18,520.00 |
| 5 | WF4-15Mx3-1502F | Weco Flange (Threaded Half), 4-1/16" 15M x 3" FIG 1502 Female | 850.00 | 4,250.00 |
| 1 | WF3-10Mx2-1502F | Weco Flange (Threaded Half), 3-1/16" 10M x 2" FIG 1502 Female | 490.00 | 490.00 |
| 1 | BF3-10M | Blind Flange, 3-1/16" 10,000 PSI | 265.00 | 265.00 |
| 2 | BF7-15M | Blind Flange, 7-1/16" 15,000 PSI | 1,095.00 | 2,190.00 |
| 10 | VH7-15M-FLSR-... | Hydraulic Gate Valve, 7-1/16", 15,000 PSI, Cameron Style, FLSR Hydraulic, EE Trim | 24,800.00 | 248,000.00 |
| 2 | SWS7-15 | SWIVEL SPOOL, 7 1/16" 15M X 20" TAL | 3,600.00 | 7,200.00 |
| 6 | T3-7-15M | Studded TEE, 7-1/16" 15M 3-way, | 6,500.00 | 39,000.00 |
| 12 | SS-7-15M-120 | Spacer spool, 7 1/16" 15M x 120" | 10,500.00 | 126,000.00 |
| 3 | SS7-15Mx 60" | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 60" Overall Length | 6,480.00 | 19,440.00 |
| 8 | SS-7-15M-16 | Spacer Spool, 7-1/16" 15M x 18" Overall Length | 2,890.00 | 23,120.00 |
| 9 | SS-7-15M-36 | Spacer Spool, 7-1/16" 15M x 7-1/16" 15M, 36" Overall Length | 4,536.00 | 40,824.00 |
| 3 | T4-7-15Mx4-15M | Studded Cross, 4-way, 7-1/16" 15M x 4-1/16" 15M, 4130 Forged | 4,840.00 | 14,520.00 |
| 1 | Drifter-7 | Drifer 7-1/16" Used | 900.00 | 900.00 |
| 1 | Drifter-5 | Drifer 5-1/8" Used | 650.00 | 650.00 |
| 4 | GATE-7-10M-CI... | Gate, Manual/Hydraulic, 7 1/16" 10M FLSR | 2,150.00 | 8,600.00 |
| 4 | SEAT-7-10M-CI... | Seat, 7 1/16" 10M FLSR | 325.00 | 1,300.00 |
| 3 | STEM-7-10M-FL... | Stem, manual, 7 1/16" 10M FLSR | 440.00 | 1,320.00 |

Thank you for your business.

| | **Subtotal** | |
|--|--|--|
| | **Total** | |

| Phone # | E-mail | **Payments/Credits** |
|---------|--------|----------------------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** |

Page 1

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 57 of 65



**C&W International Fabricators**

5855 Cunningham Rd
Houston, TX, 77041

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/16/2023 | 58871 |

| Bill To |
|---------|
| Ironclad Pressure Control |

| Ship To |
|---------|
| Ironclad Pressure Control |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. |
|-------------|-------|-----|------|-----|--------|
| 1001E | Net 30 | PW | 6/16/2023 | PICK UP | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 3 | STEM-7-10M-CI... | Stem, hydraulicl, 7 1/16" 10M FLSR | 495.00 | 1,485.00 |
| 4 | LSTEM-7-10M-F... | Lower Stem, manual/Hydraulic, 7 1/16" 10M FLSR | 380.00 | 1,520.00 |
| 3 | BALL-ASSE-7-10... | Ball screw assembly 7-1/16" FLSR 17 turn | 1,180.00 | 3,540.00 |
| 12 | GATE5-15M-FLS... | Gate, 5-1/8", 15M, FLS-R Type Ballscrew, 410SS hardface with Tungsten Carbide Coating | 1,690.00 | 20,280.00 |
| 32 | SEAT-5-15M-FLSR | Seat, 5 1/8" 15M FLSR | 290.00 | 9,280.00 |
| 3 | STEM-5-15M-FL... | Stem, hydraulicl, 5 1/8" 15M FLSR | 460.00 | 1,380.00 |
| 3 | LSTEM5-15M-FL... | Lower stem,Manul/hydraulic 5 1/8" 15M FLSR | 318.00 | 954.00 |
| 14 | GATE-4-15M-FL... | Gate, 4-1/16", 15M, FLS-R 410SS hardface with Tungsten Carbide Coating | 1,160.00 | 16,240.00 |
| 3 | STEM-4-15M-FL... | Stem, manual, 4 1/16" 15M FLSR | 375.00 | 1,125.00 |
| 3 | STEM-4-15M-FL... | Stem, hydraulic, 4 1/16" 15M FLSR | 410.00 | 1,230.00 |
| 4 | SHIP | Shipping Charges | 2,500.00 | 10,000.00 |

| | | |
|-|-|-|
| | Subtotal | $623,623.00 |

Thank you for your business.

