

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 28, 2024.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| IRONCLAD PRESSURE CONTROL, LLC | § § § | Case No. 23-70156
In Proceedings Under Chapter 11 |
| Debtor. | § | Subchapter V |

**ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND PROVIDING ADEQUATE PROTECTION AND GRANTING LIENS AND SECURITY INTERESTS**
**[Refers to Docket No. 105]**

On March 26, 2024, came on for final hearing before this Court the *Debtor's Emergency Motion for Interim and Final Orders (a) Authorizing Use of Cash Collateral; (b) Granting Adequate Protection; and (c) Scheduling a Final Hearing* [Docket No. 105] (the "Motion") filed by Ironclad Pressure Control, LLC, a Texas limited liability company, the Debtor in Possession in the above styled and numbered Chapter 11 bankruptcy proceeding ("Debtor"). After consideration of the pleadings on file, evidence and arguments of counsel, the Court finds that for good and sufficient cause shown the relief requested in the Motion should be granted as set forth herein.

_____
**In re Ironclad Pressure Control, LLC, a Texas limited liability company, Debtor**
**Order Authorizing Continued Use of Cash Collateral - Page 1**

**THE COURT HEREBY FINDS**:

A. The Debtor filed a Voluntary Petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on December 8, 2023 (the "Petition Date"). The Debtor is now operating its business and managing its property as a debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Prior to the filing of the voluntary petition for relief, beginning approximately on April 14, 2023 FundThrough USA Inc. ("FundThrough") and Ermelinda Rivas, acting by and on behalf of and intending to bind Debtor, were parties to an Accounts Receivable Purchase and Security Agreement ("ARPSA"), dated April 14, 2023, as amended, modified, and supplemented from time to time, pursuant to which Debtor sold and FundThrough purchased Debtor's pre-petition Accounts such that FundThrough became the sole owner and holder of all rights in and to the Debtor's Accounts upon the sale of those Accounts pursuant to the terms of the ARPSA (as amended, modified, and supplemented from time to time, referred to as the "Pre-Petition Agreements").

D. Debtor's repayment obligations under the Pre-Petition Agreements are allegedly secured by, inter alia, liens and security interest in all of the Collateral (as defined in the ARPSA), which includes Debtor's pre-petition cash and cash equivalents (the "Cash Collateral") by virtue of a UCC-1 Financing Statement, filed on April 27, 2023 with the Delaware Secretary of State as Filing Number 20233048823 (the "FundThrough Pre-Petition Lien"). All of the pre-petition cash proceeds from collection of the Debtor's pre-petition Accounts and the sale of Debtor's pre-

petition Inventory constitute such Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code, in which FundThrough asserts a perfected interest. As of the Petition Date, FundThrough asserts the Debtor was indebted to FundThrough in the approximate amount of $349,991.67 (the "Pre-Petition Obligations").

E. In addition to the FundThrough Pre-Petition Lien, Blackbrush Investments LLC ("Blackbrush") asserts a landlord's statutory landlord's lien perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of Texas on October 24, 2023, securing obligations totaling approximately $211,723.41 as of the Petition Date. FundThrough and Blackbrush are jointly referred to herein as the "Secured Creditors".

F. The Debtor has no source of funding for post-petition operations other than deposits on hand at the time of commencement of this case, prepetition accounts receivable, a returned equipment purchase deposit received by the Debtor, funds generated from continued operations as well as the proceeds of sale of excess equipment. (the "Cash Collateral")

G. If the Debtor is unable to fund post-petition operations, the value of the Debtor's estate will rapidly decline as customers, employees and vendors display their dissatisfaction. The harm to the estate of Debtor will be irreparable.

H. On March 15, 2024, this Court entered its *Order (A) Authorizing Interim Use of Cash Collateral; (B) Granting Adequate Protection; and (C) Scheduling a Final Hearing* (the "Interim Order") [Docket No. 124]. Pursuant to the Interim Order and subject to the occurrence of a Termination Event, the Debtor was authorized to use Cash Collateral through March 26, 2024, unless extended by further order of the Court.

