IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IRONCLAD PRESSURE CONTROL, LLC | § | Case No. 23-70156 |
| | § | In Proceedings Under Chapter 11 |
| Debtor. | § | Subchapter V |
| | § | |

## DEBTOR'S FIRST AMENDED PLAN
## UNDER SUBCHAPTER V OF CHAPTER 11

## Dated June 28, 2024

**TO ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:**

## SUMMARY

This *Debtor's First Amended Plan Under Subchapter V of Chapter 11* (the "Plan"), is proposed by Ironclad Pressure Control, LLC ("Debtor"). On December 8, 2023, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Midland Division.

This Plan is provided to all known Creditors and parties in interest pursuant to the Bankruptcy Code. The details of the Plan as to classification and treatment of Claims are set out in Articles IV, V and VI of the Plan.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE I
## BACKGROUND

### A.    Background Facts

The Debtor is an oil field services company which was formed as a Delaware limited liability company in February 2023. The Debtor is headquartered at 16690 W. Basin Street, Odessa, Texas.

### Events Leading to Chapter 11 Filing

On December 4, 2023, C&W International Fabricators, LLC ("C&W"), the Debtor's single-largest equipment vendor, commenced suit against Ironclad in the 244th Judicial District Court of Ector County, Texas under Cause No. C-23-12-1320-CV styled *C&W International Fabricators, LLC vs. Ironclad Pressure Control, LLC, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez, and Albert Dehoyos* (the "State Court Suit") seeking, among other things, pre-judgment temporary injunctive relief freezing the assets and business operations of the Debtor.

On December 5, 2023, the presiding judge for the 244th Judicial District entered a *Temporary Restraining Order & Order Setting Hearing for Temporary Injunction* granting the relief requested by C&W and thereby freezing the assets and operations of the Debtor.

Unable to operate, the Debtor had no option other than to commence the instant bankruptcy case. Unfortunately, there was insufficient time prior to commencement of the bankruptcy case to arrange for debtor-in-possession financing and make other preparations ordinarily made in advance of commencement of a reorganization proceeding.

## B. Significant Events during the Bankruptcy Case

The Debtor filed a Voluntary Petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on December 8, 2023 (the "Petition Date").

Pursuant to Notice filed December 12, 2023 [Docket No. 6], Eric Terry was appointed as Subchapter V Trustee in this Bankruptcy Case.

On December 19, 2023, the Initial Debtor Interview was held.

The meeting of creditors was held and concluded on January 9, 2024.

Pursuant to Order entered January 16, 2024 [Docket No. 43] the employment of Rochelle McCullough, LLP as counsel for the Debtor was approved.

On February 1, 2024, the mandatory Status Conference under 11 U.S.C. § 1188 was held.

On February 5, 2024, the Debtor commenced Adversary Proceeding No. 24-07002-smr against C&W International Fabricators, LLC for recovery of preferential and/or fraudulent conveyances made within the ninety (90) days immediately prior to the Petition Date and removed the State Court Suit to Bankruptcy Court where it has been assigned Adversary Proceeding No. 24-07003-smr. Both matters are pending before this Court.

Pursuant to Application filed February 7, 2024 [Docket No. 55], the Debtor sought employment of Lain, Faulkner & Co., P.C. as financial advisor to the Debtor. The Application is currently pending before the Bankruptcy Court.

A Motion for Relief from Stay was filed by C&W International Fabricators, LLC and later withdrawn. A Joint Stipulation and Agreed Order was entered March 1, 2024 [Docket No. 96], on the Motion of BankDirect Capital Finance, a Division of AFCO Credit Corporation with respect

to a premium financing agreement. Agreed orders have been entered regarding motions for relief from stay filed by Kingdom Trinity, LLC, Santander as successor in interest to Chrysler Capital, and Stellantis Financial Services with respect to their respective collateral.

## C.     Alternatives to This Plan

If this Plan is not approved by the Bankruptcy Court under section 1191(a) of the Bankruptcy Code, then Debtor will move to confirm this plan on a nonconsensual basis under section 1191(b) of the Bankruptcy Code. If Debtor fails to confirm either a consensual or a nonconsensual plan, the most likely alternative is conversion of this case to Chapter 7. If Debtor's case is converted to Chapter 7, then secured creditors' recovery will be limited to the value of their collateral and Debtor's unsecured creditors would be limited to the liquidation value of non-exempt unencumbered property of the Estate.

While it is believed there is significant equity in the Debtor's oilfield equipment, on liquidation in a Chapter 7 proceeding, there is no guarantee the value be realized at a forced sale. The second alternative to confirmation is dismissal of the Bankruptcy Case. In the judgment of the Debtor, dismissal of the reorganization proceeding would lead to a highly unsatisfactory result. Numerous lawsuits would necessarily be filed by creditors attempting to collect debt owed to them. Such litigation would ultimately result in a disorganized and inefficient liquidation of the assets of the Debtor.

A Liquidation Analysis, Liquidating Trust Agreement, Summary of Retained Estate Claims and Plan Projections are attached to this Plan as **Exhibit A**, **Exhibit B**, **Exhibit C**, and **Exhibit D** respectively, and shall constitute Plan Documents as contemplated in Article II.B of the Plan

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

## A.     Defined Terms

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined). The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

2.1     "Administrative Bar Date" shall refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in Article IV, Section 4.2(a) of the Plan.

2.2.     "Administrative Expense" includes any cost or expense of administration of Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of Debtor, any actual and necessary expenses of operating the business of Debtor, all compensation

or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code.

2.3. "Allow" or "Allowance," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.4. "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided, however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

2.5. "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 and, as applicable, section 1186 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Contracts.

2.6. "Avoidance Action" means a cause of action and rights assertable by Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and including all causes of action, rights and remedies assertable by the Estate pursuant to section 544 of the Bankruptcy Code.

2.7. "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

2.8. "Bankruptcy Case" shall mean this case, under Case No. 23-70156-SMR-11 before the United States Bankruptcy Court for the Western District of Texas, Midland Division.

2.9. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

2.10. "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Midland Division.

2.11.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule."

2.12.    "<u>Bar Date</u>" is the date established by the Bankruptcy Court, including through any standing order, for filing proofs of Claim which, in this Bankruptcy Case, is February 16, 2024; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.13.    "<u>Beneficiary</u>" shall mean any Person that is the holder of an Allowed Claim entitled to receive Distributions from the Liquidating Trust pursuant to the Plan.

2.14.    "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.15.    "<u>Cash</u>" shall mean cash and cash equivalents, including funds held in a checking or money market account.

2.16.    "<u>Cash Collateral</u>" shall have the same meaning as in section 363(a) of the Bankruptcy Code.

2.17.    "<u>Claim</u>" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2.18.    "<u>Claimant</u>" means the holder of a Claim.

2.19.    "<u>Class</u>" means a category or group of holders of Claims as designated in Article V of the Plan.

2.20.    "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

2.21.    "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

2.22.    "<u>Confirmation Hearing</u>" means the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

2.23. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.24. "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed. In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

2.25. "Creditor" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

2.26. "Cure Claim" shall refer to a Claim under section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under an executory Contract or (b) for any actual pecuniary loss resulting from any such default under an Executory Contract.

2.27. "Debtor" shall mean IRONCLAD PRESSURE CONTROL, LLC.

2.28. "Disallowed," when used with respect to all or any part of a Claim, means that portion of a Claim to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

2.29. "Disposable Income" shall have the meaning provided for such term in section 1191(d) of the Bankruptcy Code.

2.30. "Distribution" shall refer to and include any distribution of any property pursuant to this Plan.

2.31. "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

2.32.    "<u>Equitable Subordination</u>" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

2.33.    "<u>Estate</u>" shall mean the bankruptcy estate of Debtor in this Bankruptcy Case, as the context requires.

2.34.    "<u>Estate Cash</u>" shall mean Cash held by the Estate.

2.35.    "<u>Estate Claims</u>" shall include any and all Claims or causes of action or rights of action held by the Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the forgoing. Estate Claims shall also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.

2.36.    "<u>Estate Defenses</u>" shall refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by the Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. Pr. 8(c). Estate Defenses shall also include all rights and remedies for Equitable Subordination. Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.

2.37.    "<u>Estate Insurance</u>" shall include any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

2.38.    "<u>Executory Contract</u>" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

2.39.    "<u>Estate Professional</u>" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 330, 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.40.    "<u>Final Decree</u>" shall mean the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case.

2.41.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, and which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

2.42.    "<u>General Unsecured Claim</u>" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

2.43.   "Governmental Bar Date" shall mean June 5, 2024, the date by which governmental units must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.44.   "Governmental Unit" shall have the same meaning as in section 101(27) of the Bankruptcy Code.

2.45.   "Initial Distribution Date", when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article VIII of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article VIII of this Plan applicable to each such Claim. The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim became an Allowed Claim. For all other purposes, the "Initial Distribution Date" shall be the first day of the calendar month immediately following the month in which the Effective Date occurs.

2.46.   "Interests" means any equity or stock ownership interest in the Debtor.

2.47.   "Insider Claims" means any Claim the Debtor held against an "insider" as defined in section 101(31) of the Bankruptcy Code as of the Petition Date.

2.48.   "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

2.49.   "Liquidating Trust" means the trust established pursuant to the Liquidating Trust Agreement for the purpose of liquidating and distributing the Liquidating Trust Assets to the Beneficiaries.

2.50.   "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement substantially in the form attached as Exhibit B, establishing the Liquidating Trust and providing for liquidation and distribution of the Liquidating Trust Assets as provided in Article X of this Plan.

2.51.   "Liquidating Trust Assets" means, collectively, the Remaining Assets.

2.52.   "Liquidating Trustee" means Eric Terry or such other individual as may be approved by the Bankruptcy Court to serve as the trustee under the Liquidating Trust Agreement.

2.53.   "Net Liquidating Trust Assets" means the portion of the Liquidating Trust Assets available for distribution to holders of Allow Claims, excluding any Reserves for Contested Claims, operating expenses of the Liquidating Truste, or otherwise.

2.54.   "Objection" includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy

Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax. Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

2.55. "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

2.56. "Person" includes any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

2.57. "Petition Date" means December 8, 2023.

2.58. "Plan" means this Plan filed by Debtor, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.59. "Plan Documents" shall refer to the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article II.B. of the Plan.

