# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IRONCLAD PRESSURE CONTROL, LLC | § | Case No. 23-70156 |
| | § | In Proceedings Under Chapter 11 |
| Debtor. | § | Subchapter V |
| | § | |

**DEBTOR'S FIRST AMENDED PLAN ~~OF REORGANIZATION~~**
**UNDER SUBCHAPTER V OF CHAPTER 11**

**Dated ~~March 7~~June 28, 2024**

**TO ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:**

## SUMMARY

This *Debtor's First Amended Plan ~~of Reorganization~~ Under Subchapter V of Chapter 11* (the "Plan"), is proposed by Ironclad Pressure Control, LLC ("Debtor"). On December 8, 2023, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Midland Division.

This Plan is provided to all known Creditors and parties in interest pursuant to the Bankruptcy Code. ~~Under the Plan, Debtor will pay in full Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims. Debtor will make payments to Creditors holding Allowed General Unsecured Claims over a period of thirty-six (36) months in quarterly distributions of a fixed amount proposed herein or, alternatively, of Disposable Income available to the Debtor.~~ The details of the Plan as to classification and treatment of Claims are set out in Articles IV, V and VI of the Plan.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE I
## BACKGROUND

**A.    Background Facts**

The Debtor is an oil field services company which was formed as a Delaware limited liability company in February 2023. The Debtor is headquartered at 16690 W. Basin Street,

Odessa, Texas ~~and maintains a residence for use by employees at 5616 E County Road 95, Midland, Texas 79706~~.

**Events Leading to Chapter 11 Filing**

On December 4, 2023, C&W International Fabricators, LLC ("C&W"), the Debtor's single-largest equipment vendor, commenced suit against Ironclad in the 244th Judicial District Court of Ector County, Texas under Cause No. C-23-12-1320-CV styled *C&W International Fabricators, LLC vs. Ironclad Pressure Control, LLC, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez, and Albert Dehoyos* (the "State Court Suit") seeking, among other things, pre-judgment temporary injunctive relief freezing the assets and business operations of the Debtor.

On December 5, 2023, the presiding judge for the 244th Judicial District entered a *Temporary Restraining Order & Order Setting Hearing for Temporary Injunction* granting the relief requested by C&W and thereby freezing the assets and operations of the Debtor.

Unable to operate, the Debtor had no option other than to commence the instant bankruptcy case. Unfortunately, there was insufficient time prior to commencement of the bankruptcy case to arrange for debtor-in-possession financing and make other preparations ordinarily made in advance of commencement of a reorganization proceeding.

**B.  Significant Events during the Bankruptcy Case**

The Debtor filed a Voluntary Petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on December 8, 2023 (the "Petition Date").

Pursuant to Notice filed December 12, 2023 [Docket No. 6], Eric Terry was appointed as Subchapter V Trustee in this Bankruptcy Case.

On December 19, 2023, the Initial Debtor Interview was held.

The meeting of creditors was held and concluded on January 9, 2024.

Pursuant to Order entered January 16, 2024 [Docket No. 43] the employment of Rochelle McCullough, LLP as counsel for the Debtor was approved.

On February 1, 2024, the mandatory Status Conference under 11 U.S.C. § 1188 was held.

On February 5, 2024, the Debtor commenced Adversary Proceeding No. 24-07002-smr against C&W International Fabricators, LLC for recovery of preferential and/or fraudulent conveyances made within the ninety (90) days immediately prior to the Petition Date and removed the State Court Suit to Bankruptcy Court where it has been assigned Adversary Proceeding No. 24-07003-smr. Both matters are pending before this Court.

Pursuant to Application filed February 7, 2024 [Docket No. 55], the Debtor sought employment of Lain, Faulkner & Co., P.C. as financial advisor to the Debtor. The Application is currently pending before the Bankruptcy Court.

A Motion for Relief from Stay was filed by C&W International Fabricators, LLC and later withdrawn. A Joint Stipulation and Agreed Order was entered March 1, 2024 [Docket No. 96], on the Motion of BankDirect Capital Finance, a Division of AFCO Credit Corporation with respect to a premium financing agreement. ~~Motions~~Agreed orders have been entered regarding motions for relief from stay filed by Kingdom Trinity, LLC, Santander as successor in interest to Chrysler Capital,  and Stellantis Financial Services with respect to their respective collateral ~~are currently pending before the Bankruptcy Court~~.

**C.      Alternatives to This Plan**

If this Plan is not approved ~~on a consensual basis~~ by the Bankruptcy Court under section 1191(a) of the Bankruptcy Code, then Debtor will move to confirm this plan on a nonconsensual basis under section 1191(b) of the Bankruptcy Code. If Debtor fails to confirm either a consensual or a nonconsensual plan, the most likely alternative is conversion of this case to Chapter 7. If Debtor's case is converted to Chapter 7, then secured creditors' recovery will be limited to the value of their collateral and Debtor's unsecured creditors would be limited to the liquidation value of non-exempt unencumbered property of the Estate.

While it is believed there is significant equity in the Debtor's oilfield equipment, on liquidation in a Chapter 7 proceeding, there is no guarantee the value be realized at a forced sale. The second alternative to confirmation is dismissal of the Bankruptcy Case. In the judgment of the Debtor, dismissal of the reorganization proceeding would lead to a highly unsatisfactory result. Numerous lawsuits would necessarily be filed by creditors attempting to collect debt owed to them. Such litigation would ultimately result in a disorganized and inefficient liquidation of the assets of the Debtor.

A Liquidation Analysis, Liquidating Trust Agreement, Summary of Retained Estate Claims and Plan Projections ~~and Schedule of Executory Contracts and Leases to be Assumed~~ are attached to this Plan as **Exhibit A**, **Exhibit B**, ~~and~~ **Exhibit C**, and **Exhibit D** respectively, and shall constitute Plan Documents as contemplated in Article II.B of the Plan

**ARTICLE II**
**DEFINITIONS AND RULES OF CONSTRUCTION**

**A.      Defined Terms**

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined). The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

2.1    "<u>Administrative Bar Date</u>" shall refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in Article IV, Section 4.2(a) of the Plan.

2.2.    "<u>Administrative Expense</u>" includes any cost or expense of administration of Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of Debtor, any actual and necessary expenses of operating the business of Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code.

2.3.    "<u>Allow</u>" or "<u>Allowance</u>," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.4.    "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided, however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

2.5.    "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 and, as applicable, section 1186 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Contracts.

2.6.    "<u>Avoidance Action</u>" means a cause of action and rights assertable by Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and including all causes of action, rights and remedies assertable by the Estate pursuant to section 544 of the Bankruptcy Code.

2.7.    "<u>Ballot</u>" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

2.8.    "<u>Bankruptcy Case</u>" shall mean this case, under Case No. 23-70156-SMR-11 before the United States Bankruptcy Court for the Western District of Texas, Midland Division.

2.9.    "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

2.10.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Western District of Texas, Midland Division.

2.11.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule."

2.12.    "<u>Bar Date</u>" is the date established by the Bankruptcy Court, including through any standing order, for filing proofs of Claim which, in this Bankruptcy Case, is February 16, 2024; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.13.    "<u>Beneficiary</u>" shall mean any Person that is the holder of an Allowed Claim entitled to receive Distributions from the Liquidating Trust pursuant to the Plan.

2.14.    "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.15.    "<u>Cash</u>" shall mean cash and cash equivalents, including funds held in a checking or money market account.

2.16.    "<u>Cash Collateral</u>" shall have the same meaning as in section 363(a) of the Bankruptcy Code.

2.17.    "<u>Claim</u>" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2.18.    "<u>Claimant</u>" means the holder of a Claim.

2.19.    "<u>Class</u>" means a category or group of holders of Claims as designated in Article V of the Plan.

