IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Ironclad Pressure Control, LLC, | § | Case No. 23-70156-smr11 |
| *Debtor*. | § | |

**C&W INTERNATIONAL FABRICATORS, LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S FIRST AMENED PLAN UNDER SUBCHAPTER V OF CHAPTER 11 AND MOTION TO CONVERT CASE**
[Refers to Docket # 210]

**TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:**

**NOW COMES** C&W International Fabricators, LLC ("**Movant**" or "**C&W**"), Movant in the above-styled and numbered case, and files this *Objection to Confirmation of Debtor's First Amended Plan Under Subchapter V of Chapter 11 and Motion to Convert Case*, and in support hereof would respectfully show the Court as follows:

**I. PRELIMINARY STATEMENT**

1. Movant asks this Court to deny confirmation of the Debtor's First Amended Plan Under Subchapter V of Chapter 11 ("**Amended Plan**") and convert this bankruptcy case to chapter 7. The Debtor has knowingly failed to properly disclose significant insider transactions and/or failed to properly disclose information related to insiders in its Statement of Financial Affairs [Dkt. #24] (the "**SOFA**") on file in this bankruptcy proceeding. A debtor in bankruptcy has a continuing duty to make full, honest and accurate disclosures in its bankruptcy pleadings. Ironclad has knowingly failed to satisfy this duty after nine (9) months of being in this bankruptcy and at the point of it asking this Court to confirm its proposed Amended Plan.

2. By way of example, between May 2023 and November 30, 2023, a combined total amount of approximately **$243,645.54** was transferred from the Debtor's operating accounts to purchase items on Whatnot, Inc. (a "social marketplace" website) based upon a review of the Debtor's pre-petition bank statements. C&W is informed and believes that these purchases were unrelated to Ironclad's oil and gas

business operations and allegedly involved the purchase of sports trading cards for the benefit of one or more undisclosed insider(s) of Ironclad. An additional combined total amount of approximately **$162,271.86** was transferred from Ironclad's operating accounts allegedly for the benefit of an undisclosed insider(s) to purchase items from Best Buy, Air BNB, PetSmart, Amazon, Door Dash, Ashley Furniture Store, Lovesac, Las Vegas trips, All Star Sports, etc**.** A summary of these transactions shown on the Debtor's bank statements is attached hereto as Exhibits "B" and "C" and are incorporated herein for all purposes.

3. This failure to disclose insider transactions and other bad faith conduct cannot be overlooked in this bankruptcy case because the filing of this bankruptcy was intended to delay the recovery from the creditors harmed by these and other undisclosed fraudulent transactions, including C&W. Once more, by its proposed Amended Plan, Ironclad seeks to have a Liquidating Trustee appointed to, among other things, recover on the bankruptcy estate's claims, including, presumably, claims against insiders, but yet the Debtor seeks to hide these very same insider transactions from the Trustee that it now asks this Court to appoint.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

## III. FACTUAL BACKGROUND

5. C&W International Fabricators, LLC, is a defendant in an adversary proceeding styled as *Ironclad Pressure Control, LLC* vs. *C&W International Fabricators, LLC,* which matter is currently pending before this Court under Case # 24-07002. On or about May 22, 2024, and in response to C&W's Requests for Production to the Debtor in this proceeding, Ironclad produced the bank statements of its pre-petition operating accounts held at both Amarillo National Bank and American Momentum Bank (collectively, the "**Bank Statements**"). After reviewing these Bank Statements, C&W is informed and believes and hereby alleges that the Bank Statements disclose significant self-dealing by Ironclad's owners,

officers, and/or relative(s) of an owner/officer through Ironclad's operating accounts totaling 100s of thousands of dollars. These alleged insider transactions occurred over the seven (7) month time period immediately prior to the Debtor's petition date on December 8, 2023 (the "**Petition Date**"). These transfers are not disclosed in Section # 4 and/or Section #30 of the Debtor's SOFA [Dkt # 24 ], which is attached hereto as Exhibit "A".

6. Ironclad's Bank Statements show numerous purchases through its accounts on Whatnot, Inc. (a "social marketplace" website), Best Buy, Air BNB, PetSmart, Amazon, Door Dash, Ashley Furniture Store, Lovesac, Las Vegas trips, All Star Sports, etc*.* Exhibits "B" and "C" summarize these transactions in each of the respective bank accounts of the Debtor. Such alleged nonbusiness related purchases and transactions began on or about May 2023 and continued through November 30, 2023, **less than a week prior to Ironclad's petition date on December 8, 2024** ("Petition Date"). The combined total amount of purchases through Debtor's account on the Whatnot, Inc. website alone, allegedly to purchase sports trading cards, totaled approximately **$243,645.54**. C& W would note that there are approximately $42,059.43 in credits from WhatNot, Inc. to the Debtor's accounts as also shown on the Bank Statements.