**Total**  $623,623.00

| Phone # | E-mail | **Payments/Credits** | $0.00 |
|---------|--------|----------------------|-------|
| 281-879-4746 | blake@cwifab.net | **Balance Due** | $623623.00 |

We accept returns within 90 days after shipping.

A 10% restocking fee will be charged on all returned items. These fees apply unless the item is defective or damaged, you received the wrong item, or the fee is prohibited by law.

Page 2

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 58 of 65

# Hamm Law Group, PLLC

Jason B. Hamm*
*jason@permianlaw.com*

F.T. Nick Hood
*nick@permianlaw.com*

‡ Licensed in Texas and New Mexico
* Board Certified in Oil, Gas and Mineral Law

3000 N. Garfield, Suite 205
Midland, Texas 79705
(432) 375-6060

Rick G. Strange*
*rick@permianlaw.com*

September 8, 2023

**Via CM/RRR: 9589 0710 5270 0425 1455 74**
**Regular, First-Class Mail, & Email:**
admin@ironcladpressurecontrol.com
blad@ironcladpressurecontrol.com
charles@ironcladpressurecontrol.com
IRONCLAD PRESSURE CONTROL, LLC
2810 N Church St. PMB 919128
Wilmington, DE 19802

Re:    **C&W International Fabricators ("C&W") unpaid account with a total amount due and owing of $4,206,827.00.**

To Whom It May Concern:

Please be advised that C&W has retained this law firm to pursue collection of the above-referenced indebtedness. As a result, please direct all future correspondence regarding this matter to me.

Specifically, C&W is owed for the materials and/or services that were provided to you at your request. For your reference, I have attached hereto, as Exhibit "A", the outstanding Invoice Numbers 58550, 58641, 58644, 58661, 58688, 58747, 58752, 58756, 58758, 58779, 58822, 58826, 58847, 58849, and 58871, which detail the materials and/or services that were provided to you by C&W. Because you accepted the materials and/or services provided by C&W, you became bound to pay my client's charges as set forth in the attached invoice. Accordingly, at this time, the outstanding balance due to my client is **$4,206,827.00**.

This letter will serve as written notice of the unpaid balance and written demand for payment of all sums, including attorneys' fees and expenses incurred by my client, owed as of this date. In the event that C&W does not receive payment in full in ten (10) days, I will advise my client to take all steps necessary to protect its interests, to include filing all documents necessary to perfect any available liens and filing a lawsuit seeking not only payment of the principal balance of the above referenced account but also seeking collection of interest, expenses, court costs, and attorneys' fees, and seeking all other remedies available under law or equity.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE VALIDITY OF THE DEBT OR ANY PORTION OF IT IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU. ALSO, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH THE NAME AND CURRENT ADDRESS OF THE ORIGINAL CREDITOR IF**

**EXHIBIT "D"**

*Ironclad Pressure Control, LLC*
*September 8, 2023*
*Page ~ 2 ~*

**DIFFERENT FROM THE CURRENT CREDITOR.   WE MAY PROCEED TO SUE YOU WITHOUT WAITING THIRTY (30) DAYS IF SO REQUESTED BY OUR CLIENT.**

I am sending this letter to you by certified mail, return receipt requested, and by regular, postage pre-paid mail so that I may be assured of your receipt of same.  Please do not hesitate to contact me if you wish to discuss this matter further. It is my client's hope that this issue will get resolved and no further action on the part of C&W will be necessary.

Thank you for your attention to this matter.

Sincerely,

Jason B. Hamm

Enclosures

Cc: Client

Philipp Klaussner (FundThrough) – philipp@fundthrough.com
Michael Miller (FundThrough) – mmiller@fundthrough.com