I. The Debtor seeks, on a continuing basis, authorization to use Secured Creditors' Cash Collateral to pay the actual, ordinary and necessary operating expenses (the "Expenses") set

forth on the budget attached hereto as **Exhibit A** through June 30, 2024 (the "Budget"). The Budget has been prepared by the Debtor and its management with the assistance of the Debtor's Financial Advisor and sets forth, among other things, the projected cash receipts and projected cash disbursements of the Debtor for the period covered thereby. The Budget does not include extraordinary expenses which may be required from the Debtor and to the extent that such expenses are not a part of the Budget the Debtor may seek consent from the Secured Creditors for the payment of same or further authorization from the Court.

J. The Debtor agrees to segregate and account to Secured Creditors for all Cash Collateral: (i) that it now possesses, (ii) it has permitted to be transferred into the possession of others since the Petition Date, if any, (iii) is being held by any party in privity with or on behalf of the Debtor, and (iv) is existing on or is received after the Petition Date.

K. A need exists for the Debtor to obtain funds in order to continue the operation of its business. Without such funds, the Debtor will not be able to pay its direct operating expenses and obtain goods and services needed to carry on its business. The Debtor has no other source of funds to carry on its business operations other than the Cash Collateral of the Secured Creditors.

L. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). This Court concludes that entry of this Order is in the Debtor's best interest and its estate and creditors as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtor's existing business.

**BASED ON THE FOREGOING, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein. Any objections that have not previously been withdrawn are hereby overruled.

2. The assertions by the Debtor are solely for purposes of this continued use order and are not binding, preclusive or estoppel with respect to the Debtor's estate or any trustee or representative thereof or any creditor or party in interest, trustee or committee. Notwithstanding any other term of this Order, this Order, and use of the descriptive term "Cash Collateral:" (i) does not determine, adjudicate or find the nature, extent, priority, validity or perfected status of any alleged lien, interest or security interest, in any property, proceeds or Cash Collateral or the nature of any transaction and (ii) does not release, waive, bar, estop, preclude or impair: (a) any right defense, claim, assertion or cause of action (including without limitation under Chapter 5 of the Bankruptcy Code) against any other person or entity of the Debtor or its estate or any creditor, party in interest or committee, or (b) any objection or request to disallow, re-characterize or subordinate any claim or interest asserted.

3. The Debtor shall maintain money received from operations, accounts receivable collected and Cash Collateral in a debtor-in possession operating account for the Debtor. The Debtor is strictly prohibited from using such collections and Cash Collateral except as provided herein. Notwithstanding any other term of this Order, the Debtor shall use Cash Collateral to satisfy expenses.

4. On or before the end of business on April 1, 2024, the Debtor shall provide Secured Creditors evidence that it has opened an account styled as "Debtor in Possession Account" (hereinafter, the "Cash Collateral Account"). The Debtor shall immediately deposit into the Cash Collateral Account all Cash Collateral, including all Cash Collateral presently in the possession of or under the control of the Debtor, and all Cash Collateral generated or received subsequent to the Petition Date. All funds on deposit in the Cash Collateral Account are and shall constitute Secured Creditors' Cash Collateral under Section 363 of the Bankruptcy Code and are subject to the terms

of this Order.

5. Subject to the provisions and conditions herein, the Debtor is hereby authorized to use Cash Collateral to pay the Expenses set forth on the Budget attached hereto and incorporated herein as **Exhibit A** through June 30, 2024. Absent Secured Creditors' consent to the further use of Cash Collateral consistent with the terms of this Order, any use thereof must be based upon further order of the Court.

6. The Debtor's use of Cash Collateral to pay the actual, necessary, and ordinary Expenses incurred from and after the Petition Date in connection with the operation of its business is authorized up to but not exceeding 5% of each individual line-item amount or 10% in the aggregate as set forth in the Budget. The Debtor shall not, however, be permitted to carry over any excess of budgeted costs in one line-item on the Budget to any shortage of budgeted costs on any other line-item, or from one period on the Budget to any subsequent period, without Secured Creditors' prior written consent.

7. Any consent granted by Secured Creditors to the use of Cash Collateral shall not be construed as: (1) consent to a surcharge against the Cash Collateral pursuant to Bankruptcy Code Section 506(c) or otherwise; (2) any agreement that Secured Creditors' respective interests in their collateral is adequately protected; (3) a waiver of the right to seek relief from the automatic stay; or (4) any waiver as to any such other and further relief as Secured Creditors may deem appropriate.