2.60. "Priority Claim" means a Claim that is entitled to priority of payment under sections 507(a)(4) through (7) of the Bankruptcy Code.

2.61. "Priority Tax Claim" means a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.62. "Projected Disposable Income" means the income Debtor has projected as income available to fund the Plan for Confirmation Hearing purposes and are reflected in the Plan Documents.

2.63. "Property Tax Claim" means a Claim for Property Taxes.

2.64. "Property Taxes" shall mean such taxes assessed by any Taxing Authority against any property of Debtor based on the value thereof, as allowed by applicable state and local law.

2.65. "Pro Rata Share" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

2.66. "Rejected Leases and Contracts" means all Unexpired Leases and Executory Contract of the Debtor.

2.67.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory Contract or Unexpired Lease.

2.68.   "Remaining Assets" means any Assets of the Debtor as of the Effective Date which will be transferred to the Liquidating Trust on the Effective Date.

2.69.   "Reserve" or Reserves" means any reserves set aside by the Liquidating Trustee pursuant to this Plan or the Liquidating Trust Agreement in order to pay any Trust Expenses or fund any Distribution or payment pursuant to the Plan.

2.70.   "Retained Causes of Action" means those causes of action, claims, counterclaims, defenses and rights of offset or recoupment retained by the Liquidating Trust as described in Article XII of the Plan.

2.71.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

2.72.   "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by Debtor as required by section 521 of the Bankruptcy Code.

2.73.   "Schedule of Rejected Executory Contracts" means the Schedule of Rejected Executory Contracts to be provided in the Plan or tendered at the Plan Confirmation hearing.

2.74.   "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against Debtor or any Asset.

2.75.   "Secured Creditor" shall mean the holder of a Secured Claim.

2.76.   "Subchapter V Trustee" shall mean Eric Terry.

2.77.   "Subchapter V Trustee Fees" shall mean those fees paid or to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

2.78.   "Substantial Consummation" means when the requirements of section 1101(2) of the Bankruptcy Code are factually satisfied.

2.79.    "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.80.    "Trust Expenses" means expenses incurred by the Liquidating Trustee in connection with the administration of the Liquidating Trust including without limitation the fees of the Liquidating Trustee, fees and expenses of Trust Professionals, and any cost or expenses which the Liquidating Trustee believes to be necessary or appropriate to the administration of the Liquidating Trust.

2.81.    "Trust Professionals" includes all professionals retained by the Liquidating Trustee including, without limitation, legal counsel, accountants, and such other advisors or professionals as the Liquidating Trustee may wish to retain.

2.68.    "Unclaimed Property" means any Cash, Distribution, payment or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the Liquidating Trustee may fix in the exercise of good faith business judgment.

2.69.    "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 7.

## B.    Rules of Interpretation and Construction of Terms

2.70.    Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions or the interpretation hereof.

2.71.    The words "herein," "hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

2.72.    Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

2.73.    The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, the Confirmation Order and all Plan Documents.

2.74.    References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

2.75.    All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Rochelle McCullough, LLP, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102, Attention: Michelle Wilson; email: MWilson@romclaw.com

2.76.    Reference herein to any agreement, contract, instrument or other document in this Plan shall refer to such agreement, contract, instrument or document as amended, supplemented or modified.

# ARTICLE III
## ACCEPTANCE OR REJECTION OF PLAN AND PLAN SUMMARY

3.1    Classes Entitled to Vote. Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims or Interests as defined herein shall not be entitled to vote to accept or reject the Plan. A Subchapter V Chapter 11 Plan does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

3.2    Class Acceptance Requirement. A Class of impaired Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

3.3    Effect of Confirmation. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

3.4    Voting. For all Classes, the ballot must be returned to Joseph F. Postnikoff, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

3.5    Reorganization. The Plan provides for transfer of all Remaining Asset of the Debtor to a Liquidating Trust on the Effective Date of the Plan for the liquidation of the Remaining Assets and ultimately distribution to holders of Allowed Secured Claims.

3.6    Disposable Income. The Debtor submits all future earnings or other future income of the Debtor to the supervision and control of the trustee as is necessary for the execution of the Plan.

3.7    Classes. The Plan provides for:

| | |
|---|---|
| 1 | Class of Priority Claims |
| 5 | Classes of Secured Claims |
| 1 | Class of Unsecured Claims |
| 1 | Class of Equity Security Holders |

This Plan also provides for the payment of administrative and priority tax claims.

All creditors should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one).**

### ARTICLE IV
### CLASSIFICATION OF CLAIMS

4.1.    **Class 1** – The priority Non-Tax Claims including the pre-petition Claims of current and former employees of Debtor under 11 U.S.C. § 507 of the Bankruptcy Code.

4.2.    **Class 2** – The Claims of Ad Valorem Tax Authorities to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.3.    **Class 3** – The claim of FundThrough USA Inc. against Debtor, to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code.

4.4.    **Class 4** – The claim of Kingdom Trinity, LLC against Debtor, to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code.

4.5.    **Class 5** – The claims of Stellantis Financial Services against Debtor, to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.6.    **Class 6** – The claims of Chrysler Capital against Debtor, to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.7.    **Class 7** – All Allowed Non-Priority Unsecured Claims respecting Debtor.

4.8.    **Class 8** – Equity Interests of the Debtor.

### ARTICLE V
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### AND PRIORITY TAX CLAIMS

5.1.    Unclassified Claims. Under Section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

5.2.    Administrative Expense Claims. The Liquidating Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of this section 5.2 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Liquidating Trustee may move the Bankruptcy Court to apply the

provisions of Article V below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.

5.3.    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Liquidating Trustee, or as otherwise ordered by the Bankruptcy Court.

5.4.    Unless the Bankruptcy Court orders to the contrary or the Liquidating Trustee agrees to the contract in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Liquidating Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution through the Liquidating Trust.

5.5.    A Claim for an Administrative Expense, for which a proper notice was filed and served under section 5.4 above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extend allowed by a Final Order.

5.6.    The procedures contained above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been property filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with section 5.4 above. Professional fees and expenses of any Estate Professional incurred on or after the Effective Date may be paid by the Liquidating Trustee without necessity of application to or order by the Bankruptcy Court.

5.7.    If the Liquidating Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

5.8.    Ector CAD Claim for 2024 and Subsequent Tax Year Ad Valorem Property Taxes. The Liquidating Trustee shall pay all post-petition/post-confirmation ad valorem tax liabilities (tax

year 2024 and subsequent tax years) owing to Ector CAD, if any, in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent, and pursuant to 11 U.S.C. §503(b)(1)(D), Ector CAD shall not need to file an administrative expense claim and/or request for payment as a condition of an Ector CAD post-petition/post-confirmation claim being an allowed administrative expense.   Nothing in the Plan or in the Confirmation Order shall be construed to deprive Ector CAD of any statutory liens which may inure to the benefit of Ector CAD to secure payment of any post-petition Administrative Claims for ad valorem taxes. In the event, any post-petition/post -confirmation ad valorem taxes owed to Ector CAD shall become delinquent, Ector CAD may recover, in addition to the base tax, all penalties and interest allowed by State law.  The failure to timely pay post-petition and/or post-confirmation taxes shall be considered an event of default.  Ector CAD shall provide The Liquidating Trustee with written notice of that default and a ten (10) day opportunity to cure said default.  In the event that the The Liquidating Trustee fails to timely cure the post-petition and/or post-confirmation default, Ector CAD may pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed in state district court without further order of this court or further notice to the Debtor.

     5.9.   Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim against the Debtor shall receive (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty; or (ii) or (iii) such other terms as may be agreed upon in writing by the holder of the Priority Tax Claim and the Liquidating Trustee.

     5.10.   Statutory Fee.  As a case under Subchapter V of Chapter 11 of the Bankruptcy Code, no fees are required to be paid under 28 U.S.C. § 1930. Any fees due the Subchapter V Trustee as of the Confirmation Date shall be paid in full on the Effective Date or as soon thereafter as is practicable.

## ARTICLE VI
## TREATMENT OF CLAIMS UNDER THE PLAN

Claims and Interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Impaired | Each holder of an Allowed Priority Non-Tax Claim shall be paid a sum of money no greater than the amount of each holder's Allowed Non-Tax Priority Claim on the Initial Distribution Date.<br><br>The Debtor believes there are nine (9) holders of Class 1 – Priority Non-Tax Claims totaling approximately $39,542.55. Class 1 is Impaired. Holders of Class 1 Claims are entitled to vote on the Plan. |

| Class 2 – Secured Claim of Ad Valorem Tax Authorities | Impaired | <u>Class 2 Summary</u>. This class consists of ad valorem tax claims assessed against the real and personal property of the Debtor asserted by the relevant taxing authorities. All proofs of claim filed by Midland County and related jurisdictions which have filed proofs of claim for property taxes assessed against real property of the Debtor located in Midland County, Texas, for the year 2023 have been withdrawn. As a result, it is believed there are no Class 2 Creditors.<br><br><u>Treatment</u>. Each holder of a Class 2 Allowed Secured Claim payable to a taxing authority for ad valorem taxes for tax years 2023 and prior, if any, shall be paid in full, with statutory interest on such Allowed Secured Claims under 11 U.S.C. § 506(b), to the extent applicable, from the proceeds of sale of the Collateral against which such Allowed Secured Claim was assessed. |
| --- | --- | --- |
| Class 3 – FundThrough USA Inc. | Impaired | <u>Class 3 Summary</u>. Class 3 consists of the Secured Claim of FundThrough USA Inc. against Debtor which was asserted to be no less than $349,991.67 as of the Petition Date secured by a Lien against all untitled Personal Property of the Debtor. In the course of the Bankruptcy Case, the Class 3 Creditor received payments totaling $370,000.00 and subsequently withdrew its proof of claim although the Class 3 Creditor did assert entitlement to a claim over and above the $370,000.00 received.<br><br>Treatment. The claim of FundThrough USA Inc. is deemed satisfied in full and FundThrough USA Inc. shall receive no further distribution from the Debtor or Liquidating Trust. Within thirty (30) days after the Effective Date, FundThrough USA Inc. shall file appropriate releases of all outstanding liens against Assets of the Debtor. |
| Class 4 – Secured Claim of Kingdom Trinity, LLC | Impaired | <u>Class 4 Summary</u>. Class 4 consists of the Secured Claim of Kingdom Trinity, LLC against Debtor which was asserted to be no less than $1,087,798.41 as of the Petition Date secured by a Lien against certain real property located at 5616 East County Road 94, Midland, Midland County, Texas. Pursuant to Order of the Bankruptcy Court, the automatic stay of section 362 of the Bankruptcy Code was lifted to allow Kingdom Trinity, LLC to foreclose its lien against its Collateral and Kingdom Trinity, LLC subsequently foreclosed its lien against its Collateral. |