2.20.    "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

2.21.    "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

2.22.    "<u>Confirmation Hearing</u>" means the hearing, as it may be continued from time-to time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

2.23.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.24.    "<u>Contested</u>," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed. In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

2.25.    "<u>Creditor</u>" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

2.26.    "<u>Cure Claim</u>" shall refer to a Claim under section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under an executory Contract or (b) for any actual pecuniary loss resulting from any such default under an Executory Contract.

2.27.    "<u>Debtor</u>" shall mean IRONCLAD PRESSURE CONTROL, LLC.

2.28.    "<u>Disallowed</u>," when used with respect to all or any part of a Claim, means that portion of a Claim to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

2.29.    "<u>Disposable Income</u>" shall have the meaning provided for such term in section 1191(d) of the Bankruptcy Code.

2.30.    "<u>Distribution</u>" shall refer to and include any distribution of any property pursuant to this Plan.

2.31.    "<u>Effective Date</u>" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed,

the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

2.32.    "Equitable Subordination" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

2.33.    "Estate" shall mean the bankruptcy estate of Debtor in this Bankruptcy Case, as the context requires.

2.34.    "Estate Cash" shall mean Cash held by the Estate.

2.35.    "Estate Claims" shall include any and all Claims or causes of action or rights of action held by the Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the forgoing. Estate Claims shall also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.

2.36.    "Estate Defenses" shall refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by the Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. Pr. 8(c). Estate Defenses shall also include all rights and remedies for Equitable Subordination. Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.

2.37.    "Estate Insurance" shall include any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

2.38.    "Executory Contract" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

2.39.    "Estate Professional" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 330, 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.40.    "Final Decree" shall mean the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case.

2.41.    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, and which such order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

2.42.    "Unsecured Claim" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

2.43.    "Governmental Bar Date" shall mean June 5, 2024, the date by which governmental units must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.44.    "Governmental Unit" shall have the same meaning as in section 101(27) of the Bankruptcy Code.

2.45.    "Initial Distribution Date", when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article VIII of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article VIII of this Plan applicable to each such Claim. The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim became an Allowed Claim. For all other purposes, the "Initial Distribution Date" shall be the first day of the calendar month immediately following the month in which the Effective Date occurs.

2.462.46.    "Interests" means any equity or stock ownership interest in the Debtor.

2.47.    "Insider Claims" means any Claim the Debtor held against an "insider" as defined in section 101(31) of the Bankruptcy Code as of the Petition Date.

2.48.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

2.472.49.    "Liquidating Trust" means the trust established pursuant to the Liquidating Trust Agreement for the purpose of liquidating and distributing the Liquidating Trust Assets to the Beneficiaries.

2.50.    "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement substantially in the form attached as Exhibit B, establishing the Liquidating Trust and providing for liquidation and distribution of the Liquidating Trust Assets as provided in Article X of this Plan.

2.51.    "Liquidating Trust Assets" means, collectively, the Remaining Assets.

2.52.    "Liquidating Trustee" means Eric Terry or such other individual as may be approved by the Bankruptcy Court to serve as the trustee under the Liquidating Trust Agreement.

IN RE IRONCLAD PRESSURE CONTROL, LLC
DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11 – PAGE 8

2.53.   "Net Liquidating Trust Assets" means the portion of the Liquidating Trust Assets available for distribution to holders of Allow Claims, excluding any Reserves for Contested Claims, operating expenses of the Liquidating Truste, or otherwise.

2.54.   "Objection" includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax. Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

2.4855.   "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

2.4956.   "Person" includes any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

2.5057.   "Petition Date" means December 8, 2023.

2.5158.   "Plan" means this Plan of Reorganization filed by Debtor, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.5259.   "Plan Documents" shall refer to the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article II.B. of the Plan.

2.5360.   "Priority Claim" means a Claim that is entitled to priority of payment under sections 507(a)(4) through (7) of the Bankruptcy Code.

2.5461.   "Priority Tax Claim" means a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.5562.   "Projected Disposable Income" means the income Debtor has projected as income available to fund the Plan for Confirmation Hearing purposes and are reflected in the Plan Documents.

2.5663.   "Property Tax Claim" means a Claim for Property Taxes.

2.5764.   "Property Taxes" shall mean such taxes assessed by any Taxing Authority against any property of Debtor based on the value thereof, as allowed by applicable state and local law.

2.~~58~~65.      "Pro Rata Share" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

2.~~59.    "Reorganized Debtor~~66.    "Rejected Leases and Contracts" means  all Unexpired Leases and Executory Contract of the Debtor.

2.67.    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory Contract or Unexpired Lease.

2.68.    "Remaining Assets" means any Assets of the Debtor ~~after Confirmation Date startingas~~ of the Effective Date which will be transferred to the Liquidating Trust on the Effective Date ~~of~~.

2.69.    "Reserve" or Reserves" means any reserves set aside by the Liquidating Trustee pursuant to this Plan or the Liquidating Trust Agreement in order to pay any Trust Expenses or fund any Distribution or payment pursuant to the Plan.

2.~~60~~70.      "Retained Causes of Action" means those causes of action, claims, counterclaims, defenses and rights of offset or recoupment retained by ~~Reorganized Debtorthe~~ Liquidating Trust as described in Article ~~9.1~~XII of the Plan ~~or the Plan Supplement~~.

2.~~61~~71.      "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

2.~~62~~72.      "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by Debtor as required by section 521 of the Bankruptcy Code.

2.~~63~~73.      "Schedule of Rejected Executory Contracts" means the Schedule of Rejected Executory Contracts to be provided in the Plan or tendered at the Plan ~~Supplement~~Confirmation hearing.

2.~~64~~74.      "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against Debtor or any Asset.

2.~~65~~75.      "Secured Creditor" shall mean the holder of a Secured Claim.

2.~~66~~76.      "Subchapter V Trustee" shall mean Eric Terry.

2.~~67~~77.       "Subchapter V Trustee Fees" shall mean those fees paid or to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

2.~~66~~78.       "Substantial Consummation" means when the requirements of section 1101(2) of the Bankruptcy Code are factually satisfied.

2.~~67~~79.       "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.80.  "Trust Expenses" means expenses incurred by the Liquidating Trustee in connection with the administration of the Liquidating Trust including without limitation the fees of the Liquidating Trustee, fees and expenses of Trust Professionals, and any cost or expenses which the Liquidating Trustee believes to be necessary or appropriate to the administration of the Liquidating Trust.

2.81.   "Trust Professionals" includes all professionals retained by the Liquidating Trustee including, without limitation, legal counsel, accountants, and such other advisors or professionals as the Liquidating Trustee may wish to retain.

2.68.   "Unclaimed Property" means any Cash, Distribution, payment or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the ~~Reorganized Debtor~~Liquidating Trustee may fix in the exercise of good faith business judgment.

2.69.    "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 7.

**B.     Rules of Interpretation and Construction of Terms**

2.70.    Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions or the interpretation hereof.

2.71.    The words "herein," "hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

2.72.    Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

2.73.    The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, the Confirmation Order and all Plan Documents.

2.74.   References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

2.75.   All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Rochelle McCullough, LLP, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102, Attention: Michelle Wilson; email: MWilson@romclaw.com

2.76.   Reference herein to any agreement, contract, instrument or other document in this Plan shall refer to such agreement, contract, instrument or document as amended, supplemented or modified.

### ARTICLE III
### ACCEPTANCE OR REJECTION OF PLAN AND PLAN SUMMARY

3.1     Classes Entitled to Vote.  Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims or Interests as defined herein shall not be entitled to vote to accept or reject the Plan. A Subchapter V Chapter 11 Plan does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

3.2     Class Acceptance Requirement. A Class of impaired Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

3.3     Effect of Confirmation. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

3.4     Voting. For all Classes, the ballot must be returned to Joseph F. Postnikoff, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

3

3.5     Reorganization. The Plan provides for ~~a reorganization and restructuring of the Debtor's financial obligations. Under the Plan, Debtor will pay in full~~ transfer of all Remaining Asset of the Debtor to a Liquidating Trust on the Effective Date of the Plan for the liquidation of the Remaining Assets and ultimately distribution to holders of Allowed Secured Claims, ~~Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims. Debtor will pay its~~ .