7. An additional combined total amount of approximately **$162,271.86** was transferred from Ironclad's operating accounts allegedly for the benefit of undisclosed insider(s) to purchase non-business related items from Best Buy, Air BNB, PetSmart, Amazon, Door Dash, Ashley Furniture Store, Lovesac, Las Vegas trips, All Star Sports, etc*.* Again, these transfers were not disclosed in Section # 4 and/or Section #30 of the Debtor's SOFA [Dkt. # 24].

8. When C&W's counsel received these Bank Statements pursuant to the Debtor's discovery responses, he advised Debtor's counsel of the need for the Debtor to amend its insider disclosures in the Debtor's SOFA based upon the obvious insider self-dealing shown therein. C&W also incorporated this information into its affirmative defenses it has asserted in its *Original Answer to Counterclaim Plaintiff Ironclad Pressure Control, LLC's Counterclaims*, which is on file as Dkt. # 56, pg. 5-7, in Adversary Case # 24-070030-smr. This *Original Answer* was filed on June 3, 2024 in the adversary proceeding.

9. Section #s 4 and 30 on the standard bankruptcy statement of financial affairs form are specifically designed and included to capture information on insider transactions. Section # 4 of the SOFA requires a debtor to disclose the following types of transactions as they relate to an insider of a debtor:

> **4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
>
> List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or co-signed by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

Section # 30 of the statement of financial affairs form also requires a debtor to disclose the following types of insider related transactions:

> **30. Payments, distributions, or withdrawals credited or given to insiders**
>
> Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

Both of these SOFA disclosure items are specifically designed to capture the very transactions shown in the Debtor's operating accounts allegedly benefiting Ironclad's owners, officers, and/or relative(s) of an owner/officer, yet Ironclad does not appear to have made any of these disclosures in its SOFA on file in this bankruptcy proceeding.

10. C&W is further informed and believes that the Debtor has knowingly and intentionally misidentified the spouse of the Debtor's representative in this bankruptcy pleadings. Mr. Albert DeHoyos, Ms. Bailee Fernandez's husband, is repeatedly identified as "Charles Ramirez" on the Debtor's SOFA as a "Family Member of Managing Member of Ironclad Holding Group, LLC/Former Operations Employee". Mr. DeHoyos, as the spouse of Ms. Fernandez, is an insider of the Debtor, who allegedly received direct payments from the Debtor's primary customer, Double Eagle Energy Holdings IV ("**Double Eagle**"). These alleged payments were received by Mr. DeHoyos while the Debtor was performing services for

Double Eagle, the Debtor's primary customer, which compensation is also not disclosed on the Debtor's SOFA.

11. Further, on or about July 18, 2023, the Debtor purchased the residence shown below located at 5616 East County Road 94, Midland, Texas 79706, for $1,075,000.00 (the "**Residence**"). The Debtor has represented to this Court that this Residence was allegedly "used" for "overnight stays by employees of the Debtor while stationed on jobs in the surrounding area." *See* Debtor's Section 1188(c) Pre-Status Conference Report, Dkt. No. 46, p. 2, para. 8. The Debtor's representative and owner acknowledges living in this Residence following its purchase.



C&W alleges that such purchase of the Residence was not for the "overnight stays by employees of the Debtor while stationed on jobs in the surrounding area" but for the personal benefit of one or more of the Debtor's insiders. C&W would note that a combined total amount of $47,312.29 was paid by the Debtor to the mortgage lender for the Residence between August and November 2023. *See* Kingdom Trinity, LLC's proof of claim # 29-1. This transaction was also not disclosed on the Debtor's SOFA. The Debtor is further informed and believes that an approximate $100,000 downpayment was made by the Debtor towards the purchase of this Residence.

12. In an approximate seven (7) month time period, Ironclad Pressure Control, LLC, a small oil and gas service company located in Odessa, Texas, which only began operations for Double Eagle in approximately April 2023, purchased a million dollar private residence, spent a combined total amount of approximately $243,645.54 to purchase non-business related items on the Whatnot, Inc. website (with merchandise returns totaling approximately $42,059.43), and spent an additional combined total amount of approximately $162,271.86 to purchase non-business related items from Best Buy, Air BNB, PetSmart, Amazon, Door Dash, Ashley Furniture Store, Lovesac, Las Vegas trips, All Star Sports, etc. C&W alleges that these were insider transactions that are not properly disclosed in the Debtor's SOFA and despite C&W's requests to the Debtor to amend its disclosures.