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 60 of 65

2:05 PM

08/30/23

Accrual Basis

# C&W International Fabricators
## Customer Open Balance
### All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|-------------|--------|
| **Ironclad Pressure Control** | | | | | | |
| Invoice | 03/07/2023 | 58550 | | 03/03/2023 | 355,795.00 | 1,205,795.00 |
| Invoice | 03/29/2023 | 58641 | | 03/29/2023 | 211,910.00 | 211,910.00 |
| Invoice | 03/31/2023 | 58644 | | 03/30/2023 | 916,340.00 | 916,340.00 |
| Invoice | 04/05/2023 | 58661 | | 05/05/2023 | 196,065.00 | 196,065.00 |
| Invoice | 04/13/2023 | 58688 | | 05/13/2023 | 148,284.00 | 148,284.00 |
| Invoice | 05/04/2023 | 58747 | | 06/03/2023 | 98,754.00 | 98,754.00 |
| Invoice | 05/08/2023 | 58752 | | 06/07/2023 | 45,604.00 | 45,604.00 |
| Invoice | 05/08/2023 | 58756 | | 06/07/2023 | 277,661.00 | 277,661.00 |
| Invoice | 05/09/2023 | 58758 | | 06/08/2023 | 11,830.00 | 11,830.00 |
| Invoice | 05/15/2023 | 58779 | | 06/14/2023 | 10,780.00 | 10,780.00 |
| Invoice | 05/30/2023 | 58822 | | 06/29/2023 | 765,745.00 | 765,745.00 |
| Invoice | 05/31/2023 | 58826 | | 06/30/2023 | 75,713.00 | 75,713.00 |
| Invoice | 06/07/2023 | 58847 | | 07/07/2023 | 123,258.00 | 123,258.00 |
| Invoice | 06/09/2023 | 58849 | | 07/09/2023 | 345,465.00 | 345,465.00 |
| Invoice | 06/16/2023 | 58871 | | 07/16/2023 | 623,623.00 | 623,623.00 |
| **Total Ironclad Pressure Control** | | | | | 4,206,827.00 | 5,056,827.00 |
| **TOTAL** | | | | | 4,206,827.00 | 5,056,827.00 |



Page 1

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 61 of 65



Thanks

Yesterday 5:20 PM

Ironclad is trying to sell your equipment to companies in Odessa. I've been told by 2 people today.

Thank you letting me know



**EXHIBIT "E"**

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK

12:05    📶 5G 82

‹ 44    ∧ ∨



**Bladimir Serrano**    Friday
To: IPC OPERATIONS ›    📎

# equipment list for sale

This includes washed out equipment.
Thank you,
Blad Serrano
*Operations Manager*
Ironclad Pressure Control, LLC.



This e-mail is intended only for the person to whom it is addressed (the "addressee") and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use that a person other than the addressee makes of this communication is prohibited and any reliance or decisions made based on it, are the responsibility of such person. We accept no responsibility for any loss or damages suffered by any person other than the addressee as a result of decisions made or actions taken based on this communication or otherwise. If you received this in error, please contact the sender and destroy all copies of this e-mail.

   

**EXHIBIT "F"**

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 63 of 65

12:06                                    5G  82

## EQUIPMENT .xlsx  ⌄            Done

| EQUIPMENT | QUANTITY |
|---|---|
| 5-15 HGV | 15 |
| 5-15 X 5-10 DSA | 6 |
| 5-15 X 7-15 ADAPTER SPOOL | 24 |
| 7-10 HYDRAULICS | 11 |
| 7-10 MANUALS | 27 |
| 7-10 X 3-10 BLOCK | 11 |
| 7-10 X 7-15 ADAPTER SPOOL | 19 |
| 7-15 BLINDS | 22 |
| 7-15 HYDRAULICS | 49 |
| 7-15 MANUALS | 6 |
| 7-15 SKIDS | 18 |
| 7-15 SWIVELS | 28 |
| 7-15 TEES | 47 |
| 7-15 X 3-15 FLOW CROSS BODY | 1 |
| 7-15 X 4-15 FLOW CROSS BODY | 16 |
| 7-15 X 16" SPACER SPOOL | 16 |
| 7-15 x 18" SPACER SPOOL | 10 |
| 7-15 X 24" SPACER SPOOL | 14 |
| 7-15 X 36" SPACER SPOOL | 25 |
| 7-15 X 60" SPACER SPOOL (5') | 6 |
| 7-15 X 72" SPACER SPOOL (6') | 6 |
| 7-15 X 96" SPACER SPOOL (8') | 14 |
| 7-15 X 120" SPACER SPOOL (10') | 54 |



TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 64 of 65

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason Hamm
Bar No. 24058639
jason@permianlaw.com
Envelope ID: 82199656
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 12/4/2023 4:18 PM CST

Associated Case Party: C&W International Fabricators, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason B.Hamm | | jason@permianlaw.com | 12/4/2023 1:23:43 PM | SENT |
| Cassi Dormady | | cassi@permianlaw.com | 12/4/2023 1:23:43 PM | SENT |

**CERTIFIED COPY CERTIFICATE**
**State of Texas, County of Ector**
I hereby certify that this document is a true and
correct copy of the original record on file in the
Ector County District Clerk's office in cause number:
**C-23-12-1320-CV in the 244th District Court.**
**Clarissa Webster, District Clerk**
Attest on Date: January 18, 2024

By: _Jennifer Rodriguez_
Deputy Clerk: Rodriguez, Jennifer

TRUE & CORRECT COPY OF A DOCUMENT ON FILE AT ECTOR COUNTY, TEXAS
CLARISSA WEBSTER, DISTRICT CLERK
PAGE 65 of 65