8. Except in strict accordance with the Budget and the provisions of this Order, the Debtor shall not be permitted to spend any Cash Collateral or withdraw any funds on deposit in the Cash Collateral Account for any reasons whatsoever without the written consent of Secured Creditors or further order of this Court. The Debtor shall also not use any Cash Collateral to pay

any expenses not described in the Budget, to pay any prepetition debts of the Debtor, or to pay any professional fees or expenses of the Debtor not included in the Budget.

9. This Order does not find or determine the relationship or existence of any duty between the Secured Creditors and the Debtor. Nothing contained herein shall obligate any Secured Creditors to make further advances to the Debtor on any pre-petition loan or credit facility. Any such relief sought by the Debtor may be authorized by separate order of this Court.

10. The Secured Creditors shall receive, as adequate protection to the extent of the diminution in value of each of their perfected interests in the Cash Collateral, a replacement lien in post-petition assets of the same character as their respective prepetition collateral and proceeds of post-petition assets of the same character as their respective prepetition collateral (collectively, the "Adequate Protection Liens"), whether now existing or hereafter acquired or arising, and wherever located (the collateral subject to such Adequate Protection Liens, the "Replacement Collateral"). Notwithstanding the foregoing, the Adequate Protection Liens shall not encumber any real property owned by the Debtor or the proceeds from the sale of any such property; or causes of action arising or recoverable under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, all transfers avoided under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, and all liens avoided under § 506(d) of the Bankruptcy Code.

11. Notwithstanding any other provisions of this Order, any agreements approved hereby, or any other orders in this Chapter 11 Case, any statutory liens (collectively, the "Tax Liens") held by Ector County or any other ad valorem tax creditor (the "Taxing Authorities") for prepetition and postpetition taxes shall not be primed nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens

asserted by the Taxing Authorities are fully preserved.

12. The Adequate Protection Liens shall (i) be supplemental to and in addition to the prepetition liens or interests of each respective Secured Creditor, (ii) be accorded the same validity and priority as enjoyed by the prepetition liens or interests immediately prior to the Petition Date, and (iii) be deemed to have been perfected automatically effective as of the entry of this Order without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

13. Except as otherwise provided herein, the terms of this Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest from and after the entry of this Order by this Court.

14. During the period governed by this Order, the Debtor shall maintain an accounting, in line item detail corresponding to the line items set forth in the Budget, of all Cash Collateral, and all funds deposited into and expended from the Cash Collateral Account, and shall provide Secured Creditors with that accounting no later than 20 days after the end of period of use which shall be co-extensive with the reporting to the Office of the U.S. Trustee. In addition, the Debtor shall provide to Secured Creditors such other documents, reports and/or financial information as may be reasonably requested by Secured Creditors.

15. The Debtor shall maintain insurance of a kind and in an amount sufficient to satisfy the requirements of the United States Trustee for the Western District of Texas.

16. The Debtor shall maintain and take all steps necessary to keep its assets in good repair and condition, make all necessary replacements thereof, and operate the business of the Debtor safely, efficiently, and in compliance with all applicable laws, codes and ordinances. The

Debtor shall not commit waste in connection with the Cash Collateral or its assets. The Debtor shall preserve and maintain all licenses, privileges, franchises and certificates related to and/or necessary for the Debtor's operations.

17. Notwithstanding anything to the contrary in this Order:

  a) Entry of this Order is without prejudice to any and all rights, remedies and claims that Secured Creditors may have against the Debtor or third parties, and does not bar or limit Secured Creditors from seeking further or additional relief, including without limitation, seeking additional adequate protection, seeking to have property deemed not property of the estate and seeking to terminate or modify the automatic stay;

  b) Secured Creditors reserve any and all rights to object to the entry of any order that alters or deviates from the terms and provisions of this Order or for any other reason; and

  c) No act committed or action taken by a Secured Creditor under this Order shall be used, construed, or deemed to hold a Secured Creditor to be in control of the Debtor, or the governance, management or operations of the Debtor for any purpose. Nor will a Secured Creditor be held to be a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtor's business (as such terms, or any similar terms, are used in the Internal Revenue Code, Comprehensive Environmental Response, Compensation and Liability Act, Bankruptcy Code, each as may be amended from time to time, or any other federal or state law) by virtue of the interests, rights, and remedies granted to or conferred upon a Secured Creditor under this Order, including, without limitation, such rights and remedies as may be exercisable by Secured Creditor in connection with this Order.