| | | |
|---|---|---|
| | | Treatment. Any Allowed Unsecured Deficiency Claim of Kingdom Trinity, LLC shall be Allowed as a Class 7 Claim. |
| Class 5 – Secured Claims of Stellantis Financial Services | Impaired | Class 5 Summary. Class 5 consists of the claims of Stellantis Financial Services Secured by four (4) 2022 Ram 2500 Diesel Pickup Trucks. The Debtor has been making adequate protection payments to Stellantis pursuant to Orders of this Court. It is believed there is no equity in the Collateral of Stellantis Financial Services.<br><br>Treatment. Stellantis Financial Services shall be authorized, following entry of the Confirmation Order, to gain possession of its Collateral and exercise its contractual and other remedies under applicable state law. Any Allowed Unsecured Deficiency Claim of Stellantis Financial Services, evidenced by the filing of an amended proof of claim, shall be treated as a Class 7 Claim. Class 5 is Impaired. The holder of Class 5 Claims is entitled to vote on the Plan. |
| Class 6 – Secured Claims of Chrysler Capital | Impaired | Class 6 Summary. Class 6 consists of the claims of the Chrysler Capital Secured by two (2) 2022 Ram 2500 Diesel Pickup Trucks. The Debtor has been making adequate protection payments to Chrysler Capital pursuant to Orders of this Court. It is believed there is no equity in the Collateral of Chrysler Capital.<br><br>Treatment. Chrysler Capital shall be authorized, following entry of the Confirmation Order, to gain possession of its Collateral and exercise its contractual and other remedies under applicable state law. Any Allowed Unsecured Deficiency Claim of Chrysler Capital, evidenced by the filing of an amended proof of claim, shall be treated as a Class 7 Claim. Class 6 is Impaired. The holder of the Class 6 Claims is entitled to vote on the Plan. |
| Class 7 – Non priority Unsecured Creditors | Impaired | Class 7 consists of Allowed Claims against Debtor (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 7 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Debtor for which: (y) no collateral exists to secure the alleged Secured |

| | | |
|---|---|---|
| | | Claim; and/or (z) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.<br><br>Treatment. Each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of the Net Liquidating Trust Assets after the satisfaction of, or allocation of an appropriate Reserve for, the following: (i) Allowed Administrative Expense Claims, (ii) Allowed Non-Priority Claims, (iii) Allowed Priority Tax Claims; (iv) Allowed Ector County 2024 ad valorum property tax claims; and (v) Trust Expenses. The timing of the distribution(s) of the Net Liquidating Trust Assets shall be at the discretion of the Liquidating Trustee except to the extent limited by the express terms of the Plan, the Liquidating Trust Agreement, or applicable law. Class 7 is Impaired. Holders of Class 7 Claims are entitled to vote on the Plan.<br><br>No Holder of a Class 7 Claim shall receive more than 100% of their Allowed Claim. |
| Class 8 – Equity Interest Holder of the Debtor | Impaired | Class 8 consists of the holder of Interests in Debtor. All Interests in the Debtor shall be extinguished and shall cease to exist as of the Effective Date. The holder of such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 8 is Impaired. The Holder of Class 8 Interests is conclusively presumed to have rejected the Plan and, accordingly, is not entitled to vote on the Plan. |

## ARTICLE VII
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

7.1.    <u>Disputed Claim</u>.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

7.2.    <u>Delay of Distribution on a Disputed Claim</u>.    No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

7.3.   <u>Settlement of Disputed Claims</u>.  The Liquidating Trustee will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure until the Effective Date and thereafter without court approval or compliance with Rule 9019 of the F.R.B.P.

## ARTICLE VIII
## EXECUTORY CONTRACTS

8.1   <u>Assumed Executory Contracts and Unexpired Leases</u>.  Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under this section 8.1, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of claim arising from the rejection of an executory contract or  unexpired lease under this section must be filed no later than **thirty (30)** days after the Effective Date.

8.2   <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Liquidating Trust or the Liquidating Trust Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon Debtor and its bankruptcy counsel and the Liquidating Trustee and his counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

8.4   <u>Rejection Claims</u>. Any Rejection Claim not barred by section 8.2 above shall be classified as a Class 7 Claim (if such Rejection Claim is Allowed against Debtor), all subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed.

## ARTICLE IX
## MEANS FOR IMPLEMENTATION OF THE PLAN

9.1.   <u>General</u>.  The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code.

9.2.   <u>Liquidating Trust</u>. The Liquidating Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Liquidating Trust Agreement. The Debtor and the Estate shall be the settlor of the Liquidating Trust.

9.3.   <u>Transfer of Assets</u>. As of the Effective Date all Remaining Assets shall be transferred from the Debtor to the Liquidating Trust. After the Effective Date, the Liquidating Trustee may still abandon any Trust Assets which are burdensome or have no inconsequential value to the Liquidating Trust. The Assets shall be transferred to, and vested in, the Liquidating

Trust free and clear of all Liens, Claims, rights, Interest and charges, except as expressly provided in this Plan.

9.4.    <u>Assumption of Obligation to Make Distributions</u>. The Liquidating Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

9.5.    <u>Actions by the Debtor and the Liquidating Trustee to Implement the Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Liquidating Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (i) all transfers of Assets to the Liquidating Trust that are to occur pursuant to the Plan, (ii) the cancellation of Interests and the winding up and dissolution of the Debtor; (iii) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (iv) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements, permitted by applicable law, order, rule or regulation.

9.6.    <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (i) any Person directly affected by the relief sought in the pleading, (ii) the U.S. Trustee, (iii) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (iv) the Liquidating Trustee through legal counsel.

9.7.    <u>Section 505 Powers</u>. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date.

9.8.    <u>Section 510(c) Powers</u>. All rights and powers to seek or exercise any right or remedy of Equitable Subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date as an Estate Defense.

9.9.    <u>Section 506(c) Powers</u>. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Liquidating Trustee.

9.10.    <u>Plan Injunction</u>. The Liquidating Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

9.11.    <u>Cancellation of Interests</u>. Except as otherwise specifically provided herein, upon the Effective Date: (i) all interests in the Debtor shall be cancelled; (ii) the Holder of such cancelled Interests is not a beneficiary of the Liquidating Trust.

9.12.    Dissolution of Debtor. The Liquidating Trustee shall be responsible for the winding up and dissolution of the Debtor which shall be undertaken as soon as practicable after the Effective Date. The Liquidating Trustee may retain such professionals, consultants or advisors as may be reasonably necessary to seasonably accomplish this task, and all such expenses attributable to the winding up and dissolution of the Debtor shall be treated as Trust Expenses.

9.13.    Settlement of Disputed Claims.  From and after the Effective Date the Liquidating Trustee will have the power and authority to settle and compromise a disputed claim without court approval or compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## THE LIQUIDATING TRUST

10.1.    Creation of Liquidating Trust. On the Effective Date the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement which shall be executed on behalf of the Debtor and by the Liquidating Trustee to accept the appointment. The Liquidating Trust Agreement shall no terminate upon the death or incapacity of the Trustee and shall continue until its termination in accordance with the terms of this Plan and the Liquidating Trust Agreement. Reference is made to the Liquidating Trust Agreement for all purposes which shall constitute an integral part of the Plan.

10.2.    Compensation of Liquidating Trustee. The Liquidating Trustee shall be compensated from the Trust Assets in the manner set forth in the Liquidation Trust Agreement as a Trust Expense. The Liquidating Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

10.3.    Trust Assets. The Debtor and the Estate shall constitute the settlor of the Liquidating Trust. As of the Effective Date, all Remaining Assets shall be transferred to the Liquidating Trust where they will constitute the Trust Assets. The Trust Assets shall encompass all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (i) all Assets, (ii) Avoidance Actions, (iii) Cash, (iv) Estate Claims, (v) Estate Defenses, and Retained Causes of Action. To evidence the transfer of the Estate Assets to the Liquidating Trust, the Debtor shall, if requested by the Liquidating Trustee, execute on behalf of the Debtor and the Estate, as settlors, an Assignment of Trust Assets transferring the Estate Assets to the Liquidating Trust which shall be included among the Plan Documents.

10.4.    Distributions from Liquidating Trust. The Liquidating Trustee shall be responsible for making all Distributions from the Liquidating Trust to holders of Allowed Claims pursuant to this Plan. The priority of Distributions from the Liquidating Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)    First, to pay Trust Expenses;
(b)    Second, to pay Allowed Administrative Expense Claims including Administrative Expense Claims of Estate Professionals and Ordinary Course Claims;

    (c)     Third, to pay Class 1 Priority Non-Tax Claims;

    (d)     Fourth, to pay Priority Tax Claims; and

    (e)     Fifth, to make Distributions to holders of Allowed Class 7 Non-Priority Unsecured Claims.

So long as appropriate Reserves are maintained for the satisfaction of potential Allowed Claims entitled to priority of distribution over holders of Allowed Class 7 Claims, the Liquidating Trustee may make Distributions to holders of Allowed Class 7 Claims from the remaining Trust Assets.

10.5.   <u>Reserves</u>. The Liquidating Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, reserves on account of Contested Claims, Retained Causes of Action, Avoidance Actions, Estate Claims and for Trust Expenses. The Liquidating Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 7 Claims.

10.6.   Once appropriate Reserves have been established for potential Claims having a higher priority for receiving Distributions under this Plan, the Liquidating Trustee may make Distributions to holders of Allowed Class 7 Claims. The Liquidating Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Liquidating Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Liquidating Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Liquidating Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Liquidating Trust. Subject to any specific deadlines set forth herein, the Liquidating Trustee, shall determine, from time-to-time, in the exercise of the Liquidating Trustee's good faith business judgment: (i) the amount of Cash available for Distribution to Beneficiaries, (ii) the timing of any Distributions to Beneficiaries, and (iii) the amount and creation of any Reserves for Contested Claims or Trust Expenses.