~~3.1~~3.6  Disposable Income ~~to Creditors holding Allowed General Unsecured Claims over a period of thirty-six (36) months in quarterly distributions.~~  The Debtor submits all future earnings or other future income of the Debtor to the supervision and control of the trustee as is necessary for the execution of the Plan.

~~3.2      Distribution.   The Plan provides for a distribution to Creditors in accordance with the terms of the Plan from the Debtor over the course of three (3) years from the Effective Date of the Plan from the Debtor's continued business operations.~~

~~3.3~~3.7  Classes.  The Plan provides for:

| | |
|---|---|
| 1 | Class of Priority Claims |
| 5 | Classes of Secured Claims |
| 1 | Class of Unsecured Claims |
| 1 | Class of Equity Security Holders |

This Plan also provides for the payment of administrative and priority tax claims.

All creditors ~~and equity security holders~~ should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE IV
## CLASSIFICATION OF CLAIMS

4.1.    **Class 1** – The priority Non-Tax Claims including the pre-petition Claims of current and former employees of Debtor under 11 U.S.C. § 507 of the Bankruptcy Code.

4.2.    **Class 2** – The Claims of Ad Valorem Tax Authorities to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.3.    **Class 3** – The claim of FundThrough USA Inc. against Debtor, to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code.

4.4.    **Class 4** – The claim of Kingdom Trinity, LLC against Debtor, to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code.

4.5.    **Class 5** – The claims of Stellantis Financial Services against Debtor, to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.6.    **Class 6** – The claims of Chrysler Capital against Debtor, to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code.

4.7.    **Class 7** – All Allowed Non-Priority Unsecured Claims respecting Debtor.

4.8.   **Class 8** – Equity Interests of the Debtor.

**ARTICLE V**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**AND PRIORITY TAX CLAIMS**

5.1.   <u>Unclassified Claims</u>.  Under Section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

5.2.   <u>Administrative Expense Claims</u>.  ~~Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the Effective Date of this Plan by the Debtor, but only to the extent of Debtor's liability, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.~~  ~~**NOTE: This treatment may be materially altered in the event of confirmation pursuant to § 1191(b) as to claims arising under §§ 507(a)(2) and (3) as noted in section 5.5 of this Plan.**~~<u>The Liquidating Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of this section 5.2 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Liquidating Trustee may move the Bankruptcy Court to apply the provisions of Article V below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.</u>

<u>5.3.   Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Liquidating Trustee, or as otherwise ordered by the Bankruptcy Court.</u>

<u>5.4.   Unless the Bankruptcy Court orders to the contrary or the Liquidating Trustee agrees to the contract in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by a Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Liquidating Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution through the Liquidating Trust.</u>

<u>5.5.   A Claim for an Administrative Expense, for which a proper notice was filed and served under section 5.4 above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed,</u>

> **Formatted:** Indent: Left:  0", First line:  0.5", Outline numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.2" + Indent at: 0.58"

the Claim shall become an Allowed Administrative Expense only to the extend allowed by a Final Order.

5.6.    The procedures contained above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been property filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with section 5.4 above. Professional fees and expenses of any Estate Professional incurred on or after the Effective Date may be paid by the Liquidating Trustee without necessity of application to or order by the Bankruptcy Court.

5.7.    If the Liquidating Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

5.8.    Ector CAD Claim for 2024 and Subsequent Tax Year Ad Valorem Property Taxes. The Liquidating Trustee shall pay all post-petition/post-confirmation ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Ector CAD, if any, in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent, and pursuant to 11 U.S.C. §503(b)(1)(D), Ector CAD shall not need to file an administrative expense claim and/or request for payment as a condition of an Ector CAD post-petition/post-confirmation claim being an allowed administrative expense.    Nothing in the Plan or in the Confirmation Order shall be construed to deprive Ector CAD of any statutory liens which may inure to the benefit of Ector CAD to secure payment of any post-petition Administrative Claims for ad valorem taxes. In the event, any post-petition/post -confirmation ad valorem taxes owed to Ector CAD shall become delinquent, Ector CAD may recover, in addition to the base tax, all penalties and interest allowed by State law.   The failure to timely pay post-petition and/or post-confirmation taxes shall be considered an event of default.   Ector CAD shall provide The Liquidating Trustee with written notice of that default and a ten (10) day opportunity to cure said default.  In the event that the The Liquidating Trustee fails to timely cure the post-petition and/or post-confirmation default, Ector CAD may pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed in state district court without further order of this court or further notice to the Debtor.

5.3,5.9.        Priority Tax Claims. Each holder of an Allowed Priority Tax Claim against the Debtor shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the Debtor, either:-(i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years,, plus interest at the rate and in the manner prescribed by applicable law from the later of the Petition Date of a value as of or the Effective Date, equal tofirst day after the Allowed amount oflast day on which such Priority Tax Claim; may be paid without penalty; or (ii) or (iii) such other terms as may be agreed upon in writing by suchthe holder and the liable Debtor. The rate of interest to be paid on Allowed of the Priority Tax Claims that are paid out over five (5)

~~years shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (the underpayment rate is currently 5.0%).~~Claim and the Liquidating Trustee.

~~5.4.~~5.10.    **Statutory Fee.**  As a case under Subchapter V of Chapter 11 of the Bankruptcy Code, no fees are required to be paid under 28 U.S.C. § 1930. Any fees due the Subchapter V Trustee as of the Confirmation Date shall be paid in full on the Effective Date or as soon thereafter as is practicable.

~~5.5.    EXCEPTION: Payment of Administrative Expense Claims Through Plan Term. If the Plan is confirmed pursuant to § 1191(b) any and all claims of a kind specified in paragraph (2) or (3) of § 507(a) of the Bankruptcy Code may be paid the Allowed amount of such claim in quarterly installments during the Plan Term commencing on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.~~

> **Formatted:** List Paragraph, Left, Indent: First line:  0.5",  No bullets or numbering

### ARTICLE VI
### TREATMENT OF CLAIMS UNDER THE PLAN

Claims and Interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | ~~Unimpaired~~Impaired | Each holder of an Allowed Priority Non-Tax Claim shall be paid a sum of money no greater than the amount of each holder's Allowed Non-Tax Priority Claim on the Initial Distribution Date.<br><br>The Debtor believes there are nine (9) holders of Class 1 – Priority Non-Tax Claims totaling approximately $39,542.55. Class 1 is Impaired. Holders of Class 1 Claims are entitled to vote on the Plan. |
| Class 2 – Secured Claim of Ad Valorem Tax Authorities | Impaired | Class 2 Summary. This class consists of ad valorem tax claims assessed against the real and personal property of the Debtor asserted by the relevant taxing authorities. All proofs of claim filed by Midland County and related jurisdictions which have filed proofs of claim for property taxes assessed against real property of the Debtor located in Midland County, Texas, for the year 2023 ~~in the amount of $15,145.14~~have been withdrawn. As a result, it is believed there are no Class 2 Creditors.<br><br>Treatment. Each holder of a Class 2 Allowed Secured Claim payable to a taxing authority for ad valorem taxes for tax years 2023 and prior, if any, shall be paid in full, with statutory interest on such Allowed |