## IV. APPLICABLE LAW

13. "'[T]he integrity of the bankruptcy system depends on full and honest disclosure' by debtors and that 'it is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible.'" *ASARCO, L.L.C. v. Mont. Res. Inc.*, 858 F.3d 949, 958 (5th Cir. 2017). When denying a debtor's discharge, the Texas Northern Bankruptcy Court stated that "the Debtor has a continuing obligation to review his schedules and SOFAs for omissions or misstatements. ***Once 'mistakes' were brought to the Debtor's attention, he had a duty to not only fix those mistakes but to carefully review all of the schedules and SOFAs again*** to determine if he had made any more 'mistakes' and to fix them on his own." *Buckeye Ret. Co., LLC, Ltd. v. Bullough (In re Bullough)*, 358 B.R. 261, 272-73 (Bankr. N.D. Tex. 2007); *see also*, *Vasquez v. Adair (In re Adair)*, 253 B.R. 85, 91 n.16 (B.A.P. 9th Cir. 2000) ("The Bankruptcy Code and Rules require that the schedules contain information that is accurate as of the date the petition is filed. A debtor who learns that the information supplied in his or her schedules was inaccurate as of the petition date has a duty to correct that information"). Further, the court in *Bullough* noted that "[t]he Debtor's failure to make required amendments until after Buckeye pointed out errors and omissions implies fraudulent intent." *Id.* at 282. The court held that the debtor was not entitled to a discharge because

"[a]t some point, errors and omissions in schedules and SOFAs leave the realm of honest mistakes and enter the realm of purposeful deceit or, at the very least, reckless indifference to the truth." *Id.* at 285-286.

14. Section 1112(b)(1) of the Code provides that the Court must dismiss or convert, whichever is in the best interests of creditors and the estate, if the movant establishes "cause" unless the Court determines that the appointment of a chapter 11 trustee or examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). 26. Under section 1112(b)(4), "cause" includes:

>(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
>(B) gross mismanagement of the estate;
>
>…
>
>(E) failure to comply with an order of the court;
>
>…
>
>(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>
>…

*See* 11 U.S.C. § 1112(b)(4).

15. Although section 1112(b)(4) does not list bad-faith conduct as cause for conversion, "[b]ankruptcy courts nevertheless routinely treat dismissal for . . . bad-faith conduct as implicitly authorized by the words for cause." *In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, n.1, 373 (2007)). *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").

**<u>Fraudulent Conduct of the Debtor Through Its Insider(s).</u>**

16. On this eve of Ironclad's plan confirmation hearing, the Debtor's representative, Bailee Fernandez, has failed to properly disclose the approximate $243,645.54 ($42,059.43 of which was credited for returned merchandise) in alleged insider non-business related purchases on Whatnot, Inc. The Debtor's

representative has also failed to properly disclose the approximate $162,271.86 in alleged non-business related insider purchases from Best Buy, Air BNB, Petsmart, Amazon, Door Dash, Ashley Furniture Store, Lovesac, Las Vegas trips, All Star Sports, etc. These and other disclosure failures set forth above involving the identity and payments to her spouse, Albert DeHoyos, as well as payments towards the Residence represent bad faith conduct on the part of the Debtor and/or its representative(s).

**The Appropriate Remedy is Conversion to Chapter 7.**

17. Conversion is in the best interests of the bankruptcy estate. *See* 11 U.S.C. § 1112(b)(1) (providing that the remedy is conversion or dismissal, depending on "the best interest of creditors and the estate"). There appear to be valuable potential claims against the Debtor's insiders under Chapter 5 that could provide a meaningful recovery to the bankruptcy estate. These claims need to be fully examined and pursued. For this reason, C&W respectfully requests conversion to Chapter 7 instead of dismissal of this case.

WHEREFORE, PREMISES CONSIDERED, Movant C&W International Fabricators, LLC, prays that the Court deny confirmation of the Debtor's *First Amended Plan Under Subchapter V of Chapter 11* and enter an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, and grant such further relief as the Court deems appropriate under the applicable law and rules of procedure.

Dated: July 27, 2024

> Respectfully submitted,
>
> /s/ Todd J. Johnston
> Todd J. Johnston
> State Bar No. 24050837
> **MCWHORTER COBB & JOHNSON, LLP**
> P.O. Box 2547
> Lubbock, Texas 79408
> Telephone: (806) 762-0214
> Facsimile: (806) 762-8014
> Email: tjohnston@mcjllp.com
> *Attorneys for C&W International Fabricators, LLC*

## CERTIFICATE OF SERVICE

    I, Todd J. Johnston, do hereby certify that a true and correct copy of the foregoing was served by either court enabled electronic service or regular first-class U. S. Mail upon the following attached service list (not attached to mailing copy) on July 27, 2024.

                                                    /s/ Todd J. Johnston
                                                    Todd J. Johnston