18. Unless extended as provided in this Order or specifically waived in writing by Secured Creditor, the Debtor's right and authority to use Cash Collateral shall immediately terminate upon the earlier of 5:00 p.m. on June 30, 2024, or the occurrence of any of the following (each, a "Default"):

  a) Ten (10) days following either a Secured Creditor's delivery of a notice (either written or via email) of a breach by the Debtor of any obligation under this Order which breach remains uncured or otherwise continues to exist at the end of such ten

---

In re Ironclad Pressure Control, LLC, a Texas limited liability company, Debtor
Order Authorizing Continued Use of Cash Collateral - Page 9

    (10) day notice period;

 b) Conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; and

 c) The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Order without the express prior written consent of Secured Creditor (and no such consent shall be implied from any action, inaction, course of conduct or acquiescence by Secured Creditor).

 19. Subject to all reservation of rights in this Order, the provisions of this Order shall inure to the benefit of the Debtor and Secured Creditors and shall be binding upon the Debtor and Secured Creditors and their respective successors and assigns, including any agent, administrator or other fiduciary (other than a trustee) hereafter appointed as legal representative of the Debtor or with respect to property of the Debtor's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of the Debtor and all other parties in interest (other than a trustee).

 20. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor to Secured Creditors from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created hereunder.

 21. The entry of this Order shall not prejudice or limit the rights of the Debtor, Secured Creditors or any other party in interest to seek additional relief with respect to the use of Cash Collateral, to seek different or additional adequate protection, or request modification or termination of this Order. This Order shall not limit or otherwise alter the rights of the Debtor, Secured Creditors or other parties in interest, except to the extent specifically provided for herein. Further, nothing contained herein shall waive or modify any rights and remedies which Secured Parties have or may come to have under the Secured Creditors' respective loan documents, this

Order, at law, in equity, or otherwise.

22. No subsequent stay, modification, termination, failure to extend the terms of, or vacation of this Order shall affect, limit, or modify any claim, right, or lien granted hereunder to Secured Creditors, nor shall any such stay, modification, or vacation limit, affect, or modify the validity, enforceability, or perfection of any security interest, mortgage, lien, or priority granted herein.

23. The Debtor's authority to use Cash Collateral under this Order terminates at 5:00 p.m. Central Time on June 30, 2024, unless extended pursuant to the procedures set forth in this Order or by further order of the Court.

24. On or before May 31, 2024, the Debtor shall serve upon Secured Creditors' counsel, the SubChapter V Trustee, and the United States Trustee, by electronic mail, and file with the Court, a proposed budget for the three-month period beginning July 1, 2024 (the "Proposed Extended Budget"). If the Court does not set the Proposed Extended Budget for hearing on its own review and no opposition to the Proposed Extended Budget is provided to the Debtor by Secured Creditors' counsel, the SubChapter V Trustee, or the United States Trustee by 5:00 p.m. on June 7, 2024, the Proposed Extended Budget shall be deemed approved for the upcoming three-month period (thereby becoming an "Approved Extended Budget"), the Debtor shall file a Notice of Agreement Authorizing Continued Use of Cash Collateral (with a copy of the Proposed Extended Budget attached), and the Debtor shall be authorized to use Cash Collateral in accordance with the Approved Extended Budget. The same procedures shall be followed with respect to successive extensions for use of Cash Collateral.

25. The Debtor shall execute and deliver to the Secured Creditors all such agreements, financing statements, instruments and other documents as the Secured Creditors may reasonably

request to evidence, confirm, validate or perfect the liens granted pursuant hereto. The Debtor shall deliver a copy of its Monthly Operating Report to the Secured Creditors' counsel by the 20th day of each month for the prior month.

26. Carve-Out. The Debtor's obligations to the Secured Creditors and the liens, security interests, and superpriority claims granted herein shall be subject and subordinate to the Carve-Out. "Carve-Out" shall mean fees owed pursuant to 28 USC § 1930 as well as fees and expenses of the Subchapter V trustee including, without limitation, fees owed pursuant to 11 USC § 1194, plus (ii) up to $75,000.00 of allowed fees and expenses of professionals employed by the Debtor in the subject bankruptcy case during the time the case is in chapter 11.