10.7.   <u>Trust Expenses</u>. The Liquidating Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Liquidating Trust may retain, compensate and reimburse Trust Professionals retained by the Liquidating Trust without the necessity of further order of the Bankruptcy Court. However, the Liquidating Trustee shall be entitled, should the Liquidating Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

10.8.   <u>Powers and Duties of the Liquidating Trustee</u>. The Liquidating Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Liquidating Trust Agreement which shall be one of the Plan Documents. The Liquidating Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall

be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Liquidating Trust Agreement.

10.9.  <u>Exercise of Liquidating Trustee's Powers</u>. The Liquidating Trustee shall be entitled to exercise all powers pursuant to this Plan and the Liquidating Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Liquidating Trust Agreement or Confirmation Order.

10.10.  <u>Prosecution and Settlement of Estate Claims</u>. Upon the Effective Date, the Liquidating Trustee (a) shall automatically be substituted in place of the Debtor as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of adversary proceeding or contested matter pending before the Bankruptcy Court regarding such substitution. The Liquidating Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims, including without limitation, Avoidance Actions, Estate Defenses and Retained Causes of Action, for the benefit of the Liquidating Trust in the manner set forth in this Plan and the Liquidating Trust Agreement.

10.11.  <u>Exculpation of Liquidating Trustee</u>. The Liquidating Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Liquidating Trust. In the performance of its duties, the Liquidating Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Liquidating Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Liquidating Trust Agreement.

10.12.  <u>Indemnity</u>. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust in the manner and to the extent set forth in the Liquidating Trust Agreement.

10.13.  <u>Resignation of Liquidating Trustee</u>. The Liquidating Trustee may resign as provided in the Liquidating Trust Agreement.

10.14.  <u>Replacement of the Liquidating Trustee</u>. The Liquidating Trustee may be replaced in the manner and on the terms as set forth in the Liquidating Trust Agreement.

10.15.  <u>Reliance by Liquidating Trustee</u>. In the performance of the duties pursuant to this Plan, the Liquidating Trustee may rely upon any document or instrument which the Liquidating Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

10.16.  <u>Plan Injunction</u>. The Liquidating Trustee and Liquidating Trustee shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

10.17.  <u>Tax Treatment</u>. The Liquidating Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Liquidating Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash

Liquidating Trust Assets, and make timely Distributions to Beneficiaries of the Liquidating Trust, and shall not unduly prolong its duration.

10.18. <u>Transfer of Claims</u>. Holders of Allowed Claims against the Liquidating Trust shall not receive any certificate or other document to evidence their beneficial interest in the Liquidating Trust. The transfer of Claims after the Effective Date is subject to section 11.4 of this Plan.

10.19. <u>Relief from the Bankruptcy Court</u>. The Liquidating Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter or relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Liquidating Trustee deems necessary or appropriate to the performance of its duties on the administration of this Plan or the liquidation and distribution of the Trust Assets.

10.20. <u>Removal for Cause</u>. The Liquidating Trustee may be removed for cause shown in the manner and on the terms set forth in the Liquidating Trust Agreement.

## ARTICLE XI
## SOURCE OF DISTRIBUTIONS

11.1. <u>Source of Distributions</u>. All Distributions to be made under this Plan shall be made by the Liquidating Trustee in the manner provided in this Plan, Confirmation Order and the Liquidating Trust Agreement.

11.2. <u>Timing and Amount of Distributions</u>. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Trustee shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The Liquidating Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

11.3. <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

11.4. <u>Record Date for Distributions</u>. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1 and 7 Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Trustee shall have no obligation to recognize any transfer of any Class 1 and 7 Claims occurring after the Distribution Record Date, and the Liquidating Trustee shall instead be authorized and entitled to recognize and deal for all

purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Class 7 Claims after the Distribution Record Date, but shall have no obligation to do so.

11.5.   <u>Delivery of Distributions</u>.  All Distributions, deliveries and payments to the holders of any Allowed Class 1 and 7 Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Liquidating Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Trustee may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Liquidating Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

11.6.   <u>W-9 Forms</u>. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Liquidating Trustee prior to receiving any Distribution from the Liquidating Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Trustee within thirty (30) days of the Effective Date, the Liquidating Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtors or Liquidating Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Liquidating Trustee within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Liquidating Trust. In the event any holder of an Allowed Claim fails to provide the Liquidating Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Liquidating Trust.

11.7.   <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

11.8.   <u>Cure Period</u>. Except as otherwise set forth herein, the failure by the Liquidating Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any

payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Liquidating Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

11.9.  <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE XII
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

12.1.  <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Liquidating Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Liquidating Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Liquidating Trustee who shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate or Liquidating Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

12.2. Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the Estate Claims reflected in the attached **Exhibit C**. Reference is here made to **Exhibit C** which constitutes an integral part of this Plan. The provisions of this Article of the Plan are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtor is presently aware and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under this Plan to be transitioned to, and vested in the Liquidating Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

12.3.    <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Liquidating Trustee. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

12.4.    <u>Assertion of Estate Claims and Estate Defenses</u>. The Liquidating Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Liquidating Trust.

12.5.    <u>Estimate of Potential Recovery</u>. Currently, the Debtor is unable to estimate the size of any recovery from such possible litigation.  The Liquidating Trustee is authorized under the Plan, in its sole discretion, to litigate to final judgment, prosecute appeals as are necessary and enter into such settlement agreements as are deemed appropriate with respect to any and all suits initiated as provided herein.

12.6.    <u>Right to File Claim</u>. Persons subject to a successful Avoidance Action may file a Claim, as appropriate, within such time as is established by the Bankruptcy Court.

## ARTICLE XIII
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

13.1.    <u>Claims Listed in Schedules as Disputed</u>. Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Liquidating Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

13.2.    <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Liquidating Trustee shall have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

(a)    From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by Reorganized Debtors; and

(b)    From and after the Effective Date, Liquidating Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

13.3. <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Liquidating Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that the Liquidating Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Liquidating Trustee. Nothing contained herein shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

13.4. <u>Response to Claim Objection</u>. If Liquidating Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

13.5. <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

13.6. <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release or impair Reorganized Debtor's right to object to any Claim.

13.7. <u>Offsets and Defenses</u>. The Liquidating Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Liquidating Trustee against any Claim asserted against the Estate or the Liquidating Trustee shall constitute "core" proceeding.

13.8. <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that Debtor was

authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XIV
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

14.1.   <u>Conditions to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to Debtor; (b) the necessary Plan Documents, if any, have been executed and delivered, and (c) all other conditions specified by Debtor have been satisfied.

14.2.   <u>Notice of the Effective Date</u>. Promptly upon the occurrence of the Effective Date, the Liquidating Trustee shall cause to be filed with the Court and served on all Creditors and parties- in-interests, a notice of the Effective Date.

## ARTICLE XV
## EFFECT OF THE CONFIRMATION OF THE PLAN

15.1.   <u>Compromise and Settlement</u>. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against Debtor or the Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with Debtor or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of Debtor, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for, and in complete satisfaction and release of, all Claims of any nature whatsoever against Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against Debtor and its affiliates, successors, assigns, the Estate or the Assets or Liquidating Trustee or the Liquidation Trustee any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

15.2.   <u>Discharge</u>. This Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code. However, the Plan Injunction shall apply to all holders of Claims and Interests arising or accruing prior to the Effective Date.

15.3. <u>PLAN INJUNCTION</u>. THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST DEBTOR, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST DEBTOR, REORGANIZED DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM AGAINST THE ESTATE, DEBTOR OR REORGANIZED DEBTOR; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST DEBTOR, OR REORGANIZED DEBTOR, OR (iii) TAKING ANY ACTION IN RELATION TO DEBTOR, THE ESTATE, OR REORGANIZED DEBTOR, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

15.4.   Notwithstanding anything to the contrary in the Plan or Trust Agreement: (a) third party professionals employed by the Liquidating Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Liquidating Trustee; and (b) any third party professionals employed by the Liquidating Trustee shall only be entitled to be indemnified by the Liquidating Trust to the extent provided by applicable law.

15.5.   Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction): (a) releases any Person other than the Liquidating Trustee, Liquidating Trust, Trust Assets, Debtor, or the Estate (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties. Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the

avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

15.6. <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, The Liquidating Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant be entitled to setoff any Claim against any Claim, right, or Estate Claim of Debtor without the consent of the Liquidating Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

15.7. <u>Recoupment</u>. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, account receivable, or Estate Claim of Debtor or the Liquidating Trustee unless (a) such holder actually provides notice thereof in writing to the Liquidating Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim and a specific description of the basis for the recoupment, and (c) the Liquidating Trustee has provided a written response to such Claim, stating unequivocally that the Liquidating Trustee consents to the requested recoupment. The Liquidating Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Liquidating Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim shall be allowed.

15.8. <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Liquidating Trust.

15.9. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to Debtor, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction

## ARTICLE XVI
## <u>JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN</u>

16.1.   <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein or in the Confirmation Order;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to sections 1193 and 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a Final Decree closing this Bankruptcy Case; and

(p)     To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

16.2.   <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

16.3.   <u>Non-Material Modifications</u>. The Liquidating Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Liquidating Trustee may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor who has not accepted in writing the modification.

16.4.   <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of section 1193(a) of the Bankruptcy Code. This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of section 1193(b) or 1193(c), as applicable.

## ARTICLE XVII
## <u>MISCELLANEOUS PROVISIONS</u>

16.1.   <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, the Liquidating Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim.

Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require a re-balloting of the Plan.

16.2. <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. Neither Debtor nor its attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

16.3. <u>Waiver</u>. The Liquidating Trustee shall not be deemed to have waived any right, power or privilege unless the waiver is in writing and signed by The Liquidating Trustee. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by The Liquidating Trustee, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, powers or privilege.

16.4. <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to The Liquidating Trustee, notice shall be sent to The Liquidating Trustee and counsel of record for The Liquidating Trustee.

(c)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to The Liquidating Trustee of its new address in accordance with the terms of this section.

(d)    Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.5. <u>Compliance with All Applicable Laws</u>. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, The Liquidating Trustee shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

16.6. <u>Duties to Creditors</u>. No agent, representative, accountant, financial advisor, attorney of Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

16.7. <u>Due Authorization</u>. Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

16.8. <u>Authorization of Corporate Action</u>. All matters and actions provided for under this Plan involving the structure of Debtor or action to be taken by or required of the Debtor or the Liquidating Trustee shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable.