| | | |
|---|---|---|
| | | Secured Claims under 11 U.S.C. § 506(b), to the extent applicable, from the proceeds of sale of the Collateral against which such Allowed Secured Claim was assessed. |
| Class 3 – FundThrough USA Inc. | ~~Unimpaired~~Impaired | Class 3 Summary. Class 3 consists of the Secured Claim of FundThrough USA Inc. against Debtor which ~~is~~was asserted to be no less than $349,991.67 as of the Petition Date secured by a Lien against all untitled Personal Property of the Debtor. In the course of the Bankruptcy Case, the Class 3 Creditor received payments totaling $370,000.00 and subsequently withdrew its proof of claim although the Class 3 Creditor did assert entitlement to a claim over and above the $370,000.00 received.<br><br>~~Principal Amount.~~Treatment. The ~~unpaid principal balance~~claim of ~~the Allowed Class 3 Claim~~FundThrough USA Inc. ~~is hereby allowed as an Allowed Secured Claim in the amount of $349,991.67, plus post-petition interest at the non-default contract rate, less any principal reduction made through adequate protection payments or otherwise.~~<br><br>~~Payments. The Allowed Class 3 Claim, plus interest thereon, shall be~~deemed satisfied in full and FundThrough USA Inc. shall receive no further distribution from the ~~sale proceeds of the Collateral which Secures its Claim on or before the Effective Date.~~<br><br>~~The Class 3 Claimant shall retain its Lien to the extent of its Allowed Secured Claim until its Allowed Secured Claim has been paid in full.~~<br><br>~~Pre-Payment. At any time~~Debtor or Liquidating Trust. Within thirty (30) days after the Effective Date, ~~without penalty or premium, the Allowed Class 3 Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.~~<br><br>~~Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 3 Claim~~ |

| | | |
|---|---|---|
| | | ~~shall remain in full force and effect following the Effective Date.~~ <br><br> ~~Default. In the event Reorganized~~ <u>FundThrough USA Inc. shall file appropriate releases of all outstanding liens against Assets of the</u> Debtor ~~fails to timely pay the Allowed Class 3 Claim, Reorganized Debtor shall be in default, and, subject to Section 16.9 of the Plan, the holder of the affected Allowed Class 3 Claim may pursue remedies in accordance with that section.~~ |
| Class 4 – Secured Claim of Kingdom Trinity, LLC | ~~Unimpaired~~<u>Impaired</u> | <u>Class 4 Summary</u>. Class 4 consists of the Secured Claim of Kingdom Trinity, LLC against Debtor which ~~is~~<u>was</u> asserted to be no less than $1,087,798.41 as of the Petition Date secured by a Lien against certain real property located at 5616 East County Road 94, Midland, Midland County, Texas. <u>Pursuant to Order of the Bankruptcy Court, the automatic stay of section 362 of the Bankruptcy Code was lifted to allow Kingdom Trinity, LLC to foreclose its lien against its Collateral and Kingdom Trinity, LLC subsequently foreclosed its lien against its Collateral.</u> <br><br> ~~Principal Amount. The unpaid principal balance of the Allowed Class 4 Claim, plus post-petition interest at the non-default contract rate, less any principal reduction made through adequate protection payments or otherwise.~~ <br><br> ~~Payments. The Allowed Class 4 Claim, plus interest thereon, shall be satisfied from the proceeds of sale of the Collateral which Secures its Claim. The Class 4 Claimant shall retain its Lien to the extent of its Allowed Secured Claim until its Allowed Secured Claim has been paid in full.~~ <br><br> ~~Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 4 Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.~~ <br><br> ~~Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 4 Claim~~ |

| | | |
|---|---|---|
| | | shall remain in full force and effect following the Effective Date. <br><br> Default. In the event Reorganized Debtor fails to timely pay the Allowed Class 4 Claim, Reorganized Debtor shall be in default, and, subject to Section 16.9 of the Plan, the holder of the affected Allowed Class 4 Claim may pursue remedies in accordance with that section. <br> Treatment. Any Allowed Unsecured Deficiency Claim of Kingdom Trinity, LLC shall be Allowed as a Class 7 Claim. |
| Class 5 – Secured Claims of Stellantis Financial Services | Impaired | Class 5 Summary. Class 5 consists of the claims of Stellantis Financial Services Secured by four (4) 2022 Ram 2500 Diesel Pickup Trucks. The Debtor has been making adequate protection payments to Stellantis pursuant to Orders of this Court. It is believed there is no equity in the Collateral of Stellantis Financial Services. <br><br> Payments. The Allowed Class 5 Secured Claims, plus interest thereon, shall be paid by Reorganized Debtor as follows: <br><br> Reorganized Debtor shall resume making monthly installment payments to the Class 5 Claimant pursuant to the respective Motor Vehicle Retail Installment Sales Contracts between the parties on or before the Initial Distribution Date. <br><br> Any pre- or post-petition default in payment to the Class 5 Claimant pursuant to the respective Motor Vehicle Retail Installment Sales Contracts between the parties shall be cured in twelve (12) equal monthly payments, with interest at the non-default contract rate of interest, the first of which monthly payments shall be due and owing on or before the Initial Distribution Date; and <br><br> The Class 5 Claimant shall retain its Liens against its Collateral to the extent of its Allowed Secured Claim until its Allowed Secured Claim has been paid in full. <br><br> Default. In the event Reorganized Debtor fails to timely pay the Allowed Class 5 Claim Reorganized Debtor shall be in default, and, subject to Section 16.9 |

| | | |
|---|---|---|
| | | of the Plan, the holder of the affected Allowed Class 5 Claim may pursue remedies in accordance with that section.Treatment. Stellantis Financial Services shall be authorized, following entry of the Confirmation Order, to gain possession of its Collateral and exercise its contractual and other remedies under applicable state law. Any Allowed Unsecured Deficiency Claim of Stellantis Financial Services, evidenced by the filing of an amended proof of claim, shall be treated as a Class 7 Claim. Class 5 is Impaired. The holder of Class 5 Claims is entitled to vote on the Plan. |
| Class 6 – Secured Claims of Chrysler Capital | Impaired | Class 6 Summary. Class 6 consists of the claims of the Chrysler Capital Secured by two (2) 2022 Ram 2500 Diesel Pickup Trucks. The Debtor has been making adequate protection payments to Chrysler Capital pursuant to Orders of this Court. It is believed there is no equity in the Collateral of Chrysler Capital.

Payments. The Allowed Class 6 Secured Claims, plus interest thereon, shall be paid by Reorganized Debtor as follows:

Reorganized Debtor shall resume making monthly installment payments to the Class 6 Claimant pursuant to the respective Motor Vehicle Retail Installment Sales Contracts between the parties on or before the Initial Distribution Date.

Any pre or post petition default in payment to the Class 6 Claimant pursuant to the respective Motor Vehicle Retail Installment Sales Contracts between the parties shall be cured in twelve (12) equal monthly payments, with interest at the non-default contract rate of interest, the first of which monthly payments shall be due and owing on or before the Initial Distribution Date; and

The Class 6 Claimant shall retain its Liens against its Collateral to the extent of its Allowed Secured Claim until its Allowed Secured Claim has been paid in full.