27. Within two business days after entry of this Order, Debtor's counsel shall serve a copy of this Order on each of the following parties or its counsel: (a) the U.S. Trustee for the Western District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the Western District of Texas; (d) the Internal Revenue Service; (e) any creditor known to have filed a UCC-1 financing statement concerning the Debtor's assets with the Secretaries of State of Delaware and Texas as of the Petition Date; (f) the Attorney General and Comptroller of Public Accounts for the State of Texas; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

28. This Order shall be effective as of the date of the signature of the Court and, notwithstanding anything to the contrary in Bankruptcy Rules 4001(a)(3) or 6004(h), shall not be stayed absent the grant of a stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtor and Secured Creditors. To the extent of any conflict or inconsistency between or among (a) the express terms of the Motion, any other order of this Court, or any other agreements and (b) the terms of this Order, the terms and provisions of this Order shall govern and control. The Debtor

and Secured Creditors are hereby authorized and directed to take all actions necessary or desirable to effectuate this Order.

29. This Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

# # # END OF ORDER # # #

# EXHIBIT A

| | COMPANY NAME | MANAGER NAME | MANAGER NAME | COMPLETED BY | DATES REPRESENTED | DATE OF LAST UPDATE |
|---|---|---|---|---|---|---|
| | Ironclad Pressure Control LLC | Bailee Fernandez | Bailee Fernandez | Bailee Fernandez | 03/2024-06/2024 | Friday, March 22, 2024 |
| | Month of | | March-2024 | April-2024 | May-2024 | June-2024 |
| | | ACTUAL 03/17/24 THRU 03/23/24 | | | | |
| 1 | BEGINNING BALANCE \| CASH ON HAND | $ 22,500.00 | $ 555,167.70 | $ 159,396.36 | $ 73,814.56 | $ 96,065.88 |
| 2 | | | | | | |
| 3 | ( + ) Accounts Receivable | | | | | |
| 4 | Bayswater/Net30/Active | $ - | $ 34,830.00 | $ 68,390.00 | $ - | $ - |
| 5 | Exact Valve Solutions/Net30/Closed Invoice | $ - | $ - | $ 4,050.00 | $ - | $ - |
| 6 | Sales Tax for Receivables above | $ - | $ 2,873.49 | $ 5,642.19 | $ - | $ - |
| 7 | Equipment Sale | $ 675,000.00 | $ - | $ - | $ - | $ - |
| 8 | Sales Tax for Equipment Sale (TBD) | $ 55,687.50 | $ - | $ - | $ - | $ - |
| 9 | Collection of Projected Revenue (Net30) | $ - | $ - | $ - | $ 267,375.00 | $ 358,590.00 |
| 10 | TOTAL CASH RECEIPTS | $ 730,687.50 | $ 37,703.49 | $ 78,082.19 | $ 267,375.00 | $ 358,590.00 |
| 11 | | | | | | |
| 12 | ( − ) CASH PAYMENTS | | | | | |
| 13 | ( − ) General Overhead | | | | | |
| 14 | PAYROLL- Shop/Field Employees (Gross) | $ 11,975.00 | $ - | $ 65,550.00 | $ 113,610.00 | $ 86,400.00 |
| 15 | PAYROLL-Managers and Admin (Gross) | $ 28,030.80 | $ - | $ 10,769.24 | $ 16,153.86 | $ 10,769.24 |
| 16 | PAYROLL-Bailee and Mindy (Gross) | $ 10,384.58 | $ - | $ 11,538.46 | $ 17,307.69 | $ 11,538.46 |
| 17 | PAYROLL TAXES- Employer Portion | $ 3,854.86 | $ - | $ 6,718.93 | $ 11,250.97 | $ 8,316.13 |
| 18 | Employee Fuel & Expense Reimbursements | $ - | $ - | $ 1,500.00 | $ 4,500.00 | $ 3,000.00 |
| 19 | Bailee - Reimbursements | $ - | $ - | $ - | $ - | $ - |