16.9. <u>Notice of Default</u>. Debtor shall have a grace period of five (5) business days for any payment or non-monetary obligation herein. Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Liquidating Trustee with copies to counsel of record for the Liquidating Trustee specifying the nature of the default. Upon receipt of the default notice, the Liquidating Trustee shall have twenty-four (24) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any and all available remedies, including the right to undertake foreclosure upon any collateral securing the obligation, if applicable.

16.10. <u>Binding Effect</u>. The Plan shall be binding upon and shall inure to the benefit of the Liquidating Trustee, the holders of the Claims or Liens and their respective successors-in- interest and assigns.

16.11. <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.12. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, The Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.13.  <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.14.  <u>Elections by the Liquidating Trustee</u>. Any right of election or choice granted to the Liquidating Trustee under this Plan may be exercised, at the Liquidating Trustee's election, separately as to each Claim, Creditor or Person.

16.15.  <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Liquidating Trustee shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.16.  <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.17.  <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.18.  <u>Privileged Communications; Work Product</u>.  For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Liquidating Trustee shall succeed to the interest of the Debtor and Estate, to the extent provided by applicable law.

16.19.  <u>No Interest</u>.  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

16.20.  <u>No Attorney's Fees</u>.  No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

16.21.  <u>Substantial Consummation</u>.  If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the Liquidating Trustee makes initial distributions pursuant to the terms of the Plan.

16.22.  <u>Notices and Distributions</u>.  On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of Debtor.  Any Claimant may designate another address for the purposes of this Section by providing the Liquidating Trustee written notice of such address, which notice will be effective upon receipt by the Liquidating Trustee.

16.23.  <u>Unclaimed Property</u>.  If any property distributed under the Plan by the Liquidating Trustee remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the Liquidating Trustee free and clear of any claims, rights or interests.  The Liquidating Trustee, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

16.24  <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponent with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

[SIGNATURES FOLLOW]

Dated: June 28, 2024.

Respectfully submitted,

IRONCLAD PRESSURE CONTROL, LLC

By: Ironclad Holding Group, LLC
      its Managing Member


By:   */s/ Bailee Fernandez*     
       Bailee Fernandez, President


Presented by:

ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone – 817.347.5260
http://www.romclaw.com


By:    */s/ Joseph F. Postnikoff*    
     Joseph F. Postnikoff
     State Bar No. 16168320
     Email: jpostnikoff@romclaw.com

COUNSEL FOR DEBTOR AND DEBTOR
IN POSSESSION

# EXHIBIT A

# LIQUIDATION ANALYSIS

# Liquidation Analysis
# Ironclad Pressure Control, LLC[1]

| Description | Chapter 7 Value | Chapter 11 Value |
|---|---|---|
| **REAL PROPERTY** | | |
| Leasehold Interest in Headquarters Facility[2] | $ 0.00 | $ 0.00 |
| Fee Simple Title 5616 E CR 95, Midland, Texas[3] | 0.00 | 0.00 |
| **TOTAL EQUITY IN REAL PROPERTY** | **$ 0.00** | **$ 0.00** |
| **PERSONAL PROPERTY[4]** | | |
| Cash on Deposit in DIP Accounts[5] | $ 11,309.08 | $ 11,309.08 |
| Cash on Deposit in DIP Accounts for 2024 Property Taxes[6] | $ 27,558.12 | $ 27,558.12 |
| Blackbrush Investments LLC (Lease Security Deposit)[7] | 0.00 | 0.00 |
| KC Light Towers, LLC (Partial prepayment for equipment)[8] | 0.00 | 0.00 |
| Accounts Receivable[9] | $ 102,992.45 | $ 102,992.45 |
| Inventory and Supplies | $ 35,000.00 | $ 35,000.00 |
| Office Furniture | $ 10,000.00 | $ 10,000.00 |
| Office/Computer Equipment | $ 1,500.00 | $ 1,500.00 |

---

[1] Values estimated as of August 8, 2024, unless otherwise indicated.

[2] Commercial-Triple Net Lease Between Ironclad Pressure Control LLC and Blackbrush Investments, LLC dated April 24, 2023.

[3] Property foreclosed by Kingdom Trinity, LLC pursuant to Agreed Order Granting Motion for Relief from the Automatic Stay and Request for Adequate Protection entered March 22, 204 [Docket No. 145].

[4] Liens against personal property were asserted by FundThrough USA, Inc. and Blackbrush Investments, LLC. In view of receipt of payment of $370,000 during the bankruptcy proceeding, FundThrough USA, Inc. has withdrawn its proof of claim. The lien of Blackbrush Investments, LLC was perfected within the 90-days immediately preceding the Petition Date and is believed to be an avoidable preference.

[5] As of June 28, 2024.

[6] As of June 28, 2024.

[7] Collateral for Blackbrush Investments, LLC Commercial-Triple Net Lease.

[8] Partial prepayment was refunded and used in operations pursuant to cash collateral order.

[9] As of June 28, 2024.

| Description | Chapter 7 Value | Chapter 11 Value |
|---|---|---|
| Rolling Stock (5-2022 Dodge Ram 2500 and 1-2023 Dodge Ram 2500)[10] | 0.00 | 0.00 |
| 2023 PJ F81 Trailer | $ 7,000.00 | $ 7,000.00 |
| Business Equipment[11] | $ 1,500,000.00 | $1,500,000.00 |
| Intellectual Property (Domain Name and Customer Lists) | $ 1,000.00 | $ 1,000.00 |
| Claims Against C&W International Fabricators | | |
| Preference/Fraudulent Conveyance Adversary | $ 208,705.00 | 208,705.00 |
| Counter and Counter Claims for Breach of Contract Tortious Interference | Undetermined | Undetermined |
| Potential Chapter 5 Causes of Action | Undetermined | Undetermined |
| **TOTAL EQUITY IN PERSONAL PROPERTY** | **$ 1,905,064.65** | **$ 1,905,064.65** |
| **TOTAL EQUITY IN REAL AND PERSONAL PROPERTY[12]** | **$ 1,905,064.65** | **$ 1,905,064.65** |

---

[10] Secured claim asserted against each vehicle exceeds the current FMV.

[11] This is an estimate pending appraisal by Rosen Systems and will be revised after appraisal is received.

[12] Does not include estimate for pre-petition claims and causes of action or chapter 5 causes of action.

| Description | Chapter 7 Value | Chapter 11 Value |
|---|---|---|
| **Less:** | | |
| 2024 Ector County Property Taxes | $ 82,000.00 | $ 82,000.00 |
| Chapter 7[13] Trustee Fees and Expenses | $ 200,000.00 | |
| Chapter 11[14] Plan Trustee Fees and Expenses | | $ 200,000.00 |
| Chapter 11 Administrative Expenses[15] | $ 200,000.00 | $ 200,000.00 |
| Chapter 11 Administrative Expenses[16] | Undetermined | Undetermined |
| Non-Tax Priority Claims (Pre-petition Wages) | $ 39,542.55 | $ 39,542.55 |
| Priority Tax Claims[17] | $ 73,516.61 | $ 73,516.61 |
| **TOTAL DISTRIBUTIONS** | $ **$ 595,059.16** | $ **$ 595,059.16** |

**BALANCE AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS $1,310,005.49          $1,310,005.49**

---

[13] Ch 7 Trustee Fees and Expenses and Ch 11 Fees and Expenses are estimated to be equal.

[14] Ch 7 Trustee Fees and Expenses and Ch 11 Fees and Expenses are estimated to be equal.

[15] Chapter 11 Administrative Expenses are estimated as follows:

| | | |
|---|---|---|
| Rochelle McCullough, LLP | $ | 125,000 |
| Lain Faulkner & Co., P.C. | $ | 75,000 |
| TOTAL: | $ | 200,000 |

[16] Ordinary course claims.

[17] Priority Tax Claims are estimated as follows:

| | | |
|---|---|---|
| Texas Franchise Tax | $ | 17,000.00 |
| Texas State Comptroller (Claim No. 16): | $ | 16, 516.61 |
| Internal Revenue Service | $ | 40,000.00 |
| TOTAL: | $ | 73,516.61 |

# EXHIBIT B

# LIQUIDATING TRUST AGREEMENT

**EXHIBIT "B"**
**To**
**Ironclad Pressure Control, LLC's**
**First Amended Plan Under Subchapter V of Chapter 11**

**LIQUIDATING TRUST AGREEMENT**

This Liquidating Trust Agreement (the "**Liquidating Trust Agreement**") is made this ____day of _____, 2024, by and among Ironclad Pressure Control, LLC ("**Ironclad**" or the "**Debtor**") and _____, as trustee for the _____ Liquidating Trust (the "**Liquidating Trustee**").

**RECITALS**

**WHEREAS**, on December 8, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas (the "**Bankruptcy Court**"); and

**WHEREAS**, the Debtor filed their *Chapter 11 Plan for Ironclad Pressure Control, LLC* dated _____ on _____ (as the same may be further modified, amended, and/or supplemented from time to time, the "**Plan**");[1] and

**WHEREAS**, on _____, 2024, the Bankruptcy Court entered an order confirming the Plan (the "**Plan Confirmation Order**"); and

**WHEREAS**, the Plan's Effective Date occurred on _____, 2024; and

**WHEREAS**, the Plan contemplates, on the Effective Date, (a) the creation of a liquidating trust (the "**Liquidating Trust**") and the creation of the beneficial interests in the Liquidating Trust of holders of Allowed Claims entitled to Distributions as described in the Plan (collectively, the "**Beneficiaries**" and each, individually, a "**Beneficiary**"), and (b) the Liquidating Trust will be vested with the Cash Proceeds from the sale of substantially all the Debtor's Assets to the Purchaser and all Remaining Assets held by the Estate as of the Effective Date, and shall specifically include without limitation: (i) all Estate Cash, including the Cash Proceeds (ii) all Estate Accounts Receivable, (iii) all Estate Claims, (iv) all Estate Defenses, (v) all rights under Estate Insurance, (vi) any Executory Contracts assumed by the Estate, and (vii) all of the Estate's rights under any Estate Contract (all such Assets vesting in the Liquidating Trust are collectively referred to as the "**Liquidating Trust Assets**"), to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

**WHEREAS**, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4, the Liquidating Trust shall be created for the primary purpose of liquidating the Liquidating Trust Assets and for making Distributions in accordance with the Plan and this Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust; and

**WHEREAS**, the Liquidating Trust is intended to qualify as a grantor trust for U.S. federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Beneficiaries to be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Beneficiaries will be treated as the grantors and owners thereof; and

**WHEREAS**, the Liquidating Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Liquidating Trust Agreement.

**NOW, THEREFOR**, in accordance with the Plan, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1     <u>Creation and Purpose of the Liquidating Trust</u>.  The Debtor and the Liquidating Trustee hereby create the Liquidating Trust for the primary purpose of liquidating the Liquidating Trust Assets and making Distributions in accordance with the Plan and this Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trust will not be deemed a successor-in-interest of the Estate for any purpose other than as specifically set forth in the Plan and this Liquidating Trust Agreement.