Default. In the event Reorganized Debtor fails to timely pay the Allowed Class 6 Claim Reorganized Debtor shall be in default, and, subject to Section 16.9 |

| | | |
|---|---|---|
| | | ~~of the Plan, the holder of the affected Allowed Class 6 Claim may pursue remedies in accordance with that section.~~ <u>Treatment. Chrysler Capital shall be authorized, following entry of the Confirmation Order, to gain possession of its Collateral and exercise its contractual and other remedies under applicable state law. Any Allowed Unsecured Deficiency Claim of Chrysler Capital, evidenced by the filing of an amended proof of claim, shall be treated as a Class 7 Claim. Class 6 is Impaired. The holder of the Class 6 Claims is entitled to vote on the Plan.</u> |
| Class 7 – Non priority Unsecured Creditors | Impaired | Class 7 consists of Allowed Claims against Debtor (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 7 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Debtor for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or other encumbrances thatare senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date. <br><br> ~~Each holder of an Allowed Unsecured Claim in Class 7 shall be paid by Reorganized Debtor as follows in full satisfaction of such creditor's claim: holders of an allowed Class 7 (as well as other Classes of Claims deemed to be a member of Class 7) shall receive their pro rata share of payments from a common fund (the "Unsecured Creditor Pool"), which pool shall consist of a fixed payment amount of $2,500 per month for thirty-six (36) months or, alternatively, of Disposable Income available to the Debtor as described in greater detail in Paragraph 9.5 herein, in payment of this Claim.~~ <br><br> ~~Payments from the Unsecured Creditor Pool to holders of allowed Class 7 Claims shall be accrued and paid quarterly, for a period not to exceed three (3) years and the first quarterly payment will be due on~~ |

| | | |
|---|---|---|
| | | ~~the twentieth (20th) day of the first full calendar month following the last day of the month of anniversary of the Effective Date.~~ <br> Treatment. Each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of the Net Liquidating Trust Assets after the satisfaction of, or allocation of an appropriate Reserve for, the following: (i) Allowed Administrative Expense Claims, (ii) Allowed Non-Priority Claims, (iii) Allowed Priority Tax Claims; (iv) Allowed Ector County 2024 ad valorum property tax claims; and (v) Trust Expenses. The timing of the distribution(s) of the Net Liquidating Trust Assets shall be at the discretion of the Liquidating Trustee except to the extent limited by the express terms of the Plan, the Liquidating Trust Agreement, or applicable law. Class 7 is Impaired. Holders of Class 7 Claims are entitled to vote on the Plan. <br><br> No Holder of a Class 7 Claim shall receive more than 100% of their Allowed Claim. |
| Class 8 – Equity Interest Holder of the Debtor | ~~Unimpaired~~Impaired | Class 8 consists of the holder of ~~Allowed~~ Interests ~~of~~in Debtor. All Interests in the Debtor shall be extinguished and shall cease to exist as of the Effective Date. The holder of ~~an Allowed~~such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 8 ~~Interest shall retain its interest in the Reorganized Debtor~~is Impaired. The Holder of Class 8 Interests is conclusively presumed to have rejected the Plan and, accordingly, is not entitled to vote on the Plan. |

### ARTICLE VII
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

7.1.    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

7.2.    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

7.3.    Settlement of Disputed Claims.  The ~~Reorganized Debtor~~Liquidating Trustee will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure until the Effective Date and thereafter without court approval or compliance with Rule 9019 of the F.R.B.P.

## ARTICLE VIII
## EXECUTORY CONTRACTS

8.1    Assumed Executory Contracts and Unexpired Leases.  ~~Reorganized Debtor assumes the executory contracts and/or unexpired leases effective upon the Effective Date set forth on **Exhibit C** to this Plan. Reorganized~~ Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under this section 8.1, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **thirty (30)** days after the Effective Date.

~~8.2    Cure Claim Payments. To the extent any Cure Claims exist for any Executory Contracts or Unexpired Leases to be assumed hereunder, they shall be treated as provided in this section. Unless the holder of a Cure Claim and Debtor or Reorganized Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by section 365(b)(1) of the Bankruptcy Code under an Executory Contract or Unexpired Lease that is assumed under this Plan shall be made by Reorganized Debtor on the Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.~~

~~8.3    Bar to Rejection Claims.~~
8.2    Bar to Rejection Claims. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against ~~Reorganized Debtor~~the Liquidating Trust or the Liquidating Trust Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon Debtor and ~~his~~its bankruptcy counsel~~, or Reorganized Debtor~~ and the Liquidating Trustee and his counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

8.4    Rejection Claims. Any Rejection Claim not barred by section 8.~~3~~2 above shall be classified as a Class 7 Claim (if such Rejection Claim is Allowed against Debtor), all subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; provided, however, that

any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed.

## ARTICLE IX
## MEANS FOR IMPLEMENTATION OF THE PLAN

9.1. <u>General</u>. The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code.——

9.2. ~~Performance~~<u>Liquidating Trust. The Liquidating Trust shall be created as</u> of ~~Assumed Executory Contracts.  From and after~~ the Effective Date, in accordance with the terms of this Plan and the ~~Confirmation Order, the Reorganized~~<u>Liquidating Trust Agreement. The</u> Debtor ~~shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 8 of this Plan.~~

9.3. ~~and the~~ Estate ~~Assets.~~

9.3.1 ~~Management of Reorganized Debtors.  The management of Reorganized Debtor will remain unaltered. Bailee Fernandez~~ shall ~~continue in her managerial capacity.~~

9.2. ~~9.3.2  Revesting [§ 1191(a)].  On~~<u>be</u> the ~~Effective Date, if the Plan is confirmed pursuant to § 1191(a), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor. Thereafter, Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan. From and after the Effective Date, except as otherwise described  in this Plan, Reorganized Debtor shall own and operate such assets without further~~supervision by or jurisdiction of this Court, except as otherwise provided herein<u>settlor of the Liquidating Trust</u>.

9.3.3 ~~No Revesting [§ 1191(b)].  If the Plan is confirmed pursuant to § 1191(b), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall remain property of its Estate until discharge of the Reorganized Debtor pursuant to § 1192.  From and after the Discharge Date title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor. Thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Discharge Date, except as otherwise described in this Plan, the Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.~~

9.3.4. ~~Disbursing Agent. If the Plan is confirmed under § 1191(a) of the Bankruptcy Code the Reorganized Debtor shall serve as its own disbursing agent, without bond, for purposes of making transfers and payments under this Plan.  If the Plan is confirmed~~

~~under § 1191(b) of the Bankruptcy Code the Sub V Trustee of the Reorganized Debtor shall serve as Debtor's disbursing agent.~~

9.3.    Transfer of Assets. As of the Effective Date all Remaining Assets shall be transferred from the Debtor to the Liquidating Trust. After the Effective Date, the Liquidating Trustee may still abandon any Trust Assets which are burdensome or have no inconsequential value to the Liquidating Trust. The Assets shall be transferred to, and vested in, the Liquidating Trust free and clear of all Liens, Claims, rights, Interest and charges, except as expressly provided in this Plan.

9.4.    Assumption of Obligation to Make Distributions. The Liquidating Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

9.5.    Actions by the Debtor and the Liquidating Trustee to Implement the Plan. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Liquidating Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (i) all transfers of Assets to the Liquidating Trust that are to occur pursuant to the Plan, (ii) the cancellation of Interests and the winding up and dissolution of the Debtor; (iii) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (iv) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements, permitted by applicable law, order, rule or regulation.

9.6.    Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (i) any Person directly affected by the relief sought in the pleading, (ii) the U.S. Trustee, (iii) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (iv) the Liquidating Trustee through legal counsel.

9.7.    Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date.

9.8.    Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of Equitable Subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date as an Estate Defense.

9.9.    Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Liquidating Trustee.

9.10. Plan Injunction. The Liquidating Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

9.11. Cancellation of Interests. Except as otherwise specifically provided herein, upon the Effective Date: (i) all interests in the Debtor shall be cancelled; (ii) the Holder of such cancelled Interests is not a beneficiary of the Liquidating Trust.

9.12. Dissolution of Debtor. The Liquidating Trustee shall be responsible for the winding up and dissolution of the Debtor which shall be undertaken as soon as practicable after the Effective Date. The Liquidating Trustee may retain such professionals, consultants or advisors as may be reasonably necessary to seasonably accomplish this task, and all such expenses attributable to the winding up and dissolution of the Debtor shall be treated as Trust Expenses.