| 20 | Building Lease (Rent, Insurance, Water, Electric, Prop Tax) | $ 76,500.00 | $ - | $ 29,000.00 | $ 30,000.00 | $ 30,000.00 |
| 21 | Utilities- Republic Services- Trash (Deposit) | $ - | $ - | $ - | $ - | $ - |
| 22 | Utilities-Atmos Energy -Gas (Deposit) | $ - | $ 156.99 | $ - | $ - | $ - |
| 23 | Insur. Premium Finance- First Insurance Funding ('24-'25 Policies) | $ - | $ - | $ 9,482.00 | $ 9,482.00 | $ 9,482.00 |
| 24 | Insurance Premium- TexasMutual | $ 905.06 | $ - | $ 905.06 | $ 905.06 | $ - |
| 25 | Parts and Consumables | $ - | $ 6,000.00 | $ 3,000.00 | $ - | $ - |
| 26 | Shop Supplies | $ - | $ 2,000.00 | $ - | $ - | $ - |
| 27 | Tools and Equipment | $ - | $ 30,000.00 | $ - | $ 19,000.00 | $ 19,000.00 |
| 28 | Vehicle Maintenance (Auto parts, tires, oil changes, etc.) | $ - | $ 3,000.00 | $ - | $ - | $ 3,000.00 |
| 29 | Uniforms, PPE | $ - | $ - | $ 3,000.00 | $ 4,500.00 | $ - |
| 30 | Subscription Fees (Email Domain, Quickbooks & Timesheets) | $ - | $ 930.00 | $ 425.00 | $ 425.00 | $ - |
| 31 | Bank Fees | $ - | $ - | $ 450.00 | $ 450.00 | $ 450.00 |
| 32 | Stellantis Financial (4- Financed Trucks) 10th of Each Month | $ - | $ - | $ 9,088.02 | $ 4,544.01 | $ 4,544.01 |
| 33 | Chrysler Capital (2-Financed Trucks) 23rd of Each Month | $ - | $ - | $ 2,595.09 | $ 2,595.09 | $ 2,595.09 |
| 34 | TX Comptroller-Sales Taxes | $ 55,687.50 | $ 2,873.49 | $ 5,642.19 | $ - | $ - |
| 35 | Forklift Rental | $ - | $ - | $ - | $ 6,900.00 | $ - |
| 36 | TOTAL GENERAL OVERHEAD | $ 187,337.80 | $ 44,960.48 | $ 159,663.99 | $ 241,623.68 | $ 189,094.93 |
| 37 | | | | | | |
| 38 | | $ - | $ - | $ - | $ - | $ - |
| 39 | Insur. Premium Finance- Bank Direct Capital (Policies Exp: 3/3) | $ - | $ 17,000.00 | $ - | $ - | $ - |
| 40 | Insurance- '23-'24 GL Final Audit | $ - | $ 14,147.04 | $ - | $ - | $ - |
| 41 | Insurance 2024 Policy Renewals (Down Payment) | $ - | $ 18,809.06 | $ - | $ - | $ - |
| 42 | ISNetworld Annual Subscription (Safety Reporting-Customer Req) | $ - | $ 2,475.00 | $ - | $ - | $ - |
| 43 | Safety Requirements (NCMS, Drug Testing, MVRs, etc.) | $ - | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| 44 | FundThrough USA (Secured Creditor) | $ - | $ 330,000.00 | $ - | $ - | $ - |
| 45 | Post Petition Accounts Payable (3rd Party Trucking) | $ - | $ - | $ 1,500.00 | $ - | $ - |
| 46 | Post Petition Accounts Payable (3rd Party Equipment Rental) | $ 10,682.00 | $ - | $ - | $ - | $ - |
| 47 | Post Petition Accounts Payable (Other Vendors) | $ - | $ 583.25 | $ - | $ - | $ - |
| 48 | Sub Chapter V Fee | $ - | $ 4,000.00 | $ 1,000.00 | $ 2,000.00 | $ - |
| 49 | Ector County Appraisal District | $ - | $ 21,477.15 | $ - | $ - | $ - |
| 50 | | $ - | $ - | $ - | $ - | $ - |
| 51 | TOTAL OTHER EXPENSES | $ 10,682.00 | $ 388,514.35 | $ 4,000.00 | $ 3,500.00 | $ 1,500.00 |
| 52 | | | | | | |
| 53 | TOTAL CASH PAYMENTS | $ 198,019.80 | $ 433,474.83 | $ 163,663.99 | $ 245,123.68 | $ 190,594.93 |
| 54 | | | | | | |
| 55 | NET CASH CHANGE (CASH RECEIPTS − CASH PAYMENTS) | $ 532,667.70 | $ (395,771.34) | $ (85,581.80) | $ 22,251.32 | $ 167,995.07 |
| 56 | | | | | | |
| 57 | ENDING CASH POSITION (CASH ON HAND + CASH RECEIPTS − CASH PAYMENTS) | $ 555,167.70 | $ 159,396.36 | $ 73,814.56 | $ 96,065.88 | $ 264,060.95 |