1.2     <u>Declaration of Trust</u>.  In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtor and the Liquidating Trustee have executed this Liquidating Trust Agreement and, effective on the Effective Date, hereby irrevocably transfer to the Liquidating Trust all of the right, title, and interests of the Debtor in and to the Liquidating Trust Assets, to have and to hold unto the Liquidating Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Plan Confirmation Order, for the benefit of the Beneficiaries (to the extent of their respective legal entitlements) and their successors and assigns as provided for in this Liquidating Trust Agreement and in the Plan and Plan Confirmation Order.

1.3     <u>Vesting of Estate Assets</u>.  On the Effective Date, pursuant to the terms of the Plan and Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, all Liquidating Trust Assets shall be vested in the Liquidating Trust, which also shall be authorized to obtain, liquidate, and collect all of the Liquidating Trust Assets not in its possession and pursue all of the Estate Claims that constitute Liquidating Trust Assets under the Plan; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the

Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust. In addition, on the Effective Date, the Liquidating Trust shall (a) take possession of all books, records, and files of the Debtor and the Estate and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with this Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial. Subject to the provisions of the Plan, all Liquidating Trust Assets shall be delivered to the Liquidating Trust free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Plan Confirmation Order.

1.4 <u>Acceptance by Liquidating Trustee</u>. The Liquidating Trustee hereby accepts the trust imposed under this Liquidating Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order. In connection with and in furtherance of the purposes of the Liquidating Trust, the Liquidating Trustee hereby accepts the transfer of the Liquidating Trust Assets.

1.5 <u>Name of the Liquidating Trust</u>. The Liquidating Trust established hereby shall be known as the "**Ironclad Liquidating Trust**" (the "**Liquidating Trust**").

## ARTICLE II
## THE LIQUIDATING TRUSTEE

2.1 <u>Appointment</u>. In accordance with the Plan, _____, has been selected as the Liquidating Trustee for the Liquidating Trust. The Liquidating Trustee's appointment shall be effective as of the Effective Date and continue until the earlier of (a) the termination of the Liquidating Trust or (b) the Liquidating Trustee's resignation, death, or removal.

2.2 <u>General Powers</u>. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Liquidating Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Liquidating Trust under the Plan, the Plan Confirmation Order, this Liquidating Trust Agreement, and any other agreement entered into pursuant to or in connection with the Plan. Except as otherwise provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, the Liquidating Trustee may control and exercise authority over the Liquidating Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Liquidating Trust. No person dealing with the Liquidating Trust shall be obligated to inquire into the Liquidating Trustee's authority in connection with the acquisition, management, or disposition of Liquidating Trust Assets. Without limiting the foregoing, but subject to the Plan, the Plan Confirmation Order, and other provisions of this Liquidating Trust Agreement, the Liquidating Trustee shall be expressly authorized to, with respect to the Liquidating Trust and the Liquidating Trust Assets:

(a) Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all

3

actions that may be or could have been taken with respect to the Liquidating Trust Assets by any officer, partner, agent, representative, or other party acting in the name of the Debtor or the Estate with like effect as if duly authorized, exercised, and taken by action of such officer, partner, agent, representative, or other party under Sections 704 and 1106 of the Bankruptcy Code as the Debtor's representative appointed for such purpose pursuant to Section 1123(b)(3) of the Bankruptcy Code.

(b)     Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, take and exercise ownership and control over any existing Debtor in possession bank accounts, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(c)     Receive, manage, invest, supervise, and protect the Liquidating Trust Assets, subject to the limitations provided herein.

(d)     Hold legal title to any and all Liquidating Trust Assets.

(e)     Subject to the applicable provisions of the Plan, collect and liquidate all Liquidating Trust Assets pursuant to the Plan.

(f)     Review and, where appropriate, object to Claims and supervise and administer the resolution, settlement, and payment of all Claims and Distributions to the Beneficiaries in accordance with this Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order.

(g)     Subject to Section 3.2 of this Liquidating Trust Agreement and the applicable provisions of the Plan, investigate, prosecute, compromise, and settle all Estate Claims vested in the Liquidating Trust.

(h)     (i) Seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file any and all tax and information returns required with respect to the Debtor and the Liquidating Trust, (iii) make tax elections for and on behalf of the Debtor and the Liquidating Trust, and (iv) pay taxes or other obligations incurred by the Liquidating Trust.

(i)     Calculate and implement Distributions to applicable Beneficiaries as provided for, or contemplated by, the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement.

(j)     Withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the Liquidating Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision of either.

(k)     Enter into any agreement or execute any document required by or consistent with the Plan, the Plan Confirmation Order, or this Liquidating Trust Agreement and perform all obligations thereunder.

(l)     Purchase and carry any insurance policies and pay any insurance premiums and costs that the Liquidating Trustee deems reasonably necessary or advisable.

(m)     Retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Liquidating Trust Assets.

(n)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Liquidating Trust Agreement.

(o)     Resolve issues involving Claims and Interests in accordance with the Plan, including the power to file, prosecute, settle or otherwise resolve objections Claims, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding.

(p)     Undertake all administrative functions of the Bankruptcy Case, including the payment of fees payable to the Office of the United States Trustee and the ultimate closing of the Bankruptcy Case.

(q)     Appear and participate in any proceeding before the Bankruptcy Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Liquidating Trust Agreement, the Plan, the Confirmation Order, Liquidating Trust, or the Liquidating Trust Assets; and

(r)     Take all other actions consistent with the provisions of the Plan that Liquidating Trustee deems reasonably necessary or desirable to administer the Plan.

2.3     <u>Limitations on the Liquidating Trustee</u>.  Notwithstanding anything under applicable law, this Liquidating Trust Agreement, or the Plan to the contrary, the Liquidating Trustee shall not do or undertake any of the following:

(a)     Take any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(b)     Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or other temporary liquid investments, such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any Internal Revenue Service ("**IRS**") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(c)     Receive or retain any operating assets of a going concern business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Plan Confirmation Order; provided, however, that in no event shall the Liquidating Trustee receive or retain any such asset or interest that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

5

2.4     Compensation of the Liquidating Trustee.  The Liquidating Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Liquidating Trustee in connection with the performance of his duties hereunder, and compensation in accordance with the market rates generally charged by the Trustee for his services.  The Liquidating Trustee's current billing rate for the services to be rendered is $_____ per hour.

2.5     Reimbursements.  The Liquidating Trustee, any agents or consultants employed pursuant to this Liquidating Trust Agreement, and any professionals or representatives retained by the Liquidating Trust shall be reimbursed from the Liquidating Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

2.6     Liquidating Trust Operating Expenses.  The Liquidating Trust Assets will be used to pay all liabilities, costs and expenses of the Liquidating Trust, including compensation then due and payable to the Liquidating Trustee, his agents, representatives, professionals and employees and all costs, expenses, and liabilities incurred by the Liquidating Trustee in connection with the performance of his duties.  The reasonable fees and expenses of the Liquidating Trustee and his counsel and agents will be paid out of the Liquidating Trust Assets, without need of Bankruptcy Court approval.

2.7     Investments.  The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

2.8     Replacement of the Liquidating Trustee.  The Liquidating Trustee shall be subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Liquidating Trust, after notice and a hearing, and for cause shown, including (a) the willful and continued refusal by the Liquidating Trustee to perform its duties under the Plan and this Liquidating Trust Agreement, and (b) gross negligence, willful misconduct, fraud, embezzlement, or theft.  The Liquidating Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor Liquidating Trustee.  In the event of the resignation or removal of the Liquidating Trustee, the successor Liquidating Trustee shall be appointed by the Bankruptcy Court, after notice and a hearing, upon request and based upon submissions from interested parties (including any Beneficiary).  Upon its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Liquidating Trustee relating to the Liquidating Trust shall be terminated; provided, however, that the original Liquidating Trustee's right to indemnification shall survive termination and is subject to the provisions of Article IV hereof.

2.9     Liquidating Trust Continuance.  The death, resignation, or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency created by the Liquidating Trustee pursuant to this Liquidating Trust Agreement or invalidate

any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of this Liquidating Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trustee and all its successors or assigns.

## ARTICLE III
## PROSECUTION AND RESOLUTION OF ESTATE CLAIMS

3.1     The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Claims.  In accordance with Sections 7.09 and 9.03 of the Plan, from and after the Effective Date, prosecution and settlement of all Estate Claims transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Estate Claims as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.  All Estate Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.  No Person may rely on the absence of a specific reference in the Plan to a cause of action against it as any indication that the Debtor or Liquidating Trustee will not pursue any and all available Estate Claims against such Person.  The Liquidating Trustee expressly reserves all Estate Claims, except for any Estate Claims against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of confirmation or consummation of the Plan.

3.2     Settlement of Estate Claims.  The Liquidating Trustee, and in accordance with the provisions of the Plan, shall have standing, authority, power, and right to assert, prosecute, and/or settle the Estate Claims, including making a claim under the Estate Insurance, based upon its powers as a bankruptcy-appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.  Without limiting the generality of any of the foregoing, and to avoid any doubt, the Liquidating Trustee shall have standing of an examiner, trustee, receive, liquidator or rehabilitator of the Debtor and shall have exclusive standing and authority to prosecute, settle or compromise any Claims made under any Estate Insurance.

3.3     Preservation of Right to Conduct Investigations.  Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

3.4     Privilege.  Solely with respect to carrying out the Liquidating Trust's functions, the attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtor or the Committee, as applicable, or attaching to documents or communications of the Debtor or the Committee, as applicable, shall be transferred to the Liquidating Trust.  The Liquidating Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Liquidating Trust.