9.4. 9.13. Settlement of Disputed Claims. From and after the Effective Date the Reorganized Debtor Liquidating Trustee will have the power and authority to settle and compromise a disputed claim without court approval or compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

9.5. Disposable Income Payments. The Reorganized Debtor, as also described in Article 6, shall make quarterly distributions each year, to be calculated on each anniversary of the Effective Date for three years (the "Disposable Income Payment"). The Disposable Income Payment shall be distributed to Allowed Class 7 Creditors. The Disposable Income Payment shall be an amount equal to 50% of the Debtor's annual "Net Proceeds". Net Proceeds shall be the funds remaining after the payment of Debtor's operating expenses and fixed plan payments after the payment of administrative expense claims. Debtor shall make twelve (12) Disposable Income Payments, but Debtor shall in no event pay any Creditor in excess of the Allowed Amount of its Claim nor shall interest be paid on any Unsecured Claim without priority. Debtor shall provide the Subchapter V Trustee with sufficient information to allow the Subchapter V Trustee to determine the amount of each Disposable Income Payment. The information for the Subchapter V Trustee shall include, but not be limited to, the Debtor's bank statements, invoices, payroll information, tax information, profit and loss statements and any other information reasonably requested by the Subchapter V Trustee to evaluate the Disposable Income Payment amount. The Debtor shall provide this information on a semiannual basis. For services rendered post-confirmation by the Subchapter V Trustee, the Debtor shall be authorized to pay those fees when presented to Debtor without further order of the Court.

9.6. Causes of Action. The Reorganized Debtor retains and reserves all rights in relation to the following pending causes of action (the "C&W Litigation"):

Adversary Proceeding No. 24-07002-smr; styled *Ironclad Pressure Control, LLC vs. C&W International Fabricators, LLC* pending in the United States Bankruptcy Court for the Western District of Texas Midland Division; and

Cause No. C 23-12-1320 CV removed to the Bankruptcy Court under Adversary Proceeding No. 24-07003-smr, in the United States Bankruptcy court for the Western District of

Texas Midland Division styled *C&W International Fabricators, LLC v. Ironclad Pressure Control, LLC, Ermelinda (Mindy) Rivas, Bailee Nicole Rivas-Fernandez and Albert Dehoyos.*

**ARTICLE X**
~~**ACCEPTANCE OR REJECTION OF PLAN**~~

**THE LIQUIDATING TRUST**

10.1.    Creation of Liquidating Trust. On the Effective Date the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement which shall be executed on behalf of the Debtor and by the Liquidating Trustee to accept the appointment. The Liquidating Trust Agreement shall no terminate upon the death or incapacity of the Trustee and shall continue until its termination in accordance with the terms of this Plan and the Liquidating Trust Agreement. Reference is made to the Liquidating Trust Agreement for all purposes which shall constitute an integral part of the Plan.

10.2.    Compensation of Liquidating Trustee. The Liquidating Trustee shall be compensated from the Trust Assets in the manner set forth in the Liquidation Trust Agreement as a Trust Expense. The Liquidating Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

10.3.    Trust Assets. The Debtor and the Estate shall constitute the settlor of the Liquidating Trust. As of the Effective Date, all Remaining Assets shall be transferred to the Liquidating Trust where they will constitute the Trust Assets. The Trust Assets shall encompass all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (i) all Assets, (ii) Avoidance Actions, (iii) Cash, (iv) Estate Claims, (v) Estate Defenses, and Retained Causes of Action. To evidence the transfer of the Estate Assets to the Liquidating Trust, the Debtor shall, if requested by the Liquidating Trustee, execute on behalf of the Debtor and the Estate, as settlors, an Assignment of Trust Assets transferring the Estate Assets to the Liquidating Trust which shall be included among the Plan Documents.

10.4.    Distributions from Liquidating Trust. The Liquidating Trustee shall be responsible for making all Distributions from the Liquidating Trust to holders of Allowed Claims pursuant to this Plan. The priority of Distributions from the Liquidating Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

   (a)    First, to pay Trust Expenses;
   (b)    Second, to pay Allowed Administrative Expense Claims including Administrative Expense Claims of Estate Professionals and Ordinary Course Claims;
   (c)    Third, to pay Class 1 Priority Non-Tax Claims;
   (d)    Fourth, to pay Priority Tax Claims; and
   (e)    Fifth, to make Distributions to holders of Allowed Class 7 Non-Priority Unsecured Claims.

So long as appropriate Reserves are maintained for the satisfaction of potential Allowed Claims entitled to priority of distribution over holders of Allowed Class 7 Claims, the Liquidating Trustee may make Distributions to holders of Allowed Class 7 Claims from the remaining Trust Assets.

10.5.    Reserves. The Liquidating Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, reserves on account of Contested Claims, Retained Causes of Action, Avoidance Actions, Estate Claims and for Trust Expenses. The Liquidating Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 7 Claims.

10.6.    Once appropriate Reserves have been established for potential Claims having a higher priority for receiving Distributions under this Plan, the Liquidating Trustee may make Distributions to holders of Allowed Class 7 Claims. The Liquidating Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Liquidating Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Liquidating Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Liquidating Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Liquidating Trust. Subject to any specific deadlines set forth herein, the Liquidating Trustee, shall determine, from time-to-time, in the exercise of the Liquidating Trustee's good faith business judgment: (i) the amount of Cash available for Distribution to Beneficiaries, (ii) the timing of any Distributions to Beneficiaries, and (iii) the amount and creation of any Reserves for Contested Claims or Trust Expenses.

10.7.    Trust Expenses. The Liquidating Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Liquidating Trust may retain, compensate and reimburse Trust Professionals retained by the Liquidating Trust without the necessity of further order of the Bankruptcy Court. However, the Liquidating Trustee shall be entitled, should the Liquidating Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

10.8.    Powers and Duties of the Liquidating Trustee. The Liquidating Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Liquidating Trust Agreement which shall be one of the Plan Documents. The Liquidating Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Liquidating Trust Agreement.

10.9.    Exercise of Liquidating Trustee's Powers. The Liquidating Trustee shall be entitled to exercise all powers pursuant to this Plan and the Liquidating Trust Agreement, without further

order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Liquidating Trust Agreement or Confirmation Order.

10.10.  Prosecution and Settlement of Estate Claims. Upon the Effective Date, the Liquidating Trustee (a) shall automatically be substituted in place of the Debtor as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of adversary proceeding or contested matter pending before the Bankruptcy Court regarding such substitution. The Liquidating Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims, including without limitation, Avoidance Actions, Estate Defenses and Retained Causes of Action, for the benefit of the Liquidating Trust in the manner set forth in this Plan and the Liquidating Trust Agreement.

10.11. Exculpation of Liquidating Trustee. The Liquidating Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Liquidating Trust. In the performance of its duties, the Liquidating Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Liquidating Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Liquidating Trust Agreement.

10.12. Indemnity. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust in the manner and to the extent set forth in the Liquidating Trust Agreement.

10.13. Resignation of Liquidating Trustee. The Liquidating Trustee may resign as provided in the Liquidating Trust Agreement.

10.14.  Replacement of the Liquidating Trustee. The Liquidating Trustee may be replaced in the manner and on the terms as set forth in the Liquidating Trust Agreement.

10.15.  Reliance by Liquidating Trustee. In the performance of the duties pursuant to this Plan, the Liquidating Trustee may rely upon any document or instrument which the Liquidating Trustee in good faith believes to be genuine or to have been signed or executed by the proper parties.

10.16.  Plan Injunction. The Liquidating Trustee and Liquidating Trustee shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

10.17.  Tax Treatment. The Liquidating Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Liquidating Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Liquidating Trust Assets, and make timely Distributions to Beneficiaries of the Liquidating Trust, and shall not unduly prolong its duration.

10.18.  Transfer of Claims. Holders of Allowed Claims against the Liquidating Trust shall not receive any certificate or other document to evidence their beneficial interest in the Liquidating

Trust. The transfer of Claims after the Effective Date is subject to section 11.4 of this Plan.

10.19.  Relief from the Bankruptcy Court. The Liquidating Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter or relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Liquidating Trustee deems necessary or appropriate to the performance of its duties on the administration of this Plan or the liquidation and distribution of the Trust Assets.

10.20.  Removal for Cause. The Liquidating Trustee may be removed for cause shown in the manner and on the terms set forth in the Liquidating Trust Agreement.