## ARTICLE IV
## LIABILITY OF LIQUIDATING TRUSTEE

4.1     Standard of Care; Exculpation.  Neither the Liquidating Trustee nor any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Liquidating Trust to any Beneficiary of the Liquidating Trust, or any other person, for the acts or omissions of the Liquidating Trustee; provided, however, that the foregoing limitation shall not apply as to any particular person or entity as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Beneficiary that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such person or entity.  Every act done, power exercised, or obligation assumed by the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee pursuant to the provisions of this Liquidating Trust Agreement or the Plan shall be held to be done, exercised, or assumed, as the case may be, by the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee acting for and on behalf of the Liquidating Trust and not otherwise; provided however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions outside of the scope of the authority provided by the Liquidating Trust.  Except as provided in the proviso of the first sentence of this Section 4.1 with respect to any Beneficiary, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall have recourse only to the Liquidating Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships and the Liquidating Trust, the Liquidating Trustee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall not be individually liable therefor.

4.2     Indemnification.

(a)     Except as otherwise set forth in the Plan or Plan Confirmation Order, the Liquidating Trustee, and any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**"), shall be defended, held harmless, and indemnified from time to time by the Liquidating Trust against any and all losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; provided, however, such indemnity shall not apply to any such loss, liability, expense, damages, tax, suit, or claim to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing of such person or entity.  Satisfaction of any obligation of the Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the Liquidating Trust Assets, may be

8

advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Liquidating Trust Assets.

(b)    The Liquidating Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding, or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidating Trust Agreement or the duties, acts, or omissions of the Liquidating Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Liquidating Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Liquidating Trust Agreement.

4.3    No Liability for Acts of Successor/Predecessor Liquidating Trustees.  Upon the appointment of a successor Liquidating Trustee and the delivery of the Liquidating Trust Assets to the successor Liquidating Trustee, the predecessor Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Liquidating Trustee shall have no further liability or responsibility with respect thereto.  A successor Liquidating Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility.  A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidating Trustee for any events or occurrences subsequent to the cessation of its role as Liquidating Trustee.

4.4    Reliance by Liquidating Trustee on Documents or Advice of Counsel.  Except as otherwise provided in this Liquidating Trust Agreement, the Liquidating Trustee and any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been presented by an authorized party.  The Liquidating Trustee shall not be liable for any action taken or suffered by the Liquidating Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidating Trustee in accordance with this Liquidating Trust Agreement.

4.5    Insurance.  All of the Debtor's rights and their Estate's rights under any Insurance Policy to which the Debtor and/or the Debtor's Estate may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies.  The Liquidating Trust may purchase, using Liquidating Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its

fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Liquidating Trust Agreement.

## ARTICLE V
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE LIQUIDATING TRUST

5.1     Register of Beneficiaries.  The Liquidating Trust shall maintain at all times a register of the names, Distribution addresses, amounts of Allowed Claims and the ratable interests in the Liquidating Trust of the Beneficiaries (the "**Register**").  The Liquidating Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidating Trustee from time to time.

5.2     Books and Records.  On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.  The Liquidating Trust shall maintain in respect of the Liquidating Trust and the Beneficiaries books and records relating to the Liquidating Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

5.3     Quarterly Reporting Obligations to Bankruptcy Court and Payment of Statutory Fees.  In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidating Trust has been released or paid out in accordance with the Plan and this Liquidating Trust Agreement, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Liquidating Trustee under the Plan and hereunder through each applicable reporting period.

5.4     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.  The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Liquidating Trust reports shall be the responsibility of the Liquidating Trustee.  Statutory Fees shall be paid as such fees may thereafter accrue and be due and payable in accordance with the applicable schedule for payment of such fees.  Any Statutory Fees relating to the period of time prior to the Effective Date shall be paid by the Debtor or Liquidating Trustee, as applicable.  Statutory Fees relating to any period of time after the Effective Date shall be paid by the Liquidating Trustee from funds in the Liquidating Trust Assets.  Such obligation to pay Statutory Fees shall continue until such time as the Bankruptcy Case is closed, dismissed, or converted.

5.5     Filing of Tax Returns.  After the Effective Date, the Liquidating Trust shall be responsible for filing all federal, state, local, and foreign tax returns for the Debtor and the Liquidating Trust.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

6.1     <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting.

6.2     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

6.3     <u>Transfers of Beneficial Interest</u>s.  Beneficial interests in the Liquidating Trust shall be nontransferable except upon death of the interest holder or by operation of law.  The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Effective Date.  Only those holders of Claims and Interests of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

6.4     <u>Absolute Owners</u>.  The Liquidating Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

6.5     <u>Change of Address</u>.  A Beneficiary may, after the Effective Date, select an alternative Distribution address by notifying the Liquidating Trustee in writing of such alternative Distribution address.  Absent such notice, the Liquidating Trustee shall not recognize any such change of Distribution address.  Such notification shall be effective only upon receipt by the Liquidating Trustee.

6.6     <u>Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary</u>.  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust during the term of the Liquidating Trust nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Liquidating Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Liquidating Trust Agreement or in the Liquidating Trust.

6.7     <u>Standing</u>.  Except as expressly provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Liquidating Trustee to the extent provided in this Liquidating Trust Agreement) upon or with respect to the Liquidating Trust Assets.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

7.1     Incorporation of Plan Provisions.  As of the Effective Date, the Liquidating Trust shall assume responsibility for all Claims matters established by the Plan and shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

7.2     Objections to Claims.  The Liquidating Trustee shall be entitled to file objections to all Claims that are otherwise not deemed Allowed Claims under the Plan and Plan Confirmation Order.  Any objections to Claims shall be served and filed on or before the later of (i) ninety (90) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.  If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtor but (b) was not scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier by a Final Order of the Bankruptcy Court.

7.3     Estimation of Claims.  The Liquidating Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

## ARTICLE VIII
## DISTRIBUTIONS

8.1     Distributions to Beneficiaries from Liquidating Trust Assets.  All payments to be made by the Liquidating Trust to any Beneficiary shall be made only in accordance with the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement and from the Liquidating Trust Assets (or from the income and proceeds realized from the Liquidating Trust Assets), and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or income and proceeds realized from the Liquidating Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement.  Any Distributions to be made by or on behalf of the Debtor or the Liquidating Trustee, as applicable, pursuant to the Plan shall be made by checks drawn on

12

accounts maintained by the Liquidating Trustee or an electronic wire transfer, at the option of the Liquidating Trustee.

8.2     Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Trustee shall, in the exercise of his or her good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Liquidating Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.3     Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4     Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1 and 7 Claims will be closed, and there shall be no further changes in the holder of record of any Claim.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Trustee shall have no obligation to recognize any transfer of any Class 1 and 7 Claims occurring after the Distribution Record Date, and the Liquidating Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.5     Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Class 1 and 7 Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Liquidating Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Trustee may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Liquidating Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.6    W-9 Forms.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Liquidating Trustee prior to receiving any Distribution from the Liquidating Trust.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Trustee within thirty (30) days of the Effective Date, the Liquidating Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Trustee.  The request shall be in writing and shall be delivered to the last address known to the Debtor or Liquidating Trustee, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Liquidating Trustee within thirty (30) shall result in a waiver of any right or rights to a Distribution from the Liquidating Trust.  In the event any holder of an Allowed Claim fails to provide the Liquidating Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Liquidating Trust.

8.7    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Trustee may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.8    Cure Period.  Except as otherwise set forth herein, the failure by the Liquidating Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Liquidating Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.9    Distributions after Substantial Consummation.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE IX
## TAXES

9.1    Income Tax Status.  Consistent with Revenue Procedure 94-45, 1994-2 C. B. 684, the Liquidating Trust shall be treated as a liquidating trust pursuant to Treasury Regulation

Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

9.2     Tax Returns. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

9.3     Withholding of Taxes and Reporting Related to Liquidating Trust Operations. The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

9.4     Valuations. As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Debtor or of the Liquidating Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on

behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

9.5     Payment of Taxes.  The Liquidating Trust shall be responsible for payments of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

**ARTICLE X**
**TERMINATION OF LIQUIDATING TRUST**

10.1     Termination of Liquidating Trust.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan and this Liquidating Trust Agreement have been made, and (v) the Bankruptcy Case has been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

10.2     Events Upon End of Term Termination.  At the conclusion of the term of the Liquidating Trust, the Liquidating Trust shall distribute the remaining Liquidating Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement, provided, however, that the Liquidating Trust shall not be obligated to make Distributions to a Class of Claims if the amount of the available cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

10.3     Winding Up and Discharge of the Liquidating Trustee.  For the purposes of winding up the affairs of the Liquidating Trust at the conclusion of its term, the Liquidating Trustee shall continue to act as Liquidating Trustee until its duties under this Liquidating Trust Agreement have been fully discharged or its role as Liquidating Trustee is otherwise terminated under this Liquidating Trust Agreement and the Plan.  Upon a motion by the Liquidating Trustee, the Bankruptcy Court may enter an order relieving the Liquidating Trustee, its agents, and employees of any further duties and discharging the Liquidating Trustee.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

11.1     Amendments.  The Liquidating Trustee may modify, supplement, or amend this Liquidating Trust Agreement without Bankruptcy Court approval (a) to clarify any ambiguity or inconsistency, or render this Liquidating Trust Agreement in compliance with its stated tax purposes, or (b) in any other way that is not inconsistent with the Plan or the Plan Confirmation Order, only if such modification, supplement, or amendment does not materially and adversely

16

affect the interests, rights, treatment, or Distributions of or to any Beneficiaries.  All other modifications, supplements, and amendments shall require prior approval of the Bankruptcy Court.

11.2    Waiver.  No failure by the Liquidating Trust or the Liquidating Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.3    Cumulative Rights and Remedies.  The rights and remedies provided in this Liquidating Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

11.4    No Bond Required.  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond, surety, or other security in any jurisdiction.

11.5    Irrevocability.  This Liquidating Trust Agreement and the Liquidating Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Liquidating Trust Agreement.

11.6    Relationship to the Plan.  The principal purpose of this Liquidating Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidating Trust Agreement incorporates and is subject to the provisions of the Plan and the Plan Confirmation Order.  In the event that any provision of this Liquidating Trust Agreement is found to be inconsistent with a provision of the Plan or the Plan Confirmation Order, the provisions of the Plan or the Plan Confirmation Order, as applicable, shall control.

11.7    Division of Liquidating Trust.  Under no circumstances shall the Liquidating Trustee have the right or power to divide the Liquidating Trust unless authorized to do so by the Bankruptcy Court.