10.1.1.1    Classes Entitled to Vote.  Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims or Interests as defined herein shall not be entitled to vote to accept or reject the Plan. A Subchapter V Chapter 11 Plan does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

10.2.1.1    Class Acceptance Requirement. A Class of impaired Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

10.3.1.1    Effect of Confirmation. Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor, and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

10.4.    Voting. For all Classes, the ballot must be returned to Joseph F. Postnikoff, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

10.6.

# ARTICLE XI
## SOURCE OF DISTRIBUTIONS

11.1.    Source of Distributions. All Distributions to be made under this Plan shall be made by the Liquidating Trustee in the manner provided in this Plan, Confirmation Order and the Liquidating Trust Agreement.

11.2.    Timing and Amount of Distributions. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Trustee shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The

Liquidating Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

11.3.  Means of Cash Payment. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

11.4.  Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1 and 7 Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Trustee shall have no obligation to recognize any transfer of any Class 1 and 7 Claims occurring after the Distribution Record Date, and the Liquidating Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Class 7 Claims after the Distribution Record Date, but shall have no obligation to do so.

11.5.  Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Class 1 and 7 Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Liquidating Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Trustee may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Liquidating Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

11.6.  W-9 Forms. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Liquidating Trustee prior to receiving any Distribution from the Liquidating Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Trustee within thirty (30) days of the Effective Date, the Liquidating Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtors or Liquidating Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W- 9 Form to the Liquidating Trustee within thirty (30) days shall result in a waiver of any right or

rights to a Distribution from the Liquidating Trust. In the event any holder of an Allowed Claim fails to provide the Liquidating Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Liquidating Trust.

11.7.   Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

11.8.   Cure Period. Except as otherwise set forth herein, the failure by the Liquidating Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Liquidating Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

11.9.   Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE XII
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

11.112.1.       Retention of Estate Claims. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Liquidating Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Liquidating Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Liquidating Trustee who shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate or Liquidating Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

12.2. Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the Estate Claims reflected in the attached **Exhibit C**. Reference is here made to **Exhibit C** which constitutes an integral part of this Plan. The provisions of this Article of the Plan are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtor is presently aware and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under this Plan to be transitioned to, and vested in the Liquidating Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

12.3. Retention of Estate Defenses. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Liquidating Trustee. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

12.4. Assertion of Estate Claims and Estate Defenses. ~~Reorganized Debtor~~The Liquidating Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses ~~as it deems fit. The Reorganized Debtor is authorized under the Plan, in its sole discretion, to litigate to final judgment, prosecute appeals as are necessary and enter into such settlement agreements as are deemed appropriate with respect to any and all suits pending as of the Petition Date including, without limitation, the C&W Litigation~~for the benefit of the Liquidating Trust.

~~11.2. Retention of Causes of Action. Unless expressly released, waived, compromised or transferred by the Debtor, as appropriate, after Bankruptcy Court approval, the Debtor shall retain, and prosecute as appropriate all causes of action belonging to the estate pursuant to section 541 of the Bankruptcy Code, including but not limited to Avoidance Actions pursuant to sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.~~

~~11.3. Notice to Affected Parties. All creditors and parties in interest are hereby placed on notice that despite provisions which may be contained in this Plan providing for satisfaction of claims, if Allowed, all rights are reserved to commence, prosecute to judgment, and to collect upon any cause of action owned or managed by such entity listed in the Schedules or Statement of Affairs as an asset of the estate of the Debtor. Debtor expressly reserves all claims, causes of action and counterclaims against C&W International Fabricators, LLC, as well as C&W International Fabricators, LLC's officers, directors, employees and agents with respect to acts and occurrences arising from or relating to the C&W Litigation~~12.5.

~~11.~~4.    Estimate of Potential Recovery. Currently, the Debtor is unable to estimate the size of any recovery from such possible litigation. The ~~Debtor~~Liquidating Trustee is authorized under the Plan, in its sole discretion, to litigate to final judgment, prosecute appeals as are necessary and enter into such settlement agreements as are deemed appropriate with respect to any and all suits initiated as provided herein.

**Formatted:** Font color: Auto

~~11.5~~12.6.    Right to File Claim. Persons subject to a successful Avoidance Action may file a Claim, as appropriate, within such time as is established by the Bankruptcy Court.

**ARTICLE ~~XII~~XIII**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

~~12.1.~~13.1.    Claims Listed in Schedules as Disputed. Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by ~~Reorganized Debtor~~the Liquidating Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

**Formatted:** Underline

~~12.2.~~13.2.    Responsibility for Objecting to Claims and Settlement of Claims. ~~Reorganized Debtor~~The Liquidating Trustee shall have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

(a)    From and after the Effective Date, ~~Reorganized Debtor~~the Liquidating Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by Reorganized Debtors; and

(b)    From and after the Effective Date, ~~Reorganized Debtor~~Liquidating Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

~~12.3.~~13.3.    Objection Deadline. All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. ~~Reorganized Debtor~~The Liquidating Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that ~~Reorganized Debtor~~the Liquidating Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by ~~Reorganized Debtor~~the Liquidating Trustee. Nothing contained herein shall limit the right of ~~Reorganized Debtor~~the Liquidating Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

12.4.13.4.    Response to Claim Objection. If Reorganized DebtorLiquidating Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

12.5.13.5.    Distributions on Account of Contested Claims. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

12.6.13.6.    No Waiver of Right to Object. Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release or impair Reorganized Debtor's right to object to any Claim.

12.7.13.7.    Offsets and Defenses. Reorganized DebtorThe Liquidating Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by Reorganized Debtorthe Liquidating Trustee against any Claim asserted against the Estate or Reorganized Debtorthe Liquidating Trustee shall constitute "core" proceeding.

12.8.13.8.    Claims Paid or Reduced Prior to Effective Date. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude Reorganized Debtorthe Liquidating Trustee from paying Claims that Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

**ARTICLE XIII**

**ARTICLE XIV**
**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN**

13.1.14.1.    Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form

and substance acceptable to Debtor; (b) the necessary Plan Documents, if any, have been executed and delivered, and (c) all other conditions specified by Debtor have been satisfied.

13.2.14.2.    Notice of the Effective Date. Promptly upon the occurrence of the Effective Date, Reorganized Debtorthe Liquidating Trustee shall cause to be filed with the Court and served on all Creditors and parties- in-interests, a notice of the Effective Date.

## ARTICLE XV

~~ARTICLE XIV~~

**EFFECT OF THE CONFIRMATION OF THE PLAN**

14.1.15.1.    Compromise and Settlement. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against Debtor or the Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with Debtor or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of Debtor, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for, and in complete satisfaction and release of, all Claims of any nature whatsoever against Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against Debtor and hisits affiliates, successors, assigns, the Estate or the Assets or Reorganized DebtorLiquidating Trustee or the Liquidation Trustee any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

14.2.   Discharge. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

15.2.   If Debtor's Plan is confirmed under § 1191(b), Confirmation of thisThis Plan does not provide for any discharge any debt provided for in this Plan until the pursuant to section 1141(d)(3) of the Bankruptcy Court grants a discharge on completion of Code. However, the Plan Injunction shall apply to all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal

**Formatted:** List Paragraph, Indent: Left: 0", First line: 0.5", Outline numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at: 1.13"

Rules of Bankruptcy Procedureholders of Claims and Interests arising or accruing prior to the Effective Date.

14.3.15.3.    PLAN INJUNCTION. THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST DEBTOR, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST DEBTOR, REORGANIZED DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM AGAINST THE ESTATE, DEBTOR OR REORGANIZED DEBTOR; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST DEBTOR, OR REORGANIZED DEBTOR, OR (iii) TAKING ANY ACTION IN RELATION TO DEBTOR, THE ESTATE, OR REORGANIZED DEBTOR, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

15.4.    Notwithstanding anything to the contrary in the Plan or Trust Agreement: (a) third party professionals employed by the Liquidating Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Liquidating Trustee; and (b) any third party professionals employed by the Liquidating Trustee shall only be entitled to be indemnified by the Liquidating Trust to the extent provided by applicable law.