11.8    Applicable Law.  The Liquidating Trust is made in the State of Texas, and the Liquidating Trust and this Liquidating Trust Agreement, and the rights and obligations of the Liquidating Trustee, are to be governed by and construed and administered according to the laws of the State of Texas; provided, however, that, except as expressly provided in this Liquidating Trust Agreement, there shall not be applicable to the Liquidating Trust, the Liquidating Trustee, or this Liquidating Trust Agreement any provisions of the laws (statutory or common) of the State of Texas pertaining to trusts that relate to or regulate (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, or (g) the establishment of fiduciary or other standards or responsibilities or

limitations on the acts or powers of trustees that are inconsistent with the limitations or liabilities or authorities and powers of the Liquidating Trustee set forth or referenced in this Liquidating Trust Agreement.

11.9    Retention of Jurisdiction.  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Liquidating Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee, in its capacity as such.  Each party to this Liquidating Trust Agreement and each Beneficiary of the Liquidating Trust hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement or of any other agreement or document delivered in connection with this Liquidating Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Estate Claims in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Estate Claim shall be at the discretion of the Liquidating Trust, consistent with applicable law.

11.10   Severability.  In the event that any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Liquidating Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidating Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.11   Limitation of Benefits.  Except as otherwise specifically provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidating Trust Agreement.

11.12   Notices.  All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

If to the Liquidating Trustee:

_____

_____

_____

_____

_____

To the name and Distribution address set forth in the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

11.13  <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidating Trust Agreement, and to consummate the transactions contemplated hereby.

11.14  <u>Integration</u>.  This Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order constitute the entire agreement with, by, and among the parties hereto and thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Plan Confirmation Order.  This Liquidating Trust Agreement, together with the Plan and the Plan Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in this Liquidating Trust Agreement, the Plan, or Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidating Trust Agreement.

11.15  <u>Interpretation</u>.  The enumeration and Section headings contained in this Liquidating Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidating Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Liquidating Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Liquidating Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.  Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the Liquidating Trust" and any reference to the Liquidating Trust shall be deemed to include a reference to the "**Liquidating Trustee**" except for the references in which the context otherwise requires.

11.16   Counterparts.  This Liquidating Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[*Signature Pages Follow*]

       IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives, all as of the date first above written.

 

**IRONCLAD PRESSURE CONTROL, LLC**

By: _____

    Name: Bailee Fernandez

    Title: President

 

_____, **as Liquidating Trustee**

By:_____

    Name: _____, _____ in his capacity

    as Liquidating Trustee of the Liquidating Trust

# EXHIBIT C

# RETAINED ESTATE CLAIMS

# EXHIBIT C
## to
## First Amended Plan of Ironclad Pressure Control, LLC

      1.    <u>Defined Terms</u>.  This **Exhibit C** constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this **Exhibit C**.  The rules of construction set forth in Plan shall likewise apply to this **Exhibit C**.

      2.    <u>Estate Claims Reserved</u>.  All Estate Claims are hereby retained and reserved by the Debtor and Estate, and shall all be transferred to, and vested in, the Liquidating Trustee pursuant to this Plan, and shall include without limitation the Estate Claims described below.  In reserving and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve and preserve any and all Estate Claims against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation of Estate Claims against any Person, and the term "Estate Claims," shall encompass all Estate Claims against any such Person, including without limitation all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, alter ego, self-dealing, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act.

      3.    <u>Preference Claims</u>.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved and retained for the benefit of the Estate or Liquidating Trust for any payment made to any Person by the Debtor within ninety (90) days of the Petition Date (which was December 8, 2023) or made by the Debtor to any insider within one (1) year of the Petition Date.  A list of Persons who are believed to have received payments from the Debtor aggregating in excess of $5,000 during the 90-day preference period is attached to this **Exhibit C** as **Schedule 1**.  The Debtor and the Estate reserve for the benefit of the Liquidating Trust all potential Claims arising out of or relating to the transfers reflected in **Schedule 1** as well as to any insider of the Debtor within one (1) year of the Petition Date, including all Avoidance Actions pursuant to sections 547 of the Bankruptcy Code.  All rights and remedies are also reserved and retained with respect to the transfers reflected in **Schedule 1** as well as to any insider of the Debtor within one (1) year of the Petition Date, pursuant to section 550 of the Bankruptcy Code.

      **Schedule 1** reflects transfers made by the Debtor during the 90 days prior to the Petition Date. While the Debtor and Estate reserve all Avoidance Actions relating to the transfers reflected in **Schedule 1**, the Debtor recognize that many of these transfers will not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code

Exhibit C to Plan of Liquidation for Ironclad Pressure Control, LLC

as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule 1** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, but only that the Debtor and the Estate reserve all rights (including Avoidance Actions) as to that payment.

4.      Claims Against Officers, Managers and Members.  All Estate Claims are hereby reserved and preserved for the benefit of the Estate and Liquidating Trust against all present and past officers, directors, employees, members and managers of the Debtor, including all such Estate Causes of Action based on breach of fiduciary duty, alter ego, self-dealing, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all Estate Claims as against any present or former officer, director, employee, member or manager which may be covered by, or insured under, any applicable policy of officers' and directors' liability insurance.

5.      Counterclaims.  All Estate Claims are retained and preserved for the benefit of the Estate and Liquidating Trust both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Liquidating Trust.

6.      Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby retained and preserved for the benefit of the Estate and the Liquidating Trust.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against any Person.

7.      Avoidance Actions.  All Avoidance Actions are hereby reserved and retained as to all Persons.  The reservation of such Avoidance Actions shall include the reservation and retention for the benefit of the Estate and Liquidating Trust of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

8.      Estate Defenses.  All Estate Defenses are hereby reserved and retained by the Debtor and Estate in favor of the Liquidating Trust as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved and retained for the benefit of the Estate of the Liquidating Trust, including without limitation accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or response and waiver.

9.      Equitable Subordination.  All rights or remedies for Equitable Subordination are hereby reserved and retained by the Debtor and the Estate in favor of the Liquidating Trust against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.

10.     Pending Litigation. All rights, Claims and causes of action, currently pled and which are not otherwise barred by applicable statute of limitations, are hereby reserved and retained by the Debtor and the Estate in favor of the Liquidating Trust with

Exhibit C to Plan of Liquidation for Ironclad Pressure Control, LLC

respect to litigation currently pending as follows, as well as individuals acting for or on behalf of C&W International Fabricators, LLC, including without limitation, Chris Carroll:

Adversary Proceeding No. 24-07002-smr; styled *Ironclad Pressure Control, LLC vs. C&W International Fabricators, LLC* pending in the United States Bankruptcy Court for the Western District of Texas Midland Division; and

Cause No. C-23-12-1320-CV removed to the Bankruptcy Court under Adversary Proceeding No. 24-07003-smr, in the United States Bankruptcy court for the Western District of Texas Midland Division styled *C&W International Fabricators, LLC v. Ironclad Pressure Control, LLC, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez and Albert Dehoyos.*

Exhibit C to Plan of Liquidation for Ironclad Pressure Control, LLC

SCHEDULE 1

Ironclad Pressure Control, LLC

Cash Transactions

90 Days Pre-Petition

September 9, 2023 through December 8, 2023

| Date | Payee | Amount |
|---|---|---|
| October 13, 2023 | C&W International Fabricators, LLC | $ 208,705.00 |
| September 22, 2023 & November 13,2023 | ServicePlus LLC | $ 102,334.30 |
| September 9, 2023 | Standifier Service Company, LLC | $ 75,932.99 |
| September 9, 2023 | Torqmaster | $ 98,357.50 |
| September 9, 2023 | TXP Capital | $ 31,255.00 |
| September 9,2023 - December 8, 2023 | Kingdom Trinity, LLC | $ 35,233.60 |
| September 9,2023 - December 8, 2023 | Quality Carbide Inc. | $ 16,129.25 |
| September 9,2023 - December 8, 2023 | BankDirect Capital Finance | $ 15,938.96 |
| September 9,2023 - December 8, 2023 | Barco Rent A Truck | $ 28,044.63 |
| October 11, 2023 | Elda Molinar | $ 50,000.00 |
| September 9,2023 - December 8, 2023 | Blackbrush Investments LLC | $ 139,485.96 |
| September 9,2023 - December 8, 2023 | Single Line Technologies | $ 30,000.00 |
| September 9,2023 - December 8, 2023 | First Insurance Funding | $ 19,977.89 |
| September 9,2023 - December 8, 2023 | B&J Wholesale LLC | $ 21,008.62 |
| September 9,2023 - December 8, 2023 | SCF Industrial Technology Inc. | $ 20,190.00 |
| September 9,2023 - December 8, 2023 | Mike McGraw & Partners LLC | $ 40,600.00 |
| September 9,2023 - December 8, 2023 | 4 Holiday Investments, LLC | $ 9,609.88 |
| September 9,2023 - December 8, 2023 | Salt and Light Energy Equipment LLC | $ 16,573.40 |
| September 9,2023 - December 8, 2023 | Chrysler Capital | $ 9,179.01 |
| September 9,2023 - December 8, 2023 | Stellantis Financial Services, Inc. | $ 13,632.03 |
| September 9,2023 - December 8, 2023 | Coast | $ 32,858.34 |

# EXHIBIT D

# PLAN PROJECTIONS

# Exhibit D
# Plan Projections

| Liquidating Trust Projected Receipts | |
|---|---:|
| Estimated Equipment Auction Sale Proceeds | $1,500,000 |
| Less 2024 Ector County Property Taxes | 82,000 |
| Total Net Equipment Auction Sale Proceeds | 1,418,000 |
| | |
| Cash & Accounts Receivable | Undetermined |
| C&W Preference Litigation | 208,000 |
| Causes of Action Against C&W | Undetermined |
| Preference Claims | Undetermined |
| Chapter 5 Causes of Action (Including Insiders) | Undetermined |
| | |
| **Liquidating Trust Projected Distributions** | |
| Trust Operating Expenses | Undetermined |
| Chapter 11 Administrative Expenses (Professionals) | 200,000 |
| Chapter 11 Administrative Expenses (Ordinary Course) | Undetermined |
| Non-Tax Priority Claims (Wage Claims) | 40,000 |
| Priority Tax Claims | 75,000 |
| | |
| **Balance to Unsecured Creditors** | **Undetermined** |

Estimated claims of Class 7 General Unsecured Creditors could range as high as $5.7 million.