15.5.    Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction): (a) releases any Person other than the Liquidating Trustee, Liquidating Trust, Trust Assets, Debtor, or the Estate (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties. Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any

environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

14.4.15.6.    Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, Reorganized DebtorThe Liquidating Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant be entitled to setoff any Claim against any Claim, right, or Estate Claim of Debtor without the consent of Debtor or Reorganized Debtorthe Liquidating Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.5.15.7.    Recoupment. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, account receivable, or Estate Claim of Debtor or Reorganized Debtorthe Liquidating Trustee unless (a) such holder actually provides notice thereof in writing to Debtor or Reorganized Debtorthe Liquidating Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim and a specific description of the basis for the recoupment, and (c) Debtor or Reorganized Debtor havethe Liquidating Trustee has provided a written response to such Claim, stating unequivocally that Debtor or Reorganized Debtorthe Liquidating Trustee consents to the requested recoupment. Debtor and Reorganized DebtorThe Liquidating Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from Debtor or Reorganized Debtorthe Liquidating Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim shall be allowed.

14.6.15.8.    Turnover. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in Reorganized Debtorthe Liquidating Trust.

14.7.15.9.    Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to Debtor, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction

**ARTICLE ~~XV~~XVI**
**JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN**

~~15.1.~~16.1.　　Retention of Jurisdiction. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)　　To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)　　To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)　　To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)　　To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)　　To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)　　To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)　　To administer Distributions to holders of Allowed Claims as provided herein or in the Confirmation Order;

(h)　　To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)　　To consider any modification of the Plan pursuant to sections 1193 and 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)       To enforce the Plan Injunction against any Person;

(k)       To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)       To hear and determine any motion or application which Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)       To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)       To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)       To enter a Final Decree closing this Bankruptcy Case; and

(p)       To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

15.2.16.2.    Abstention and Other Courts. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.3.16.3.    Non-Material Modifications. Reorganized DebtorThe Liquidating Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. Reorganized DebtorThe Liquidating Trustee may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor who has not accepted in writing the modification.

15.4.16.4.    Material Modifications. Modifications of this Plan may be proposed in writing by Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of section 1193(a) of the Bankruptcy Code. This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of section 1193(b) or 1193(c), as applicable.

### ARTICLE XVIXVII
### MISCELLANEOUS PROVISIONS

16.1.   Severability. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, ~~Reorganized Debtor~~the Liquidating Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require a re-balloting of the Plan.

16.2.   Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. Neither Debtor nor ~~his~~its attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

16.3.   Waiver. ~~Reorganized Debtor~~The Liquidating Trustee shall not be deemed to have waived any right, power or privilege unless the waiver is in writing and may be signed by ~~Reorganized Debtor.~~The Liquidating Trustee. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by ~~Reorganized Debtor~~The Liquidating Trustee, of any right pursuant to the Plan, including the provisions of this anti- waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, powers or privilege.

16.4.   Notice. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)     If to ~~Reorganized Debtor~~The Liquidating Trustee, notice shall be sent to ~~Reorganized Debtor~~The Liquidating Trustee and counsel of record for ~~Reorganized Debtor~~The Liquidating Trustee.

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to ~~Reorganized Debtor~~The Liquidating Trustee of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.5.   Compliance with All Applicable Laws. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, ~~Reorganized Debtor~~The Liquidating Trustee shall comply with such law,

rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

16.6. <u>Duties to Creditors</u>. No agent, representative, accountant, financial advisor, attorney of Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

16.7. <u>Due Authorization</u>. Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

16.8. <u>Authorization of Corporate Action</u>. All matters and actions provided for under this Plan involving the structure of Debtor or action to be taken by or required of the Debtor or ~~Reorganized Debtor~~<u>the Liquidating Trustee</u> shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable.

16.9. <u>Notice of Default</u>. Debtor shall have a grace period of five (5) business days for any payment or non-monetary obligation herein. Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the ~~Reorganized Debtor~~<u>Liquidating Trustee</u> with copies to counsel of record for the ~~Reorganized Debtor~~<u>Liquidating Trustee</u> specifying the nature of the default. Upon receipt of the default notice, the ~~Reorganized Debtor~~<u>Liquidating Trustee</u> shall have twenty-four (24) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any and all available remedies, including the right to undertake foreclosure upon any collateral securing the obligation, if applicable.

16.10. <u>Binding Effect</u>. The Plan shall be binding upon and shall inure to the benefit of ~~Reorganized Debtor~~<u>the Liquidating Trustee</u>, the holders of the Claims or Liens and their respective successors-in- interest and assigns.

16.11. <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.12. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, ~~Reorganized Debtor~~<u>The Liquidating Trustee</u> may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.13. <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.14. <u>Elections by</u> ~~Reorganized Debtors.~~<u>the Liquidating Trustee.</u> Any right of election or choice granted to ~~Reorganized Debtor~~<u>the Liquidating Trustee</u> under this Plan may be exercised, at ~~Reorganized Debtor's~~<u>the Liquidating Trustee's</u> election, separately as to each Claim, Creditor or Person.

16.15. <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to ~~Reorganized Debtors~~<u>the Liquidating Trustee</u> shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.16. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.17. <u>Compliance with Tax Requirements</u>. In connection with the Plan, ~~Reorganized Debtor~~<u>the Liquidating Trustee</u> shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.18. <u>Privileged Communications; Work Product</u>.  For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the ~~Reorganized Debtor~~<u>Liquidating Trustee</u> shall succeed to the interest of the Debtor and Estate, to the extent provided by applicable law.

16.19. <u>No Interest</u>.  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

16.20.  <u>No Attorney's Fees</u>.  No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

16.21.  <u>Substantial Consummation</u>.  If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the ~~Reorganized Debtor~~Liquidating Trustee makes initial distributions pursuant to the terms of the Plan.

16.22.  <u>Notices and Distributions</u>.  On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of Debtor.  Any Claimant may designate another address for the purposes of this Section by providing the ~~Reorganized Debtor~~Liquidating Trustee written notice of such address, which notice will be effective upon receipt by ~~Reorganized Debtor~~the Liquidating Trustee.

16.23.  <u>Unclaimed Property</u>.  If any property distributed under the Plan by the ~~Reorganized Debtor~~Liquidating Trustee remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the ~~Reorganized Debtor~~Liquidating Trustee free and clear of any claims, rights or interests.  ~~Reorganized Debtor~~The Liquidating Trustee, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

16.24  <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponent with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

<u>[SIGNATURES FOLLOW]</u>

Dated: ~~March 7~~June 28, 2024.

Respectfully submitted,

IRONCLAD PRESSURE CONTROL, LLC

By: Ironclad Holding Group, LLC
    its Managing Member


By:    */s/ Bailee Fernandez*
       Bailee Fernandez, President


Presented by:

ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone – 817.347.5260
http://www.romclaw.com


By:    */s/ Joseph F. Postnikoff*
       Joseph F. Postnikoff
       State Bar No. 16168320
       Email: jpostnikoff@romclaw.com

COUNSEL FOR DEBTOR AND DEBTOR
IN POSSESSION

# EXHIBIT A

# LIQUIDATION ANALYSIS

## [INTENTIONALLY OMITTED]

# EXHIBIT B

## LIQUIDATING TRUST AGREEMENT

## ~~PLAN PROJECTIONS~~

| Formatted: Font: Not Bold |

## ~~[INTENTIONALLY OMITTED]~~

# EXHIBIT C

## ~~SCHEDULE OF EXECUTORY CONTRACTS AND LEASES TO BE ASSUMED~~

## ~~[INTENTIONALLY OMITTED]~~

# RETAINED ESTATE CLAIMS

# EXHIBIT D

## PLAN PROJECTIONS

**Formatted:** Font: Not Bold